# **TABLE OF CONTENTS**

Exhibit A - 221202 Defense Letter to Government re Discovery Demands ........... 3

Exhibit B - 221216 Government Response to Defense Discovery Letter ............... 8

Exhibit C - 230609 Response toDefense Discovery Letter .................................... 15

Exhibit D - 230801 Karim Arabi Discovery Letter and 230809 Response ........... 21

Exhibit E (Filed Conditionally Under Seal) - 170217 Qualcomm Summary of Allegations ......................................................................................................... 29

Exhibit F (Filed Conditionally Under Seal) - 210712 Stewart Roberts 302 ......... 30

Exhibit G (Filed Conditionally Under Seal) - 161102 Notes from Qualcomm Kechichian Interview plus emails ........................................................................ 31

Exhibit H (Filed Conditionally Under Seal) - 170517 Qualcomm Interview with Brad Quinton ...................................................................................................... 32

Exhibit I (Filed Conditionally Under Seal) - 170518 A. Schmidt interview of B. Quinton ............................................................................................................... 33

Exhibit J (Filed Conditionally Under Seal) - 171026 Civil Complaint ................. 34

Exhibit K (Filed Conditionally Under Seal) - 180126 Taneja Settlement Agreement ......................................................................................................... 35

Exhibit L - 180307 Civil Protective Order .......................................................... 36

Exhibit M (Filed Conditionally Under Seal) - 180501 Invionics Groups Cooperation Agreement ....................................................................................... 55

Exhibit N(Filed Conditionally Under Seal) - 180511 FBI-1057 Declines Qualcomm referral in favor ................................................................................ 56

Exhibit O - 181207 Alan and Arabi Fully Executed Settlement Agreement ........ 57

Exhibit P (Filed Conditionally Under Seal) - 200131 Abdi, Shokouhi, and TechVC Settlement Agreement ........................................................................................ 68

Exhibit Q - 200204 Alan and Arabi Fully Executed Settlement Addendum ........ 69

Exhibit R (Filed Conditionally Under Seal) - 200428 Letter from M. Camp re Qualcomm Referral.................................................................................. 78

Exhibit S (Filed Conditionally Under Seal) - 200507 Referral Presentation ....... 79

Exhibit T (Filed Conditionally Under Seal) - 200513 FBI-1057 Case Opening.. 80

Exhibit U (Filed Conditionally Under Seal) - 200519 Ex Parte Application re Disclosure of Protected Materials.......................................................................... 81

Exhibit V - 200520 Order Granting Application to Disclose Materials ............... 82

Exhibit W - 210712 Email with M. Camp re final payment and destruction of Confidential docs ............................................................................................ 85

Exhibit X (Filed Conditionally Under Seal) - 230222 FBI Report of Qualcomm Employee Alleging Malfeasance .......................................................................... 90

Exhibit Y (Filed Conditionally Under Seal) - 230302 Farsheed Mahmoudi........ 91

# Exhibit A

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Nicola T. Hanna
Direct: +1 213.229.7269
nhanna@gibsondunn.com

December 2, 2022

<u>VIA EMAIL</u>

Nicholas Pilchak
Assistant United States Attorney
United States Attorney's Office
Southern District of California
880 Front Street, Room 6293
San Diego, CA 92101
Nicholas.Pilchak@usdoj.gov

Re:     <u>*US v. Arabi et al.*, Case No. 22cr1152-BAS – Requests for Discovery</u>

Dear Nick:

On behalf of Messrs. Taneja, Arabi, and Shokouhi, we write to request certain information that is discoverable under the Federal Rules of Criminal Procedure, the United States Constitution, the Federal Rules of Evidence, and other applicable laws governing the government's disclosure obligations.

As you know, on November 9, 2022, my partner Winston Chan, counsel for Mr. Arabi, and counsel for Mr. Shokouhi met with you and requested certain categories of information that we believe must be disclosed under the applicable laws governing the government's disclosure requirements.  The government indicated that it was planning to produce a significant amount of information to all defendants, including some information that we specifically requested. However, it was unclear to us whether the government would produce all of the information we requested.[1]

Therefore, for purposes of clarity and completeness and in an effort to continue meeting and conferring on these discovery issues, we specifically request the following information:

1.   All discovery from all parties in Civil Case No. 37-2017-00040719-CU-FR-CTL, in the Superior Court of California, County of San Diego, Central (the "civil case"), including

---

[1] And given the size of the government's November 21, 2022 production, it is very difficult to confirm whether the government has produced all of the requested information herein.

**GIBSON DUNN**

December 2, 2022
Page 2

but not limited to, all interrogatory responses, deposition transcripts, declarations, affidavits, subpoena responses, and document requests and associated productions.

2. All communications and documents involving Qualcomm employees, its representatives, or any third-party that relate to Abreezio LLC ("Abreezio") or its technology.

3. All communications and documents concerning Qualcomm's internal investigation into the Abreezio transaction (the "internal investigation"), the civil case, or the criminal investigation, including but not limited to, any transcripts and notes of employee interviews.

4. All communications, including but not limited to call logs, involving the following individuals that relate to Abreezio, its technology, or any of the allegations in the superseding indictment:

    a) Anyone who worked at or was affiliated with Abreezio, including all Defendants;

    b) Anyone who worked at or was affiliated with Invionics;

    c) Brad Quinton;

    d) Duane Nelles;

    e) Behrooz Abdi;

    f) Bozena Kaminska;

    g) Ziad Mansour;

    h) Angelina Trang;

    i) Hiten Somwal;

    j) George Davis;

    k) Venkata "Murthy" Renduchintala;

    l) Saad Elhosni;

    m) Joseph Fang; and

    n) Farsheed Mahmoudi

5. All communications between Qualcomm, its lawyers, or its representatives and any employee of the Department of Justice, including but not limited to, the Federal Bureau of Investigation and the United States Attorney's Office in the Southern District of California, related to the civil case, the internal investigation, the criminal case, or any allegations contained in the superseding indictment.

**GIBSON DUNN**

December 2, 2022
Page 3

6. All summaries, notes, and/or transcripts of any interview conducted by Qualcomm or its representatives that related to the internal investigation, the civil case, or criminal investigation.

7. All Abreezio board minutes and resolutions.

8. All presentations and materials provided to Qualcomm by Abreezio in connection with the acquisition.

9. All due diligence materials Qualcomm received and/or prepared in connection with the Abreezio transaction, including but not limited to, any data room, and any analysis, technical evaluation or benchmarking of Abreezio's patents and technologies.

10. A list of search terms used by the government to filter out any and all privileged documents and communications throughout the course of its investigation and the criminal case.

11. Copies of all grand jury and administrative subpoenas that were served during the course of the investigation and criminal case, and copies of the full contents of any returns on such subpoenas.

12. All documents and communications related to comparison amongst Abreezio's patents (including provisional patent applications and patents granted post-acquisition) and Product Mapping of Abreezio's technologies and products, including derivative technologies and products developed by Qualcomm, to Abreezio's patents.

13. All Abreezio documents and communications related to the development and patenting of its technology.

14. Any information showing that Qualcomm or its representatives were aware, suspected, had notice, or should have had notice that Karim Arabi had any affiliation, connection, or relationship with Abreezio or its employees, officers, directors, or representatives prior to Qualcomm consummating its acquisition of Abreezio.

15. Any information showing that Qualcomm or its representatives were aware, suspected, had notice, or should have had notice that Ali Akbar Shokouhi or any companies owned at least in part by Mr. Shokouhi had any affiliation, connection, or relationship with Abreezio or its employees, officer directors, or representatives prior to Qualcomm consummating its acquisition of Abreezio.

16. Documents and communications relating to the financial, qualitative, strategic and competitive value of Abreezio's technology that Qualcomm expected to receive,

**GIBSON DUNN**

December 2, 2022
Page 4

      projected and/or did receive, including but not limited to, cost savings, revenue, profit, and market share.

Please let us know whether the government has already produced or intends to produce the foregoing information.  Of course, we are happy to discuss any of these requests in more detail.

If you have any questions, please feel free to contact me.

Sincerely,

*/s/ Nick Hanna*

Nick Hanna

cc:     Meghan Heesch, Assistant United States Attorney
        Eric Olah, Assistant United States Attorney
        Janaki Chopra, Assistant United States Attorney
        Winston Chan, Gibson Dunn & Crutcher LLP
        Katy Sharp, Gibson Dunn & Crutcher LLP
        Jimmy Rotstein, Gibson Dunn & Crutcher LLP
        Dave Willingham, King & Spalding LLP
        Jamie Lang, King & Spalding LLP
        Blythe Kochsiek, King & Spalding LLP
        Whitney Bernstein, Bienert Katzman Littrell Williams LLP
        Sandra Lechman, Bienert Katzman Littrell Williams LLP

Exhibit B



**U.S. Department of Justice**

*RANDY S. GROSSMAN*
*United States Attorney*
*Southern District of California*

| | |
|---|---|
| *Nicholas W. Pilchak* | *(619) 546-9709* |
| *Assistant U.S. Attorney* | *Fax (619) 546-0510* |
| *Email:* | *nicholas.pilchak@usdoj.gov* |

*San Diego County Office*                          *Imperial County Office*
*Federal Office Building*                          *516 Industry Way*
*880 Front Street, Room 6293*                     *Suite C*
*San Diego, California  92101-8893*               *Imperial County, California 92251-5782*

December 16, 2022

*VIA ELECTRONIC MAIL ONLY*

**Whitney Bernstein**
**Sandra Lechman**
Bienert Katzman Littrell
   Williams LLP
wbernstein@bklwlaw.com
slechman@bklwlaw.com

**Nicola Hanna**
**Winston Chan**
**Katy Sharp**
**Jimmy Rotstein**
Gibson Dunn & Crutcher LLP
nhanna@gibsondunn.com
wchan@gibsondunn.com
ksharp@gibsondunn.com
jrotstein@gibsondunn.com

**David Willingham**
**Jamie Lang**
**Blythe Kochsiek**
King & Spalding LLP
dwillingham@kslaw.com
jlang@kslaw.com
bkochsiek@kslaw.com

**RE:   United States v. Karim Arabi et al., 22-CR-1152-BAS**

Dear Counsel:

This letter responds to the defense discovery requests made by letter dated December 2, 2022.

You have already received extensive documents responsive to many of these requests, and we believe that a number of the specific requests below are mooted by the production of discovery thus far, most recently on November 21, 2022.  If you

December 16, 2022
Hanna et al.
Page 2

have questions about any of the material you received, you are welcome to contact us at any time.

That said, here are specific responses to your written requests. Our bolded headings are for ease of review, and do not purport to change or limit your numbered requests.

1.      **All discovery from the Civil Fraud Suit**. Material from the Civil Fraud Suit that is in our possession, custody and control has already been produced to you in discovery. If you have reason to believe that our production was incomplete, please let us know right away. In particular, as we mentioned during our November 9, 2022 discovery conference call, we are unaware of any depositions taken as part of the Civil Fraud Suit. If you have contrary information, please let us know. Similarly, if you have documents that were produced in the Civil Fraud Suit but were not included in the United States' production in this case, we request that you produce such documents to us as reciprocal discovery.

2.      **All communications and documents related to Abreezio LLC or its technology**. This is an extremely broad request that would apply, by its terms, to everything from public-domain information to our internal emails about the case at the U.S. Attorney's Office. We decline to respond to the request as framed, although of course we understand our discovery obligations under Rule 16, *Brady* and *Giglio*, and the Jencks Act, and intend to comply with those obligations in good faith.

3.      **All communications concerning Qualcomm's internal investigation**. We believe discoverable material in our possession, custody and control has already been produced to you in discovery. If you have reason to believe that our production was incomplete, please let us know right away. In particular, we note that we have not sought to pierce Qualcomm's attorney-client privilege with respect to potentially privileged material likely possessed by Qualcomm and/or its outside counsel concerning the Abreezio matter. We also note that, as written, this request ("[a]ll communications and documents concerning . . . the criminal investigation") could be construed to extend to material covered by the United States' privileges and work product protection, which we decline to waive.

4.      **All communications involving the listed individuals**. Discoverable material covered by this request in our possession, custody and control will be produced, to the extent it has not already. We would appreciate if you could confirm whether by "call logs" you mean telephone records from telecommunications

December 16, 2022
Hanna et al.
Page 3

providers (i.e., "toll records") or something else.  We also invite you to specify the individuals whom you believe "worked at or [were] affiliated with" Abreezio or Invionics, to ensure that we do not inadvertently overlook anyone.

5.  **All communications between Qualcomm and the government**. Certain discoverable material covered by this request in our possession, custody and control will be produced in discovery.  Going forward, we will continue to assess whether additional communications should be produced in accordance with our discovery obligations.

6.  **Qualcomm interview summaries**.  See response to number 3.

7.  **Abreezio board minutes and resolutions**.  Material in our possession, custody and control has already been produced to you in discovery.  If you have reason to believe that our production was incomplete, please let us know right away.

8.  **Abreezio presentations to Qualcomm**.  Material in our possession, custody and control has already been produced to you in discovery.  If you have reason to believe that our production was incomplete, please let us know right away.

9.  **Qualcomm due diligence materials**.  We are uncertain what you mean by "benchmarking" and request that you clarify that portion of the request. Otherwise, we believe that material in our possession, custody and control has already been produced to you in discovery.  If you have reason to believe that our production was incomplete, please let us know right away.  Again, we note that we have not sought to pierce Qualcomm's applicable privileges.  Finally, as to your request for the contents of a "data room," we do not believe that such records are in our possession.

10.  **Government filter terms**.  We refer you to the filter protocol memoranda produced in discovery on or about November 21, 2022.  *See*, *e.g.*, TL-FILTERPRTCL-000001 et seq.

11.  **Subpoenas and subpoena returns**.  We intend to continue to produce all discoverable subpoena returns to you.  We object to your request for copies of the subpoenas themselves, as we do not believe those are discoverable in the ordinary course, as we indicated on our November 9, 2022 call.  Please feel free to share any authority that you believe entitles you to copies of the subpoenas as a

December 16, 2022
Hanna et al.
Page 4

matter of course, or any supplementary facts that you wish to proffer that you believe warrants their production in this case.

12.     **Abreezio patent and product mapping documents**.  We are uncertain what you mean by "Product Mapping of Abreezio's technologies and products" and request further specification.  See also our response to number 16, below.

13.     **Abreezio documents regarding developing and patenting its technology**.  We believe that discoverable material in our possession, custody and control has already been produced to you in discovery.  If you have reason to believe that our production was incomplete, please let us know right away.

14.     **Information regarding notice of Karim Arabi's affiliation with Abreezio**.  We believe that discoverable material in our possession, custody and control has already been produced to you in discovery.  If you have reason to believe that our production was incomplete, please let us know right away.

15.     **Information regarding notice of Ali Akbar Shokouhi's affiliation with Abreezio**.  We believe that discoverable material in our possession, custody and control has already been produced to you in discovery.  If you have reason to believe that our production was incomplete, please let us know right away.

16.     **Information regarding value of Abreezio's technology**.  This very broad request is not limited in time and could by its terms apply to downstream versions of technology that may still be in use today.  Further, we do not concede that information concerning the realized results of Abreezio's technology, including its financial value, is discoverable as information material to the defense under Rule 16.  That said, we believe that discoverable material in our possession, custody and control has already been produced to you in discovery.  If you have reason to believe that our production was incomplete, please let us know right away.

\*   \*   \*

We would also like to address the following further points pertaining to discovery.

17.     **A-files**.  Although not requested in your letter, as a reminder, we are pursuing the A-files for Messrs. Taneja and Shokouhi and will review them for discoverable information.  If anyone wishes to make a renewed demand for the complete contents of any of the A-files under discussion, you are welcome to do so.

December 16, 2022
Hanna et al.
Page 5

18.   **Email accounts**.   While your request does not specifically mention email accounts, we recall that some of you have informally requested the complete (non-privileged) contents of all email accounts subject to warrant searches as part of this investigation, and not simply those accounts used by your specific clients.   Our memory is that, at our last discovery conference by telephone, we asked you to confirm your position on this point.   I believe we are still waiting for a final response.

We have previously produced (or will shortly produce) to each of you the items seized from the email accounts listed below.   Preliminarily, it is our intention to produce to you the "raw" returns from each account subject to a search warrant, where your client was the accountholder, per the table below—which was also included in my September 23, 2022 email.   This production should come from our filter paralegal, Lilian Ruiz.   Please note that we received extremely limited responses from Google on the "@abreezio.com" email accounts, as you will see from records produced in discovery.

| *Account* | *Account holder* |
|---|---|
| karim_arabi@hotmail.com (**Subject Account 1**) | Karim |
| brad.quinton@gmail.com (**Subject Account 2**) | Quinton |
| sheida@abreezio.com (**Subject Account 3**) | |
| arabisheida@yahoo.com (**Subject Account 4**) | Sheida |
| bkaminska@gmail.com (**Subject Account 5**) | Kaminska |
| arabisheida@gmail.com (**Subject Account 6**) | Sheida |
| sheida.arabi1@gmail.com (**Subject Account 7**) | |
| akbarshokouhi@gmail.com (**Subject Account 8**) | Shokouhi |
| sanjivtaneja1@gmail.com (**Subject Account 9**) | Taneja |
| sanjiv@abreezio.com (**Subject Account 10**) | Taneja |

December 16, 2022
Hanna et al.
Page 6

| | |
|---|---|
| sheida.alan@gmail.com<br>(**Subject Account 11**) | |
| akbar@abreezio.com<br>(**Subject Account 12**) | Shokouhi |
| sheidaalan@abreezio.com<br>(**Subject Account 13**) | |
| brad@abreezio.com<br>(**Subject Account 14**) | Quinton |
| s_7295@yahoo.ca<br>(**Subject Account 15**) | Sheida |

You should also expect to receive from the filter paralegal a privilege log identifying potentially privileged items from your client's email account that were held back by the filter team from the investigation and prosecution team.

Please do not hesitate to contact us if you have any questions about these responses or any of the material included in discovery.

Best regards,

RANDY S. GROSSMAN
United States Attorney

NICHOLAS W. PILCHAK
Assistant U.S. Attorney

cc:    *Assistant U.S. Attorneys Janaki Chopra & Eric R. Olah*

Exhibit C

**U.S. Department of Justice**

*RANDY S. GROSSMAN*
*United States Attorney*
*Southern District of California*

| | |
|---|---|
| *Nicholas W. Pilchak* | *(619) 546-9709* |
| *Assistant U.S. Attorney* | *Fax (619) 546-0510* |
| *Email:* | *nicholas.pilchak@usdoj.gov* |

| | |
|---|---|
| *San Diego County Office* | *Imperial County Office* |
| *Federal Office Building* | *516 Industry Way* |
| *880 Front Street, Room 6293* | *Suite C* |
| *San Diego, California  92101-8893* | *Imperial County, California 92251-5782* |

June 09, 2023

*VIA ELECTRONIC MAIL ONLY*

**Whitney Bernstein**
**Sandra Lechman**
Bienert Katzman Littrell
   Williams LLP
wbernstein@bklwlaw.com
slechman@bklwlaw.com

**David Willingham**
**Jamie Lang**
**Blythe Kochsiek**
King & Spalding LLP
dwillingham@kslaw.com
jlang@kslaw.com
bkochsiek@kslaw.com

**Nicola Hanna**
**Winston Chan**
**Katy Sharp**
**Jimmy Rotstein**
Gibson Dunn & Crutcher LLP
nhanna@gibsondunn.com
wchan@gibsondunn.com
ksharp@gibsondunn.com
jrotstein@gibsondunn.com

**RE:   United States v. Karim Arabi et al., 22-CR-1152-BAS**

Dear Counsel:

This letter responds to the defense discovery requests made by letter dated May 25, 2023.  As with our prior letter, the bolded headings below are for ease of review and do not purport to change or limit your requests.

> **2. All communications and documents related to Abreezio LLC or its technology**.  Thank you for confirming that the material you seek with this request

June 09, 2023
Bernstein, Lechman, Hanna, Chan, Sharp, Rotstein, Willingham, Lang & Kochsiek
Page 2

excludes public-domain information and the United States' internal emails.  Your letter correctly states that the investigation is ongoing, and the United States will continue to produce responsive information that is subject to disclosure pursuant to our discovery obligations under Rule 16, *Brady* and *Giglio*, and the Jencks Act.

**3 & 6**.  **All communications and documents concerning Qualcomm's internal investigation, the civil case, or the criminal investigation.**  The discovery productions on January 6, 2023 and March 9, 2023 included responsive material, and at this time the United States believes it has produced all responsive material in its possession.  As to your request for a Qualcomm-produced "privilege log with details of documents over which Qualcomm has asserted privilege," the United States is not in possession of any such log.  Similarly, the United States is not in possession of "[n]otes from all interviews [that Qualcomm] conducted after the civil case was filed."

**4**.  **All communications, including call logs, involving certain individuals and related to Abreezio.**  Thank you for confirming that call logs are equivalent to toll records.  Your letter asked that the United States confirm whether it has any relevant call logs and whether it has produced them in discovery.  The United States believes it produced all call logs relevant to this case and in its possession in the discovery production on October 18, 2022.  If other relevant call logs are acquired, they will be produced on a rolling basis.

**5**.  **All communications between Qualcomm and the government.**  The United States agrees to produce substantive, discoverable communications from Qualcomm.  The United States respectfully declines to produce sufficient records to identify each and every contact between the government and Qualcomm or its representatives.  If you believe that such records are discoverable, we invite you to share the authority supporting that position and we will reevaluate.

Please note that the discovery productions on January 6, 2023 and March 9, 2023 included certain substantive communications from Qualcomm to the United States.  *See, e.g.,* TL-REPORTS-000687.

**10**.  **Log of privileged documents that were reviewed by the case team.**  Although we remain uncertain which "references in the filter protocol memoranda" lead you to believe that privileged documents were reviewed by the case team, we supplement our prior disclosures with the following information.  A very small number of potentially privileged documents were available for review by the case

June 09, 2023
Bernstein, Lechman, Hanna, Chan, Sharp, Rotstein, Willingham, Lang & Kochsiek
Page 3

team for a certain period of time, although not reviewed in detail or used in the government's investigation.  When the case team realized that these potentially privileged documents were included in the set available for case team review, we took immediate steps to remove them from that set for further review by the filter team.  Upon filter review, it was determined that one document was potentially privileged.  The filename for this document is "20170602-Signed doc-17.eml" and we understand from the filter team that it was logged on their privilege log.  A second document was partly potentially privileged, and the filter team returned a redacted version of the document to the case team after redacting for privilege.  The Bates stamp for this document is TL-FR-S_7295YAHOO.CA-0000066 and '66.02.  We expect that the filter team would have further details about these documents, although we also expect that they would only share them with the relevant privilege holder.

We also take this opportunity to add that, should you identify any documents in your own review of the discovery received from the prosecution team that you believe are potentially privileged, we urge you to raise the issue with the filter team, and not with us.  If you do not already have contact information for the filter team, we would be happy to provide it to you.

**11**.  **All grand jury and administrative subpoenas.**  The United States maintains its objection to this request.  As noted in prior responses, the United States has produced subpoena returns.

**12**.  **Abreezio patent and product mapping documents.**  Your letter correctly states that the United States believes it has produced all responsive documents in its possession.

**14 & 15**.  **Qualcomm's pre-acquisition knowledge of Mr. Arabi's and Mr. Shokouhi's connection with Abreezio.**  The United States believes it has produced to you all material in its position regarding Qualcomm's internal communications related it to its due diligence analysis and review in connection with the Abreezio acquisition. To the extent your letter restates its request for Qualcomm's privilege claims, the United States incorporates its position above.

**18**.  **Complete contents of all email accounts.**  Your letter correctly notes the United States' objection to this request.  It is our understanding that the filter team has produced to each account holder's counsel the "raw" (or complete) returns for the account holder's email accounts.  If you believe that you have not received the

June 09, 2023
Bernstein, Lechman, Hanna, Chan, Sharp, Rotstein, Willingham, Lang & Kochsiek
Page 4

raw returns for accounts used by your individual client, please let us know right away, or please contact the filter team directly.

It is our position that producing—or more accurately, asking the filter team to produce—raw returns for accounts <u>not</u> held by an individual account holder would present serious potential problems.  Just as one example, the United States could potentially be producing privileged material to someone other than the privilege holder.  Particularly since you have not identified authority requiring such a production, we decline to do so.

**19**.  **Additional grand jury returns.**  Your letter correctly states that the investigation is ongoing.  The United States will produce additional discoverable material received in response to grand jury subpoenas.

**20**.  **MLAT material.**  There are presently outstanding MLAT requests for which the United States is awaiting responsive documents.  The United States will continue to produce responsive records as it receives them.

**21**.  **Additional material from Qualcomm.**  The most recent discovery production included certain additional material received from Qualcomm.

**22**.  **Mr. Shokouhi's termination.**  The United States believes it has produced all documents it received from Qualcomm relating to Mr. Shokouhi's termination from Qualcomm and the hiring model he implemented.

June 09, 2023
Bernstein, Lechman, Hanna, Chan, Sharp, Rotstein, Willingham, Lang & Kochsiek
Page 5


Please do not hesitate to contact us at any time if you have any questions about these responses or any of the material included in discovery.


Best regards,


RANDY S. GROSSMAN
United States Attorney

NICHOLAS W. PILCHAK
Assistant U.S. Attorney

*cc:*   ***Assistant U.S. Attorneys Janaki G. Chopra & Eric R. Olah***

Exhibit D



August 1, 2023

<u>VIA E-MAIL ONLY</u>

Nicholas Pilchak, Assistant United States Attorney
Eric Olah, Assistant United States Attorney
Janaki Chopra, Assistant United States Attorney
United States Attorney's Office
Southern District of California
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9709
Nicholas.Pilchak@usdoj.gov
Eric.Olah@usdoj.com
Janaki.Chopra@usdoj.gov

> **In re:**   ***United States v. Arabi, et al.,*** **S.D. Cal. case no. 22-CR-1152-BAS**
> ***Discovery Demand***

Dear Nick:

    We write to respond to your July 26, 2023, email and to highlight two additional specific discovery requests.

    We are still awaiting the evidence seized from the devices seized in August 2022.  We understand you are producing this discovery forthwith and look forward to this.  Further, to your question, we do appear to be missing some devices as well, including the Macbook Air C02TQ2HSHV2N, Lenovo laptop R90LGQA2, and iPhone 13 PRO LT9XP67HDW.

    Regarding the raw returns, we understand that the government's position is that it is only providing raw returns of email accounts to the account holder.  The government also maintains that Dr. Arabi was the true owner and user of various accounts.  By the government's theory, under the government's position, we request the raw returns of any and all accounts the government contends were used by Dr. Arabi.

    We respond regarding our request for the government's MLATs requests below.

    Regarding the VAN prefix of discovery in production 6, we asked "(1) In which proceedings these documents were previously produced as this range doesn't appear in the civil suit documents previously produced by the government, and (2) Who originally produced these documents."  In response, you indicated that you received these documents in a voluntary production from counsel for Bradley Quinton.  Our questions regarding this prefix remain unanswered, and we appreciate your response.



*United States v. Arabi*
*Discovery Request*
Page 2

Further, after reviewing the discovery already produced, as well as recent filings, including the pleading documents for Sanjiv Taneja, Dr. Arabi supplements prior discovery requests with the following:

1. **All materials, notes, recordings, transcripts, and other documentation of any cooperation agreement with Mr. Taneja. This request includes, but is not limited to, any written or other cooperation agreement(s) between Mr. Taneja, including any and all promises made, formal and informal, as well as any and all communications regarding the same. This request also includes all information provided by Mr. Taneja to the government, including any reports, recordings, transcripts, and other documentation of the same.**

On July 28, 2023, the government lodged a plea agreement, financial addendum, and Rule 11 consent to plead before a magistrate form between itself and Mr. Taneja. Under this agreement, Mr. Taneja will plead only to Count 7 of the Superseding Indictment, and the government will dismiss all remaining charges against him at sentencing. The factual basis of the plea agreement includes references to alleged communications between Dr. Arabi and Mr. Taneja. Previously, the government communicated that Dr. Arabi faced a guidelines range of 324-405 months incarceration. In contrast, Mr. Taneja's plea contemplates a guidelines range of 41-51 months incarceration with the possibility of further reductions to the advisory guidelines role.

We request all information related to Mr. Taneja's negotiated plea deal and cooperation agreement under various authority, including but not limited to Rule 16, *Giglio*, *Roviaro*, and *Brady*. The requested discovery is material to Dr. Arabi's preparation of a defense and how he investigates the charges against him. For example, the government asserts in the superseding indictment that Dr. Arabi and Mr. Taneja conspired to defraud Qualcomm. The factual basis of Mr. Taneja's plea agreement states that Dr. Arabi coordinated much of the alleged scheme, but the plea agreement does not elaborate. The details of Mr. Taneja's cooperation underlying these facts will inform the defense's theory as to Dr. Arabi's relationship with Mr. Taneja and Abreezio, and what investigation must be done to either refute the government's theory or support Dr. Arabi's theory. The requested discovery is also material to the biases and credibility of Mr. Taneja and any evidence or testimony that he provides.

Materiality is a "low threshold" that is satisfied so long as the requested information "would [] help [Dr. Arabi] prepare a defense. *See United States v. Hernandez-Meza*, 720 F.3d 760, 767 (9th Cir. 2013) (internal citations omitted). "Information is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path. *Id*. (internal citations omitted).

Additionally, as you know, the government must disclose the contents of an informant's cooperation with the government to the defense. *Giglio v. United States* requires prosecutors to disclose to the defense any understandings or agreements that the government has made with a trial witness. 405 U.S. 150, 154–55 (1972). In particular, the government must produce the contents of any meetings or communications with an informant. *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) ("Where the . . . contents of [an informant's] communication [] is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the



privilege must give way."); *United States v. Struckman*, 611 F.3d 560, 580 (9th Cir. 2010) (applying *Roviaro*).  The government must disclose any information derived from informants which exculpates or tends to exculpate Dr. Arabi.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

**2.  All MLAT requests sent by the government to foreign governments.**

We asked you to provide or direct us to the MLAT requests that the government sent.  In response, on July 26, 2023, you wrote that you have not produced MLTA requests or believe them to be discoverable, and to share any contrary authority.  In our research, we have found that Ninth Circuit case law presumes that MLAT requests, along with the returns on those requests, are discoverable to the defense to enable the defense to attack the requests, such that the withholding of the MLAT requests violates Dr. Arabi's constitutional due process rights.  *See, e.g.*, *United States v. Hagege*, 437 F.3d 943, 947-48, 954-55 (2006) (describing the defendant's analysis of the language in the government's MLAT request documents).  In *Hagege*, prior to filing the indictment, as it did here, the government moved for suspension of the statute of limitations in order to obtain foreign evidence via an MLAT request.  *Id.* at 946-47.  During litigation, Hagege filed a motion to dismiss count one of the indictment against him for violating the statute of limitations.  *Id.* at 946.  In his analysis, Hagege referenced specific language in the MLAT requests, demonstrating that the requests were discovered to him prior to the filing of the motion to dismiss.  *Id.* at 947-48.  The case, like all others we found, makes no mention of any question of the discoverability of MLAT request documents, and, instead, accepts as obvious that those materials are discoverable to a defendant.  *See generally id.*

Similarly, in *United States v. Jenkins*, the defense argued that the district court erred in granting the government's application to suspend the statute of limitations due to an MLAT request pursuant to 18 U.S.C § 3282.  633 F.3d 788, 794-96.  To make its arguments, the defense analyzed the language in two separate MLAT request documents submitted to the district court by the government.  *Id.* at 794-96, 797-801.  In *United States v. Gentry*, the government was ordered to produce and publicly file as exhibits its MLAT request documents during the litigation of a defense motion to dismiss for violations of the statute of limitations.  No. CR 06-0464-PHX-SRB, 2008 WL 11347953, at 1*- *4 (D. Ariz. Apr. 24, 2008).

These cases demonstrate that MLAT requests are discoverable under Rule 16 and *Brady*, and that all case law we have found presumes their disclosure.  If you have contrary case law that indicates that the government may withhold this information, please let us know so we can reevaluate.  But until we are informed of authority permitting the government to withhold requested, material, discoverable information, we believe the lack of production of such violates Dr. Arabi's constitutional rights.  Dr. Arabi cannot vindicate his rights to a fair trial and due process when the government withholds evidence material to the preparation of a defense or pretrial litigation.  *Brady*, 373 U.S. at 87-88.

///

///

///



*United States v. Arabi*
*Discovery Request*
Page 4

Thank you for your prompt attention to these matters, and of course, please reach out anytime to discuss.

Very truly yours,

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

Whitney Z. Bernstein
Sandra C. Lechman



**U.S. Department of Justice**

***ANDREW R. HADEN***
*Acting United States Attorney*
*Southern District of California*

| | |
|---|---|
| *Nicholas W. Pilchak* | *(619) 546-9709* |
| *Assistant U.S. Attorney* | *Fax (619) 546-0510* |
| *Email:* | *nicholas.pilchak@usdoj.gov* |

| | |
|---|---|
| *San Diego County Office* | *Imperial County Office* |
| *Federal Office Building* | *516 Industry Way* |
| *880 Front Street, Room 6293* | *Suite C* |
| *San Diego, California  92101-8893* | *Imperial County, California 92251-5782* |

August 8, 2023

***VIA ELECTRONIC MAIL ONLY***

**Whitney Bernstein**
**Sandra Lechman**
Bienert Katzman Littrell
   Williams LLP
wbernstein@bklwlaw.com
slechman@bklwlaw.com

RE:   <u>**United States v. Karim Arabi et al.,** 22-CR-1152-BAS</u>

Dear Counsel:

This letter responds to your discovery requests made by letter dated August 1, 2023.

Records seized from devices searched pursuant to August 2022 search warrants will be produced to you roughly simultaneously with this letter.  The three specific devices identified in your letter have, according to FBI records, already been returned to your staff person Michelle Dillon.  Specifically, the Lenovo was returned November 7, 2022; the MacBook Air and the iPhone 13 Pro were returned September 26, 2022.  Please let us know if we can be of further assistance tracking down these items, for example by providing copies of the property receipts.

Concerning the raw email account returns, as we have expressed, one of our main concerns is producing potentially privileged materials to non-privilege holders. Because the accounts allegedly used by Dr. Arabi were not necessarily *solely* used by Dr. Arabi, our concern persists for those accounts.  For understandable reasons, you may not be in a position to confirm that Dr. Arabi was the sole user of any such accounts.  If Sheida Alan's counsel is willing to confirm that she has no privilege

August 8, 2023
Letter to Bernstein & Lechman
Page 2

concerns with respect to any such accounts, that would remove our primary issue with respect to producing the raw returns (for those accounts) to you.  If you have any contact information for counsel representing Ms. Alan that you are willing to share, please do so.  We are aware of Scott Fenton in Toronto, but are particularly interested in U.S. counsel if you are aware of any.

The United States does not know the answers to your questions about the "VAN" prefix for records voluntarily produced by counsel for Bradley Quinton.  If we learn that information, we will share it with you.

As to Sanjiv Taneja, the United States understands its obligations under *Brady*, *Giglio*, and their progeny, as well as Rule 16 and we will produce the appropriate records in a timely matter.  For example, Mr. Taneja has not yet entered a guilty plea, but we would expect to produce the associated plea papers in discovery promptly thereafter, assuming the plea goes forward.

As to the MLAT requests, we appreciate your clarification and supplementing your position, particularly with reference to the cases you have provided.  While we are still finalizing our own position, we expect to be able to work with you about producing some form of discovery that will hopefully address your concerns.  In that respect, please let us know if you would be willing to enter a supplemental protective order for the MLAT requests that would provide for their filing under seal in the event you felt the need to use them as exhibits in any relevant litigation at the motions phase.

August 8, 2023
Letter to Bernstein & Lechman
Page 3


Please do not hesitate to contact us at any time if you have any questions about these responses or any of the material included in discovery.


Best regards,


ANDREW R. HADEN
Acting United States Attorney


NICHOLAS W. PILCHAK
Assistant U.S. Attorney

*cc:*   ***Assistant U.S. Attorneys Janaki G. Chopra & Eric R. Olah***

# Exhibit E
## (Filed Conditionally Under Seal)

# Exhibit F
## (Filed Conditionally Under Seal)

# Exhibit G
## (Filed Conditionally Under Seal)

# Exhibit H
## (Filed Conditionally Under Seal)

# Exhibit I
## (Filed Conditionally Under Seal)

# Exhibit J
## (Filed Conditionally Under Seal)

# Exhibit K
## (Filed Conditionally Under Seal)

Exhibit L



1 | HUESTON HENNIGAN LLP
John C. Hueston, State Bar No. 164921
2 | jhueston@hueston.com
Marshall A. Camp, State Bar No. 231389
3 | mcamp@hueston.com
Padraic Foran, State Bar No. 268278
4 | pforan@hueston.com
Joshua Michelangelo Stein, State Bar No. 298856
5 | jstein@hueston.com
Kathrynne Nicole Seiden, State Bar No. 310902
6 | kseiden@hueston.com
523 West 6th Street, Suite 400
7 | Los Angeles, CA 90014
Telephone:   (213) 788-4340
8 | Facsimile:   (888) 775-0898

9 | Attorneys for Plaintiff
Qualcomm Technologies, Inc.

10

F I L E D
Clerk of the Superior Court

FEB 28 2018

By: Anthony Shirley, Deputy

Order Signed  3/7/18

FEB 28 '18 at 10:57

11 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

12 | COUNTY OF SAN DIEGO, CENTRAL DIVISION

13

14 | Qualcomm Technologies, Inc.,

15 |          Plaintiff,

16 |     vs.

17 | Karim Arabi; Sheida Arabi a/k/a Sheida Alan;
Sanjiv Taneja; and DOES 1 through 10,
18 | inclusive,

19 |          Defendant.

20 |
21 | Sheida Alan,

22 |          Cross-Complainant,

23 |     vs.

24 | Qualcomm Technologies, Inc.,

25 |          Cross-Defendant.

Case No. 37-2017-00040719-CU-FR-CTL

**STIPULATION AND PROTECTIVE
ORDER REGARDING CONFIDENTIAL
AND HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
DESIGNATIONS**

Judge:        Hon. Randa Trapp
Department:   C-70

26
27
28

STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND
HIGHLY CONFIDENTIAL - AEO DESIGNATIONS

5260275

By Fax

1     **IT IS HEREBY STIPULATED** by and between the parties *Qualcomm Technologies, Inc.*

2 *v. Karim Arabi et al*, Qualcomm Technologies, Inc., Karim Arabi, and Sheida Arabi a/k/a Sheida

3 Alan (collectively, "Parties"), by and through and their respective counsel of record, that in order to

4 facilitate the exchange of information and documents which may be subject to confidentiality

5 limitations on disclosure due to federal laws, state laws, and privacy rights, the Parties stipulate as

6 follows:

7     1.     In this Stipulation and Protective Order, the words set forth below shall have the

8 following meanings:

9     a.     "Proceeding" means the above-entitled proceeding, San Diego County Superior

10 Court Case No. 37-2017-00040719-CU-FR-CTL.

11     b.     "Court" means the Hon. Randa Trapp, or any other judge to which this Proceeding

12 may be assigned, including Court staff participating in such proceedings.

13     c.     "Confidential" means any Documents, Testimony, or Information which is in the

14 possession of a Designating Party who believes in good faith that such Documents, Testimony, or

15 Information is entitled to confidential treatment under applicable law.

16     d.     "Confidential Materials" means any Documents, Testimony, or Information as

17 defined below designated as "Confidential" pursuant to the provisions of this Stipulation and

18 Protective Order.

19     e.     "Highly Confidential - Attorneys' Eyes Only" means any information which

20 belongs to a Designating Party who believes in good faith that the Disclosure of such information

21 to another Party or non-Party would create a substantial risk of serious financial or other injury that

22 cannot be avoided by less restrictive means.

23     f.     "Highly Confidential - Attorneys' Eyes Only Materials" means any Documents,

24 Testimony, or Information, as defined below, designated as "Highly Confidential - Attorneys' Eyes

25 Only" pursuant to the provisions of this Stipulation and Protective Order.

26     g.     "Designating Party" means the Party that designates Documents, Testimony, or

27 Information, as defined below, as "Confidential" or "Highly Confidential - Attorneys' Eyes Only."

28

h.    "Disclose" or "Disclosed" or "Disclosure" means to reveal, divulge, give, or make available Materials, or any part thereof, or any information contained therein.

i.    "Documents" means (i) any "Writing," "Original," and "Duplicate" as those terms are defined by California Evidence Code Sections 250, 255, and 260, which have been produced in discovery in this Proceeding by any person or entity, and (ii) any copies, reproductions, or summaries of all or any part of the foregoing.

j.    "Information" means the content of Documents or Testimony.

k.    "Testimony" means all depositions, declarations, or other testimony taken or used in this Proceeding.

2.    The Designating Party shall have the right to designate as "Highly Confidential - Attorneys' Eyes Only" only the non-public Documents, Testimony, or Information that the Designating Party in good faith believes would create a substantial risk of serious financial or other injury, if Disclosed to another Party or non-Party, and that such risk cannot be avoided by less restrictive means.

3.    The entry of this Stipulation and Protective Order does not alter, waive, modify, or abridge any right, privilege, or protection otherwise available to any Party with respect to the discovery of matters, including but not limited to any Party's right to assert the attorney-client privilege, the attorney work product doctrine, or other privileges, or any Party's right to contest any such assertion.

4.    Any Documents, Testimony, or Information to be designated as "Confidential" or "Highly Confidential - Attorneys' Eyes Only" must be clearly so designated before the Document, Testimony, or Information is Disclosed or produced. The "Confidential" or "Highly Confidential - Attorneys' Eyes Only" designation should not obscure or interfere with the legibility of the designated Information.

a.    For Documents (apart from transcripts of depositions or other pretrial or trial proceedings), the Designating Party must affix the legend "Confidential" or "Highly Confidential - Attorneys' Eyes Only" on each page of any Document containing such designated material.

b.    For Testimony given in depositions the Designating Party may either:

1           i.      identify on the record, before the close of the deposition, all "Confidential"

2 or "Highly Confidential - Attorneys' Eyes Only" Testimony, by specifying all portions of the

3 Testimony that qualify as "Confidential" or "Highly Confidential - Attorneys' Eyes Only;" or

4           ii.     designate the entirety of the Testimony at the deposition as "Confidential" or

5 "Highly Confidential - Attorneys' Eyes Only" (before the deposition is concluded) with the right to

6 identify more specific portions of the Testimony as to which protection is sought within 30 days

7 following receipt of the deposition transcript. In circumstances where portions of the deposition

8 Testimony are designated for protection, the transcript pages containing "Confidential" or "Highly

9 Confidential - Attorneys' Eyes Only" Information may be separately bound by the court reporter,

10 who must affix to the top of each page the legend "Confidential" or "Highly Confidential -

11 Attorneys' Eyes Only," as instructed by the Designating Party.

12     c.     For Information produced in some form other than Documents, and for any other

13 tangible items, including, without limitation, compact discs or DVDs, the Designating Party must

14 affix in a prominent place on the exterior of the container or containers in which the Information or

15 item is stored the legend "Confidential" or "Highly Confidential - Attorneys' Eyes Only." If only

16 portions of the Information or item warrant protection, the Designating Party, to the extent

17 practicable, shall identify the "Confidential" or "Highly Confidential - Attorneys' Eyes Only"

18 portions.

19     5.     The inadvertent production by any of the undersigned Parties or non-Parties to the

20 Proceedings of any Document, Testimony, or Information during discovery in this Proceeding

21 without a "Confidential" or "Highly Confidential - Attorneys' Eyes Only" designation, shall be

22 without prejudice to any claim that such item is "Confidential" or "Highly Confidential -

23 Attorneys' Eyes Only" and such Party shall not be held to have waived any rights by such

24 inadvertent production. In the event that any Document, Testimony, or Information that is subject

25 to a "Confidential" or "Highly Confidential - Attorneys' Eyes Only" designation is inadvertently

26 produced without such designation, the Party that inadvertently produced the document shall give

27 written notice of such inadvertent production within twenty (20) days of discovery of the

28 inadvertent production, together with a further copy of the subject Document, Testimony, or

1  Information designated as "Confidential" or "Highly Confidential - Attorneys' Eyes Only" (the
2  "Inadvertent Production Notice"). Upon receipt of such Inadvertent Production Notice, the Party
3  that received the inadvertently produced Document, Testimony, or Information shall promptly
4  destroy the inadvertently produced Document, Testimony, or Information and all copies thereof, or,
5  at the expense of the producing Party, return such together with all copies of such Document,
6  Testimony or Information to counsel for the producing Party and shall retain only the
7  "Confidential" or "Highly Confidential - Attorneys' Eyes Only" materials. Should the receiving
8  Party choose to destroy such inadvertently produced Document, Testimony, or Information, the
9  receiving Party shall notify the producing Party in writing of such destruction within ten (10) days
10  of receipt of written notice of the inadvertent production. This provision is not intended to apply to
11  any inadvertent production of any Document, Testimony, or Information protected by attorney-
12  client or work product privileges, a topic that is addressed separately below. In the event that this
13  provision conflicts with any applicable law regarding waiver of confidentiality through the
14  inadvertent production of Documents, Testimony or Information, such law shall govern.

15          6.      In the event that counsel for a Party receiving Documents, Testimony or Information
16  in discovery designated as "Confidential" or "Highly Confidential - Attorneys' Eyes Only" objects
17  to such designation with respect to any or all of such items, said counsel shall advise counsel for
18  the Designating Party, in writing, of such objections, the specific Documents, Testimony or
19  Information to which each objection pertains, and the specific reasons and support for such
20  objections (the "Designation Objections"). Counsel for the Designating Party shall have twenty
21  (20) days from receipt of the written Designation Objections to either (a) agree in writing to de-
22  designate Documents, Testimony, or Information pursuant to any or all of the Designation
23  Objections and/or (b) file a motion with the Court seeking to uphold any or all designations on
24  Documents, Testimony, or Information addressed by the Designation Objections (the "Designation
25  Motion"). Pending a resolution of the Designation Motion by the Court, any and all existing
26  designations on the Documents, Testimony, or Information at issue in such Motion shall remain in
27  place. The Designating Party shall have the burden on any Designation Motion of establishing the
28  applicability of its "Confidential" or "Highly Confidential - Attorneys' Eyes Only" designation. In

1   the event that the Designation Objections are neither timely agreed to nor timely addressed in the

2   Designation Motion, then such Documents, Testimony, or Information shall be de-designated in

3   accordance with the Designation Objection applicable to such material.

4        7.     Access to and/or Disclosure of Confidential Materials shall be permitted only to the

5   following persons or entities:

6        a.     the Court;

7        b.     (1) Attorneys of record in the Proceeding and their affiliated attorneys who are

8   actively involved in the Proceeding and are not employees of any Party, and staff and supporting

9   personnel of such attorneys, such as paralegal assistants, secretarial, stenographic and clerical

10   employees and contractors, and outside document vendor or copying services, who are working on

11   this Proceeding (or any further proceedings herein) under the direction of such attorneys; and (2)

12   In-house counsel to the undersigned Parties and the paralegal, clerical and secretarial staff

13   employed by such counsel. Such non-lawyer employees, assistants, contractors and agents to whom

14   such access is permitted and/or Disclosure is made shall, prior to such access or Disclosure, be

15   advised that such materials are being Disclosed pursuant to, and are subject to, the terms of this

16   Stipulation and Protective Order and that they may not be Disclosed other than pursuant to its

17   terms.

18        c.     those officers, directors, partners, members, employees and agents of all non-

19   designating Parties that counsel for such Parties deems necessary to aid counsel in the prosecution

20   and defense of this Proceeding; provided, however, that prior to the Disclosure of Confidential

21   Materials to any such officer, director, partner, member, employee or agent, counsel for the Party

22   making the Disclosure shall deliver a copy of this Stipulation and Protective Order to such person,

23   shall explain that such person is bound to follow the terms of such Order, and shall secure the

24   signature of such person on a statement in the form attached hereto as Exhibit A;

25        d.     court reporters in this Proceeding (whether at depositions, hearings, or any other

26   proceeding);

27

28

1      e.      any deposition, trial, or hearing witness in the Proceeding who previously has had

2 access to the Confidential Materials, or who is currently or was previously an officer, director,

3 partner, member, employee or agent of an entity that has had access to the Confidential Materials;

4      f.      any deposition or non-trial hearing witness in the Proceeding who previously did not

5 have access to the Confidential Materials; provided, however, that each such witness given access

6 to Confidential Materials shall be advised that such materials are being Disclosed pursuant to, and

7 are subject to, the terms of this Stipulation and Protective Order and that they may not be Disclosed

8 other than pursuant to its terms;

9      g.      mock jury participants, provided, however, that prior to the Disclosure of

10 Confidential Materials to any such mock jury participant, counsel for the Party making the

11 Disclosure shall deliver a copy of this Stipulation and Protective Order to such person, shall explain

12 that such person is bound to follow the terms of such Order, and shall secure the signature of such

13 person on a statement in the form attached hereto as Exhibit A.

14      h.      outside experts or expert consultants consulted by the undersigned Parties or their

15 counsel in connection with the Proceeding, whether or not retained to testify at any oral hearing;

16 provided, however, that prior to the Disclosure of Confidential Materials to any such expert or

17 expert consultant, counsel for the Party making the Disclosure shall deliver a copy of this

18 Stipulation and Protective Order to such person, shall explain its terms to such person, and shall

19 secure the signature of such person on a statement in the form attached hereto as Exhibit A. It shall

20 be the obligation of counsel, upon learning of any breach or threatened breach of this Stipulation

21 and Protective Order by any such expert or expert consultant, to promptly notify counsel for the

22 Designating Party of such breach or threatened breach; and

23      i.      any other person or entity that the Designating Party agrees to in writing.

24      8.      Access to and/or Disclosure of Highly Confidential - Attorneys' Eyes Only

25 Materials shall be permitted only to the following persons or entities:

26      a.      the Court;

27      b.      (1) Attorneys of record in the Proceeding and their affiliated attorneys who are

28 actively involved in the Proceeding and are not employees of any Party, and staff and supporting

- 6 -

STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND
HIGHLY CONFIDENTIAL - AEO DESIGNATIONS

5260275

1   personnel of such attorneys, such as paralegal assistants, secretarial, stenographic and clerical
2   employees and contractors, and outside document vendor or copying services, who are working on
3   this Proceeding (or any further proceedings herein) under the direction of such attorneys and to
4   whom it is necessary that the Highly Confidential - Attorneys' Eyes Only Materials be Disclosed
5   for purposes of this Proceeding; and (2) In-house counsel to the undersigned Parties and the
6   paralegal, clerical and secretarial staff employed by such counsel. Such non-lawyer employees,
7   assistants, contractors and agents to whom such access is permitted and/or Disclosure is made shall,
8   prior to such access or Disclosure, be advised that such materials are being Disclosed pursuant to,
9   and are subject to, the terms of this Stipulation and Protective Order and that they may not be
10   Disclosed other than pursuant to its terms.

11       c.    outside experts or expert consultants consulted by the undersigned Parties or their
12   counsel in connection with the Proceeding, whether or not retained to testify at any oral hearing;
13   provided, however, that prior to the Disclosure of Highly Confidential - Attorneys' Eyes Only
14   Materials to any such expert or expert consultant, counsel for the Party making the Disclosure shall
15   deliver a copy of this Stipulation and Protective Order to such person, shall explain its terms to
16   such person, and shall secure the signature of such person on a statement in the form attached
17   hereto as Exhibit A prior to the Disclosure of Highly Confidential - Attorneys' Eyes Only
18   Materials. It shall be the obligation of Trial Counsel, upon learning of any breach or threatened
19   breach of this Stipulation and Protective Order by any such expert or expert consultant, to promptly
20   notify Trial Counsel for the Designating Party of such breach or threatened breach;

21       d.    any person who authored, received, saw or was otherwise familiar with Documents,
22   Testimony, or Information or thing designated "Highly Confidential - Attorneys' Eyes Only,"
23   including any person otherwise familiar with the Highly Confidential - Attorneys' Eyes Only
24   Information contained therein, but only to the extent of that person's prior familiarity with the
25   Highly Confidential - Attorneys' Eyes Only Information; and

26       e.    court reporters in this Proceeding (whether at depositions, hearings, or any other
27   proceeding).

28       9.    Confidential Materials and Highly Confidential - Attorneys' Eyes Only Materials

1 shall be used by the persons or entities receiving them only for the purposes of preparing for,

2 conducting, participating in the conduct of, and/or prosecuting and/or defending the Proceeding,

3 and not for any business or other purpose whatsoever.

4     10.     Any Party to the Proceeding (or other person subject to the terms of this Stipulation

5 and Protective Order) may ask the Court, after appropriate notice to the other Parties to the

6 Proceeding, to modify or grant relief from any provision of this Stipulation and Protective Order.

7     11.     Entering into, agreeing to, and/or complying with the terms of this Stipulation and

8 Protective Order shall not:

9     a.     operate as an admission by any person that any particular Document, Testimony, or

10 Information marked "Confidential" or "Highly Confidential - Attorneys' Eyes Only" contains or

11 reflects trade secrets, proprietary, confidential or competitively sensitive business, commercial,

12 financial or personal information; or

13     b.     prejudice in any way the right of any Party (or any other person subject to the terms

14 of this Stipulation and Protective Order):

15     i.     to seek a determination by the Court of whether any particular Confidential

16 Materials or Highly Confidential - Attorneys' Eyes Only Materials should be subject to protection

17 under the terms of this Stipulation and Protective Order; or

18     ii.     to seek relief from the Court on appropriate notice to all other Parties to the ·

19 Proceeding from any provision(s) of this Stipulation and Protective Order, either generally or as to

20 any particular Document, Material or Information.

21     12.     Any Party to the Proceeding who has not executed this Stipulation and Protective

22 Order as of the time it is presented to the Court for signature may thereafter become a Party to this

23 Stipulation and Protective Order by its counsel's signing and dating a copy thereof and filing the

24 same with the Court, and serving copies of such signed and dated copy upon the other Parties to

25 this Stipulation and Protective Order.

26     13.     Any Information that may be produced by a non-Party witness in discovery in the

27 Proceeding pursuant to subpoena or otherwise may be designated by such non-Party as

28 "Confidential" or "Highly Confidential - Attorneys' Eyes Only" under the terms of this Stipulation

1  and Protective Order, and any such designation by a non-Party shall have the same force and effect,

2  and create the same duties and obligations, as if made by one of the undersigned Parties hereto.

3  Any such designation shall also function as consent by such producing non-Party to the authority of

4  the Court in the Proceeding to resolve and conclusively determine any motion or other application

5  made by any person or Party with respect to such designation, or any other matter otherwise arising

6  under this Stipulation and Protective Order.

7       14.  If any person subject to this Stipulation and Protective Order who has custody of

8  any Confidential Materials or Highly Confidential - Attorneys' Eyes Only Materials receives a

9  subpoena or other process ("Subpoena") from any government or other person or entity demanding

10  production of such materials, the recipient of the Subpoena shall promptly give notice of the same

11  by electronic mail transmission, followed by either express mail or overnight delivery to counsel of

12  record for the Designating Party, and shall furnish such counsel with a copy of the Subpoena. Upon

13  receipt of this notice, the Designating Party may, in its sole discretion and at its own cost, move to

14  quash or limit the Subpoena, otherwise oppose production of the Confidential Materials or Highly

15  Confidential - Attorneys' Eyes Only Materials, and/or seek to obtain confidential treatment of such

16  materials from the subpoenaing person or entity to the fullest extent available under law. The

17  recipient of the Subpoena may not produce any Confidential Materials or Highly Confidential -

18  Attorneys' Eyes Only Materials pursuant to the Subpoena prior to the date specified for production

19  on the Subpoena.

20       15.  Nothing in this Stipulation and Protective Order shall be construed to preclude either

21  Party from asserting in good faith that certain Confidential Materials or Highly Confidential -

22  Attorneys' Eyes Only Materials require additional protection. The Parties shall meet and confer to

23  agree upon the terms of such additional protection.

24       16.  If, after execution of this Stipulation and Protective Order, any Confidential

25  Materials or Highly Confidential - Attorneys' Eyes Only Materials submitted by a Designating

26  Party under the terms of this Stipulation and Protective Order is Disclosed by a non-Designating

27  Party to any person other than in the manner authorized by this Stipulation and Protective Order,

28  the non-Designating Party responsible for the Disclosure shall bring all pertinent facts relating to

STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND
HIGHLY CONFIDENTIAL - AEO DESIGNATIONS

5260275

1   the Disclosure of such Confidential Materials or Highly Confidential - Attorneys' Eyes Only

2   Materials to the immediate attention of the Designating Party.

3        17.    This Stipulation and Protective Order is entered into without prejudice to the right of

4   any Party to knowingly waive the applicability of this Stipulation and Protective Order to any

5   Confidential Materials or Highly Confidential - Attorneys' Eyes Only Materials designated by that

6   Party. If the Designating Party uses Confidential Materials or Highly Confidential - Attorneys'

7   Eyes Only Materials in a non-Confidential manner, then the Designating Party shall advise that the

8   designation no longer applies.

9        18.    Where any Confidential Materials or Highly Confidential - Attorneys' Eyes Only

10   Materials, or Information derived therefrom, is included in any motion or other proceeding

11   governed by California Rules of Court, Rules 2.550 and 2.551, the Parties and any involved non-

12   party shall follow those rules. ~~With respect to discovery motions or other proceedings not governed~~

13   ~~by California Rules of Court, Rules 2.550 and 2.551, the following shall apply: If Confidential~~

14   ~~Materials, Highly Confidential - Attorneys' Eyes Only Materials, or Information derived therefrom~~

15   ~~are submitted to or otherwise disclosed to the Court in connection with discovery motions and~~

16   ~~proceedings, the same shall be separately filed under seal with the clerk of the Court in an envelope~~

17   ~~marked: "CONFIDENTIAL – FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

18   ~~AND WITHOUT ANY FURTHER SEALING ORDER REQUIRED."~~ (RT)

19        19.    The Parties shall meet and confer regarding the procedures for use of any

20   Confidential Materials or Highly Confidential - Attorneys' Eyes Only Materials at trial and shall

21   move the Court for entry of an appropriate order.

22        20.    Nothing in this Stipulation and Protective Order shall affect the admissibility into

23   evidence of Confidential Materials or Highly Confidential - Attorneys' Eyes Only Materials, or

24   abridge the rights of any person to seek judicial review or to pursue other appropriate judicial

25   action with respect to any ruling made by the Court concerning the issue of the status of any

26   Confidential Materials or Highly Confidential - Attorneys' Eyes Only Materials.

27        21.    This Stipulation and Protective Order shall continue to be binding after the

28   conclusion of this Proceeding and all subsequent proceedings arising from this Proceeding, except

STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND
HIGHLY CONFIDENTIAL - AEO DESIGNATIONS

5260275

1  that a Party may seek the written permission of the Designating Party or may move the Court for
2  relief from the provisions of this Stipulation and Protective Order. To the extent permitted by law,
3  the Court shall retain jurisdiction to enforce, modify, or reconsider this Stipulation and Protective
4  Order, even after the Proceeding is terminated.

5      22.    Upon written request made within thirty (30) days after the settlement or other
6  termination of the Proceeding, the undersigned Parties shall have thirty (30) days to either (a)
7  promptly return to counsel for each Designating Party all Confidential Materials and Highly
8  Confidential - Attorneys' Eyes Only Materials, and all copies thereof (except that counsel for each
9  Party may maintain in its files, in continuing compliance with the terms of this Stipulation and
10 Protective Order, all work product, and one copy of each pleading filed with the Court and one
11 copy of each deposition together with the exhibits marked at the deposition), (b) agree with counsel
12 for the Designating Party upon appropriate methods and certification of destruction or other
13 disposition of such materials, or (c) as to any Documents, Testimony, or other Information not
14 addressed by sub-paragraphs (a) and (b), file a motion seeking a Court order regarding proper
15 preservation of such Materials. To the extent permitted by law the Court shall retain continuing
16 jurisdiction to review and rule upon the motion referred to in sub-paragraph (c) herein.

17     23.    After this Stipulation and Protective Order has been signed by counsel for all
18 Parties, it shall be presented to the Court for entry. Counsel agree to be bound by the terms set forth
19 herein with regard to any Confidential Materials or Highly Confidential - Attorneys' Eyes Only
20 Materials that have been produced before the Court signs this Stipulation and Protective Order.

21     24.    The Parties and all signatories to the Certification attached hereto as Exhibit A agree
22 to be bound by this Stipulation and Protective Order pending its approval and entry by the Court. In
23 the event that the Court modifies this Stipulation and Protective Order, or in the event that the
24 Court enters a different Protective Order, the Parties agree to be bound by this Stipulation and
25 Protective Order until such time as the Court may enter such a different Order. It is the Parties'
26 intent to be bound by the terms of this Stipulation and Protective Order pending its entry so as to
27 allow for immediate production of Confidential Materials and Highly Confidential - Attorneys'
28 Eyes Only Materials under the terms herein.

1

2    This Stipulation and Protective Order may be executed in counterparts.

3

4  Dated: February 23, 2018           HUESTON HENNIGAN LLP

5

6                          By: _____

7                             Marshall Camp
                              Attorneys for Plaintiff
8                             Qualcomm Technologies, Inc.

9  Dated: February 27, 2018           IRELL & MANELLA LLP

10

11                          By: Iian D. Jablon

12                             Iian Jablon
                             Attorneys for Defendants
13                             Karim Arabi and Sheida Arabi

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -
STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND
HIGHLY CONFIDENTIAL - AEO DESIGNATIONS

5260275

1

[PROPOSED] ORDER

2

GOOD CAUSE APPEARING, the Court hereby approves this Stipulation and Protective

3

Order.

4

IT IS SO ORDERED.

5

6

Dated: _____ MAR 0 7 2018 _____     _____ RANDA TRAPP _____

7

JUDGE OF THE SUPERIOR COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -
STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND
HIGHLY CONFIDENTIAL - AEO DESIGNATIONS

5260275

# EXHIBIT A

| | |
|---|---|
| 1 | EXHIBIT A |
| 2 | **CERTIFICATION RE CONFIDENTIAL DISCOVERY MATERIALS** |
| 3 | I hereby acknowledge that I, _____ [NAME], |
| 4 | _____ [POSITION AND EMPLOYER], am about |

5  to receive Confidential Materials supplied in connection with the Proceeding, *Qualcomm*

6  *Technologies, Inc. v. Karim Arabi et al.*, San Diego County Superior Court Case No. 37-2017-

7  00040719-CU-FR-CTL. I certify that I understand that the Confidential Materials and/or Highly

8  Confidential - Attorneys' Eyes Only Materials are provided to me subject to the terms and

9  restrictions of the Stipulation and Protective Order filed in this Proceeding. I have been given a

10 copy of the Stipulation and Protective Order; I have read it, and I agree to be bound by its terms.

11     I understand that the Confidential Materials and Highly Confidential - Attorneys' Eyes

12 Only Materials, as defined in the Stipulation and Protective Order, including any notes or other

13 records that may be made regarding any such materials, shall not be Disclosed to anyone except as

14 expressly permitted by the Stipulation and Protective Order. I will not copy or use, except solely

15 for the purposes of this Proceeding, any Confidential Materials or Highly Confidential - Attorneys'

16 Eyes Only Materials obtained pursuant to this Stipulation and Protective Order, except as provided

17 therein or otherwise ordered by the Court in the Proceeding.

18     I further understand that I am to retain all copies of all Confidential Materials and Highly

19 Confidential - Attorneys' Eyes Only Materials provided to me in the Proceeding in a secure

20 manner, and that all copies of such materials are to remain in my personal custody until termination

21 of my participation in this Proceeding, whereupon the copies of such materials will be returned to

22 counsel who provided me with such materials.

23     I declare under penalty of perjury, under the laws of the State of California, that the

24 foregoing is true and correct. Executed this _____ day of _____, 2018,

25 at _____.

26

27

28

- 14 -
STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND
HIGHLY CONFIDENTIAL - AEO DESIGNATIONS

*5260275*



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BY: _____
Signature

_____
Title

_____
Address

_____
City, State, Zip

_____
Telephone Number

- 15 -
STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND
HIGHLY CONFIDENTIAL - AEO DESIGNATIONS

5260275

1

## PROOF OF SERVICE

2
3   I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

4   On February 28, 2018, I served the foregoing document(s) described as:

5   **STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL AND HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY DESIGNATIONS**

6
7   on the interested parties in this action as stated below:

8       Morgan Chu
        Iian Jablon
        Anthony Rowles
9       IRELL & MANELLA LLP
        1800 Avenue of the Stars, Suite 900
10      Los Angeles, California 90067

11      E-MAIL: mchu@irell.com
        E-MAIL: ijablon@irell.com
12      E-MAIL: trowles@irell.com

13   ☒   (BY E-MAIL) By transmitting a true copy of the foregoing document(s) to the e-mail addresses set forth above.

14
15   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

16   Executed on February 28, 2018, at Los Angeles, California.

17
18   _____
        Cindy Altenfelder                        (Signature)
        (Type or print name)

19
20
21
22
23
24
25
26
27
28

- 1 -

5268641

# Exhibit M
## (Filed Conditionally Under Seal)

# Exhibit N
## (Filed Conditionally Under Seal)

Exhibit O

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (this "Agreement") is entered into as of the Effective Date by and among Qualcomm Technologies, Inc. ("Qualcomm"), Karim Arabi, and Sheida Alan (a/k/a/ Sheida Arabi, hereinafter "Sheida Alan") (collectively, the "Parties").

WHEREAS, Qualcomm has asserted claims against Karim Arabi and Sheida Alan in the matter of *Qualcomm Technologies, Inc. v. Karim Arabi and Sheida Alan*, Case No. 37-2017-00040719-CU-FR-CTL in San Diego Superior Court ("the Action");

WHEREAS, as part of the Action, Qualcomm has asserted a claim against Sheida Alan pursuant to the October 30, 2015 Unit Purchase Agreement entered into by and among Qualcomm, Abreezio, LLC and the members of Abreezio, LLC (including Sheida Alan) pursuant to which Qualcomm acquired all membership units of Abreezio (the "UPA"), for losses and damages resulting from alleged breaches of warranty, breaches of covenants, and misrepresentations made in the UPA;

WHEREAS, Sheida Alan has asserted cross-claims against Qualcomm in the Action;

WHEREAS, Sheida Alan and Karim Arabi each dispute the validity of the claims asserted by Qualcomm in the Action, and Qualcomm disputes the validity of the cross-claims asserted by Sheida Alan in the Action;

WHEREAS, the Parties on October 30, 2018, entered into a term sheet agreement (the "Term Sheet Agreement") in which they agreed to negotiate in good faith toward mutual execution of a longer-form definitive agreement to conclude their dispute and dismiss the Action;

WHEREAS, the Parties now desire to settle and compromise all disputes between them pertaining to any claims made in the Action in order to avoid risk, expense, and uncertainty of further litigation.

NOW, THEREFORE, in consideration of the foregoing recitals, the promises contained herein, and other good and valuable consideration, the Parties agree as follows:

1.  <u>Definitions.</u>  As used in this Agreement, the following terms shall have the meanings stated:

1.1.  "Qualcomm" shall mean (a) Qualcomm Technologies, Inc., (b) the parents, subsidiaries, and related and affiliated entities of Qualcomm Technologies, Inc., and (c) the current and former shareholders, directors, officers, employees, attorneys, agents and representatives of Qualcomm Technologies, Inc. and its parent, subsidiary, related and affiliated entities.

1.2.  The "Defendants" shall mean Karim Arabi and Sheida Alan collectively, and each of their respective family members, family trusts, affiliated entities, agents, representatives, and attorneys.

1.3.  The "Parties" shall mean Qualcomm, Karim Arabi, and Sheida Alan, collectively, and a "Party" shall mean any one of the Parties individually.

1.4.    The "Effective Date" shall mean December 6, 2018.

1.5.    The "Release Date" shall have the meaning provided in Section 4.1 of this Agreement.

2.    <u>Payment by Sheida Alan.</u>  In consideration of the promises, agreements, and releases of Qualcomm contained in this Agreement, Sheida Alan agrees to make the following payments:

2.1.    <u>Total payment.</u> Sheida Alan shall pay to Qualcomm the total sum of $45,000,000 USD ($45 million USD) (the "Total Payment") plus all of Sheida Alan's right, title or interest that she may have in or to any portion of the Indemnification Holdback (as that term is used in the UPA), to be paid as follows:

2.1.1.    <u>First installment.</u>  Sheida Alan shall pay to Qualcomm the sum of $15,000,000 USD ($15 million USD) (the "First Installment")  no earlier than January 2, 2019, and no later than January 4, 2019. Provided that Qualcomm complies with its obligations under this Agreement, the Parties agree that the first $5,000,000 USD ($5 million USD) of the First Installment shall be treated as non-refundable reimbursement to Qualcomm for attorneys' fees and other costs it has incurred in connection with the Action.

2.1.2.    <u>Second installment</u>. Sheida Alan shall pay to Qualcomm the sum of $30,000,000 USD ($30 million USD) (the "Second Installment") within one hundred eighty (180) calendar days of the Effective Date.

2.1.3.    <u>Indemnification Holdback</u>. Sheida Alan shall forfeit and release to Qualcomm any right, title or interest she may have in or to any portion of the Indemification Holdback (as that term is used in the UPA) as of the Effective Date.

2.1.4.    <u>Karim Arabi Jointly and Severally Liable For Total Payment</u>. Karim Arabi is jointly and severally liable with Sheida Alan for the Total Payment (including without limitation the First Installment and the Second Installment), and shall be jointly and severally responsible for any failure by Sheida Alan to timely pay either the First Installment or the Second Installment.

2.2.    <u>Method of payment</u>. The payments by Karim Arabi and Sheida Alan required under this Agreement shall be made via wire transfer as follows:

    Bank: Bank of America
    ABA: 026009593
    SWIFT: BOFAUS3N
    Account name: Qualcomm Technologies, Inc.
    Account number: 12911-40116

3.    <u>Dismissal without prejudice and tolling agreement.</u>

3.1.    <u>Dismissal of the Action without prejudice.</u> Within two (2) court days  after each Party has signed this Agreement and delivered an executed copy to each other Party,

Qualcomm and Sheida Alan shall jointly file in the Court in which the Action was filed (the "Court") a stipulation and proposed order in substantially the form attached hereto as Exhibit A, or such other filing as the Court may require, dismissing without prejudice all of the claims and cross-claims pending in the Action.

      3.2.    With respect to any dismissal pursuant to Section 3.1, the Parties agree that as to any statute of repose, statute of limitations, limitation or laches period, or other provision at law or at equity, whether jurisdictional or otherwise, that requires, mandates, or establishes any deadline for the commencement or filing of any matter or claim that any Party has asserted or could assert in the Action (collectively, the "Limitation Periods"), such Limitation Periods shall be tolled and extended through and including the earlier of the Release Date or two hundred ten (210) days after the Effective Date (the "Tolling Period"). During the Tolling Period, no Party shall assert any claim, in any forum or jurisdiction, that such Party asserted or could have asserted in the Action.

      4.    <u>Mutual releases.</u>

      4.1.    <u>Release date.</u>  The provisions of this Section 4 shall take effect only upon Qualcomm's full and timely receipt of the Total Payment required by Section 2.1, including receipt of the First Installment within the time period prescribed by Section 2.1.1, and receipt of the Second Installment within the time period prescribed by Section 2.1.2. The "Release Date" shall be the earlier of the date on which Qualcomm receives full and timely payment of the Total Payment, or the date on which a final judgment is entered in favor of Qualcomm pursuant to Section 7.2.2.

      4.2.    <u>Release of claims by Qualcomm.</u>  Effective only upon the Release Date, Qualcomm shall knowingly, voluntarily, and forever release and discharge Defendants, individually and collectively, from any and all claims, charges, causes of action, suits, demands, judgments, costs, and liabilities, of any kind whatsoever, both legal and equitable, and known and unknown, that were asserted in the Action, or that arise from or relate to the allegations contained in the complaint and cross-complaints filed in the Action.

      4.3.    <u>Release of claims by Defendants.</u>  Effective only upon the Release Date, Defendants, individually and collectively, shall knowingly, voluntarily, and forever release and discharge Qualcomm from any and all claims, charges, causes of action, suits, demands, judgments, costs, and liabilities, of any kind whatsoever, both legal and equitable, and known and unknown, that were asserted in the Action, or that arise from or relate to the allegations contained in the complaint and cross-complaints filed in the Action.

      4.3.1.    <u>Indemnification Holdback.</u>  For the avoidance of doubt, the release and discharge by Sheida Alan set forth in Section 4.3 includes, without limitation, release and discharge of all right, title, or interest that she may have in or to any portion of the Indemnification Holdback as that term is used in the UPA.

      5.    <u>Application of release to unknown claims; Civil Code section 1542.</u>

      5.1.    <u>Waiver of Section 1542 rights.</u> Effective only upon the Release Date, Qualcomm, Karim Arabi, and Sheida Alan each hereby waive all rights to which they may be

entitled pursuant to California Civil Code section 1542.  California Civil Code section 1542 provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

5.2.   <u>Waiver of unknown claims by Qualcomm.</u> Except as expressly provided herein, Qualcomm understands and intends that the claims, charges and causes of action released herein include all legal, contractual, statutory and equitable claims, charges and causes of action held by it against Defendants related to the allegations contained in the complaint or cross-complaints filed in the Action (including any claims for malicious prosecution and similar claims), regardless of whether those claims, charges and causes of action are presently known or anticipated.

5.3.   <u>Waiver of unknown claims by Karim Arabi.</u> Karim Arabi understands and intends that the claims, charges and causes of action released herein include all legal, contractual, statutory and equitable claims, charges and causes of action held by him against Qualcomm related to the allegations contained in the complaint or cross-complaints filed in the Action (including any claims for malicious prosecution and similar claims), regardless of whether those claims, charges and causes of action are presently existing, known or anticipated.

5.4.   <u>Waiver of unknown claims by Sheida Alan.</u> Sheida Alan understands and intends that the claims, charges and causes of action released herein include all legal, contractual, statutory and equitable claims, charges and causes of action held by her against Qualcomm related to the allegations contained in the complaint or cross-complaints filed in the Action (including any claims for malicious prosecution and similar claims), regardless of whether those claims, charges and causes of action are presently existing, known or anticipated.

5.5.   <u>Parties would not agree unless the release extended to unknown and unanticipated claims.</u> The Parties understand that each of them would not have agreed to the terms of this Agreement if this Agreement did not cover losses which may be presently unknown and unanticipated.

6.   <u>Dismissal of pending claims.</u>

6.1.   <u>Dismissal of the Action.</u>  Within three (3) court days of the Release Date, the Parties shall each dismiss with prejudice any and all pending claims asserted by such Party in the Action.

6.2.   <u>If Action Previously Dismissed.</u> Following the Release Date, no Party shall take any action to reinstate, resurrect, or otherwise further litigate any of the previously pending claims dismissed pursuant to Section 3.1.

7.    Qualcomm's remedies for breach of Defendants' payment obligations.

7.1.    Time is of the essence with respect to Defendants' payment obligations. For the avoidance of doubt, the Parties agree that full and timely payment of the Total Payment by Karim Arabi and Sheida Alan is material to this Agreement, and that time is of the essence with respect to the deadlines for payment of the First Installment and Second Installment set forth in Section 2. Failure by Karim Arabi and Sheida Alan to pay the full amount of the First Installment by the deadline set forth in Section 2.1.1 shall constitute a material breach of this Agreement. Failure by Karim Arabi and Sheida Alan to pay the full amount of the Second Installment by the deadline set forth in Section 2.1.2 shall also constitute a material breach of this Agreement except as follows: If Defendants (i) timely pay the First Installment, and (ii) timely pay at least $15,000,000 USD ($15 million USD) of the Second Installment, then, upon Defendants' written request to Qualcomm, Defendants shall be entitled to a 90-day grace period to pay any remaining balance of the Second Installment. With respect to any such balance, Defendants shall be obligated to pay Qualcomm liquidated damages in the form of interest (calculated daily but compounded annually) on the entire unpaid balance for each day of such grace period used by Defendants before the Second Installment is fully paid. The rate of interest shall be 10% on the entire unpaid balance for each of days 1 through 30 of such grace period, 15% on the entire unpaid balance for each of days 31 through 60 of such grace period, and 20% on the entire unpaid balance for each of days 61 through 90 of such grace period. The parties agree that such liquidated damages reasonably represent and are intended to compensate Qualcomm for its costs of enforcement and the risks of non-collection.

7.2.    Qualcomm's remedies. Qualcomm shall provide Defendants written notice of any material breach of Defendants' payment obligations pursuant to Section 2. If such material breach is not cured within three (3) business days of such written notice, Qualcomm may elect, in its sole and unreviewable discretion, either one of the following two remedies:

7.2.1.    Rescission of this Agreement. In the event of an uncured material breach of Defendants' payment obligations, Qualcomm may terminate this Agreement upon written notice to Karim Arabi and Sheida Alan. Within five (5) business days of such written notice of termination, Qualcomm shall return to Karim Arabi and Sheida all sums, if any, that either or both has paid to Qualcomm pursuant to Section 2, other than the first $5,000,000 USD ($5 million USD) of the First Installment, which the Parties agree shall be retained by Qualcomm as a non-refundable reimbursement of attorney's fees and other costs incurred by Qualcomm in connection with the investigation and prosecution of the Action. The Parties shall thereafter have no further duty or obligation to perform under this Agreement. For the avoidance of doubt and without limitation, termination of this Agreement pursuant to this Section 7.2.1 shall render ineffective, null and void the releases, waivers and dismissal obligations set forth in Sections 3, 4 and 5; entitle any Party to timely re-assert any claims that were dismissed pursuant to Section 3.1 or to move the Court to set aside such dismissal pursuant to Section 3.1 and reinstate the Action or any part of the Action nunc pro tunc; and effect an immediate termination of the Tolling Period.

7.2.2.    Entry of stipulated judgment. In the alternative, in the event of an uncured material breach of Defendants' payment obligations, Qualcomm may elect to obtain a stipulated final judgment from the Court in Qualcomm's favor as set forth below. The Parties agree that within three (3) court days of Qualcomm's written notice to Defendants that Qualcomm

has elected this remedy, the Parties shall execute and cause to be filed with the Court in which the Action was filed a stipulation and proposed judgment in substantially the form attached hereto as Exhibit B.  Such stipulation and proposed judgment shall include an award of damages to Qualcomm in the amount of the Total Payment plus an additional sum  of $2,000,000 USD ($2 million USD), which additional sum the Parties agree reasonably represents and is intended to compensate Qualcomm for its expected costs of enforcing such judgment and the risks of non-collection.  Defendants' obligations pursuant to such judgment shall be offset and credited by all amounts Defendants paid to Qualcomm pursuant to this Agreement, if any, prior to entry of judgment.

8.      No Other Claims.  Other than making any claim for breach of this Agreement or enforcing any remedy elected pursuant to this Agreement, each of the Parties agrees to never induce, encourage, assist with and/or abet others to sue or bring a proceeding of any nature against the opposing Party or Parties concerning any of the claims or causes of action released in this Agreement.  Defendants agree never to voluntarily participate in any lawsuit or proceeding of any nature in any forum brought by any other party or parties relating in any manner to the Indemnification Holdback (as that term is defined in the UPA) unless specifically subpoenaed or otherwise required by a court or other forum of competent jurisdiction or other mandatory legal process to appear, in which case Defendants shall notify Qualcomm in writing at least five (5) business days in advance of such appearance.  Defendants further agree not to assert that any party to the UPA other than Qualcomm has any valid right, title, claim or interest in the Indemnification Holdback or any portion of it.

9.      Due consideration of Agreement.  Qualcomm, Karim Arabi, and Sheida Alan each represents and agrees that it, he, or she:

9.1.    has had the opportunity to consider this Agreement for a reasonable time before signing it;

9.2.    has had a reasonable opportunity to consult an attorney before signing this Agreement;

9.3.    has read this Agreement in full and understands all of the terms and conditions set forth herein; and

9.4.    knowingly and voluntarily agrees to all of the terms and conditions set forth herein and intends to be legally bound by them.

10.     Notices.  All notices given or made pursuant to this Agreement shall be in writing and shall be sent to undersigned counsel and counsel of record in the Action for the Party to be notified. Such notice shall be deemed given: (a) upon personal delivery to the Party to be notified, (b) when sent by electronic mail if sent on or before 8:00 pm Pacific Time, and if sent later, on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.

11.     No effect on other agreements.  Without limiting the releases contained herein, the Parties agree that this Agreement shall not alter or extinguish any legal or contractual obligations

owed by any Party to any other Party pursuant to the Unit Purchase Agreement; the Invention Disclosure, Confidentiality & Proprietary Rights Agreement between Qualcomm and Karim Arabi dated October 28, 2007; and the Invention Disclosure, Confidentiality & Proprietary Rights Agreement between Qualcomm and Karim Arabi dated November 27, 2013.

12.   <u>Binding upon successors and assignees.</u>  The Parties agree that this Agreement shall be binding upon their successors and assignees.  Each Party represents that it has not transferred to any person or entity any of the rights released or transferred through this Agreement.

13.   <u>Severability.</u>   If a court or arbitrator of competent jurisdiction declares or determines that any provision of this Agreement is invalid, illegal or unenforceable, (a) the invalid, illegal or unenforceable provision(s) shall be stricken from this Agreement, (b) this Agreement shall be reformed to effectuate the stricken provision(s) as closely as the law permits, and (c) the remaining provisions of this Agreement shall continue in full force and effect.

14.   <u>Remedies upon breach.</u>   In addition to and without limitation of Qualcomm's remedies for material breach of Defendants' payment obligations as set forth in Section 7.2, each Party, upon breach of this Agreement by another, shall have the right to seek all necessary and proper relief, including, but not limited to, specific performance, from a court of competent jurisdiction.  The Party or Parties prevailing in any suit for breach of this Agreement shall be entitled to recover their reasonable attorney's fees and costs.

15.   <u>Governing law.</u>   The laws of the State of California shall govern the construction and enforcement of this Agreement. This Agreement shall be interpreted as though drafted jointly by Qualcomm, Karim Arabi, and Sheida Alan.

16.   <u>Arbitration.</u>   Other than entry of stipulated judgment pursuant to Section 7.2.2, any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in San Diego, California, before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules.  Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. This clause shall not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.  For the avoidance of doubt and notwithstanding the foregoing and anything else herein, Qualcomm may, in addition to any other remedies, seek enforcement of any judgment entered pursuant to Section 7.2.2. by the Court.

17.   <u>Entire agreement; modification.</u>   This Agreement sets forth the entire agreement between the Parties regarding the subject matter and supersedes all prior agreements or understandings, both written and oral, between the Parties regarding the subject matter of this Agreement.  The Parties may modify this Agreement only through a writing signed by each Party.

18.   <u>Counterparts.</u>   The Parties may execute this Agreement in counterparts which, taken together, shall constitute one and the same Agreement, and a signature transmitted by facsimile or other electronic means shall be deemed the equivalent of an original signature.

19.    <u>Further assurances.</u>  The Parties agree to perform such actions and to execute or file such additional documents, if any, that may be necessary or appropriate to effectuate the intent of this Agreement.

20.    <u>No reliance on representations by other Party or other Party's representatives.</u>  Other than as stated in this Agreement, the Parties agree and represent that they have not relied and do not rely upon any representation or statement regarding the subject matter or effect of this Agreement made by any other Party to this Agreement or any other Party's agents, attorneys or representatives.

21.    <u>No effect on existing obligations with respect to Confidential Information.</u>  Without limiting the releases contained herein, the Parties agree that this Agreement shall not alter or extinguish any obligation pursuant to the Parties' stipulated Protective Order entered in the Action (the "Protective Order"), including without limitation the Parties' obligations regarding destruction or return of certain materials designed Confidential or Highly Confidential pursuant to paragraph 22 of the Protective Order. For purposes of the Parties' obligations under the stipulated Protective Order, the Parties agree that this Agreement shall constitute a "settlement or other termination of the Proceeding," as that term is used in paragraph 22 of the Protective Order, only upon the Release Date.

22.    <u>No assignment of claims.</u>  All parties represent and warrant that they have not assigned any claims to any third party.

23.    <u>Authority to enter into agreement.</u>  Each Party represents and warrants to the other Parties that he, she, or it has the power and authority to enter into, execute, deliver and perform this Agreement.

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement and Release of Claims as of the Effective Date.

**AGREED AND ACCEPTED**:

QUALCOMM TECHNOLOGIES, INC.

_____          _____
By: Jonathan Weiser                            DATE


_____          _____
KARIM ARABI                                    12/07/2018
                                               DATE


_____          _____
SHEIDA ALAN                                    12/07/2018
                                               DATE


**APPROVED AS TO FORM AND CONTENT**:

HUESTON HENNIGAN LLP


_____          _____
By: Marshall A. Camp                           DATE
Counsel for Qualcomm Technologies, Inc.


IRELL & MANELLA LLP


_____          _____
By: Iian Jablon                                DATE
Counsel for Karim Arabi and
Sheida Alan

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement and Release of Claims as of the Effective Date.

**AGREED AND ACCEPTED**:

QUALCOMM TECHNOLOGIES, INC.

_____          _____
By: Jonathan Weiser                   DATE

_____          _____
KARIM ARABI                           DATE

_____          _____
SHEIDA ALAN                           DATE

**APPROVED AS TO FORM AND CONTENT**:

HUESTON HENNIGAN LLP

_____          _____
By: Marshall A. Camp                  DATE
Counsel for Qualcomm Technologies, Inc.

IRELL & MANELLA LLP

_____          12 - 7 - 18
By: Iian Jablon                       _____
Counsel for Karim Arabi and           DATE
Sheida Alan

# Exhibit P
## (Filed Conditionally Under Seal)

Exhibit Q

## <u>ADDENDUM TO SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS</u>

This addendum to the December 6, 2018 Settlement Agreement and Release of Claims ("Addendum") is entered into by and among Qualcomm Technologies, Inc. ("Qualcomm"), Karim Arabi, and Sheida Alan (a/k/a/ Sheida Arabi, hereinafter "Sheida Alan" or "Alan") (collectively, the "Parties").

WHEREAS, the Parties entered into and executed a long form agreement with an effective date of December 6, 2018 (the "Settlement Agreement") in connection with the matter of *Qualcomm Technologies, Inc. v. Karim Arabi and Sheida Alan*, Case No. 37-2017-00040719-CU-FR-CTL in San Diego Superior Court ("the Action");

WHEREAS, pursuant to the Settlement Agreement, Sheida Alan was obligated, among other things, to pay Qualcomm a total of $45,000,000 USD ($45 million USD), with a first payment of $15,000,000 USD ($15 million USD) ("first payment") payable by no later than January 4, 2019, and a second payment of $30,000,000 USD ($30 million USD) ("second payment") payable by no later than June 4, 2019;

WHEREAS Defendants materially breached the Settlement Agreement on June 4, 2019, by failing to pay any of the second payment;

WHEREAS, Qualcomm provided Defendants notice of such material breach on June 5, 2019, and Defendants have failed to cure such material breach;

WHEREAS, pursuant to Section 17 of the Settlement Agreement, the Settlement Agreement may be modified through a writing signed by each party;

WHEREAS, to address Defendants' material breach and to avoid the risk, expense, and uncertainty of pursuing any other remedy or resolution, the Parties wish to modify the terms of the Settlement Agreement as set forth herein;

NOW, THEREFORE, in consideration of the foregoing recitals, the promises contained herein, and other good and valuable consideration, the Parties agree to modify the Settlement Agreement as follows:

1.  *Section 1. Definitions* shall be amended to add the following subsections after subsection 1.5:

    1.6.  The "Second Installment Payment Date" shall mean the date that is five (5) business days after this Addendum has been executed and delivered by all Parties.

    1.7.  The "Third Installment Payment Date" shall mean the same date as the Second Installment Payment Date.

    1.8.  The "Fourth Installment Payment Date" shall mean March 16, 2020.

    1.9.  The "Fifth Installment Payment Date" shall mean June 30, 2020.

2. *Section 2.1, Payment by Sheida Alan, and subsections 2.1.1-2.1.2* shall be amended as follows:

    2.1.   <u>Total payment.</u> Sheida Alan shall pay to Qualcomm the total sum of $47,091,644.20 USD ($47.091644 million USD) (the "Total Payment") plus all of Sheida Alan's right, title or interest that she may have in or to any portion of the Indemnification Holdback (as that term is used in the UPA), to be paid as follows:

        2.1.1.   <u>First installment.</u> On or about January 4, 2019, Sheida Alan paid to Qualcomm the sum of $15,000,000 USD ($15 million USD) (the "First Installment"). Provided that Qualcomm complies with its obligations under this Agreement, the Parties agree that the first $5,000,000 USD ($5 million USD) of the First Installment shall be treated as non-refundable reimbursement to Qualcomm for attorneys' fees and other costs it has incurred in connection with the Action.

        2.1.2(a). <u>Second installment.</u> Sheida Alan shall pay to Qualcomm the sum of $7,000,000 USD ($7 million USD) (the "Second Installment") by no later than than the Second Installment Payment Date.

        2.1.2(b). <u>Third installment.</u> Sheida Alan shall pay to Qualcomm the sum of $7,500,000 USD, (the "Third Installment") by no later than the Third Installment Payment Date. If Defendants are not in breach of any section of this Agreement, then Defendants shall be entitled to a credit against the Third Installment for every calendar day that all or any portion of the Third Installment is paid in full before the Third Installment Payment Date, which credit shall reflect a 5% annual interest. The maximum credit shall be $958.90 per day.

        2.1.2(c). <u>Fourth installment.</u> Sheida Alan shall pay to Qualcomm the sum of $4,041,644.20 USD, (the "Fourth Installment") by no later than the Fourth Installment Payment Date. If Defendants are not in breach of any section of this Agreement, then Defendants shall be entitled to a credit against the Fourth Installment for every calendar day that all or any portion of the Fourth Installment is paid in full before the Fourth Installment Payment Date, which credit reflects shall reflect a 5% annual interest. The maximum credit shall be $547.95 per day.

        2.1.2(d). <u>Fifth installment.</u> Sheida Alan shall pay to Qualcomm the sum of $13,550,000 (the "Fifth Installment") by no later than the Fifth Installment Payment Date. If Defendants are not in breach of any section of this Agreement, then Defendants shall be entitled to a credit against the Fifth Installment for every calendar day that all or

any portion of the Fifth Installment is paid in full before the Fifth Installment Payment Date, which credit shall reflect 5% annual interest. The maximum credit shall be $1,856.16 per day.

2.1.2(e). <u>Interest on Late Payment.</u> If any amount to be paid to Qualcomm pursuant to Section 2.1.2(a), 2.1.2(b), 2.1.2(c), or 2.1.2(d) is not timely paid in full, then interest shall accrue immediately on the entire unpaid balance of the Total Payment owed to Qualcomm at the annual rate of 10%. Such interest shall accrue until and unless the Defendants cure any and all breaches of Section 2.1.2(a), 2.1.2(b), 2.1.2(c), or 2.1.2(d) as applicable. Such interest shall accrue irrespective of, and in addition to, any remedy that Qualcomm may elect or be entitled to elect pursuant to Section 7.

3.    *Section 4. Mutual releases, subsection 4.1 shall be amended as follows:*

4.1.    <u>Release date.</u>  The provisions of this Section 4 shall take effect only upon Qualcomm's full and timely receipt of the Total Payment required by Section 2.1, including receipt of the First Installment within the time period prescribed by Section 2.1.1, receipt of the Second Installment within the time period prescribed by Section 2.1.2(b), receipt of the Third Installment within the time period prescribed by Section 2.1.2(b), receipt of the Fourth Installment within the time period prescribed by Section 2.1.2(c), and receipt of the Fifth Installment within the time period prescribed by Section 2.1.2(d). The "Release Date" shall be the date on which Qualcomm receives full and timely payment of the Total Payment.

4.    *Section 7. Qualcomm's remedies for breach of Defendants' payment obligations, subsection 7.1 shall be amended as follows:*

7.1.    <u>Time is of the essence with respect to Defendants' payment obligations.</u>  For the avoidance of doubt, the Parties agree that full and timely payment of the Total Payment by Karim Arabi and Sheida Alan is material to this Agreement, and that time is of the essence with respect to the deadlines for payment of the Second Installment, Third Installment, Fourth Installment, and Fifth Installment set forth in Section 2.  Failure by Karim Arabi and Sheida Alan to pay the full amount of any of the Second Installment by the Second Installment Payment Date, Third Installment by the Third Installment Payment Date, Fourth Installment by the Fourth Installment Payment Date, or Fifth Installment by the Fifth Installment Payment Date respectively, shall constitute a material breach of this Agreement. Notwithstanding the foregoing, however, provided that Defendants timely pay the Second Installment Payment and timely pay at least 50% of each of the Third and the Fourth Installment Payments, Defendants shall be entitled to a grace period of up to 3 months to pay the balance of each of the Third and the Fourth Installment Payments (with interest continuing to accrue to Qualcomm until fully paid) before the late portion of the applicable

Installment Payment shall constitute a material breach of this Agreement. Also, provided that Defendants pay the Second, the Third and the Fourth Installment Payments and timely pay at least $6.5 million of the Fifth Installment Payment, Defendants shall be entitled to a grace period of up to nine months to pay the balance of the Fifth Installment Payment (with interest continuing to accrue to Qualcomm until fully paid) before the late portion of the Fifth Installment Payment shall constitute a material breach of this Agreement.

5.    *Section 7. Qualcomm's remedies for breach of Defendants' payment obligations, subsection 7.2.2* shall be amended as follows:

7.2.2.    Entry of stipulated judgment.  In the alternative, in the event of an uncured material breach of Defendants' payment obligations pursuant to this Addendum, Qualcomm may elect to obtain a stipulated final judgment from the Court in Qualcomm's favor as set forth below.  The Parties agree that within three (3) court days of Qualcomm's written notice to Defendants that Qualcomm has elected this remedy, the Parties shall execute and cause to be filed with the Court in which the Action was filed a stipulation and proposed judgment in substantially the form attached hereto as Exhibit B. Such stipulation and proposed judgment shall include an award of damages to Qualcomm in the amount of the Total Payment plus any interest on late payment pursuant to Section 2.1.2(e), which additional interest the Parties agree reasonably represents and is intended to compensate Qualcomm for the time value of money, for its expected costs of enforcing such judgment, and for the risks of noncollection. Defendants' obligations pursuant to the stipulated judgment shall be offset and credited by all amounts Defendants paid to Qualcomm pursuant to the Settlement Agreement and this Addendum prior to entry of judgment.

6.    A new *Section 24. Representations by Karim Arabi* shall be added and shall read as follows:

24.    Representations by Karim Arabi.  In consideration of the promises, agreements, and releases of Qualcomm contained in this Agreement and the Addendum thereto, and until two years after all payments required by this Agreement have been paid, Karim Arabi agrees that he shall not make any statement publicly or in connection with a current or contemplated business relationship that suggests or implies that Qualcomm approves, endorses, supports, or is in any way associated with Karim Arabi, including without limitation any statement suggesting that Karim Arabi is or was an employee of Qualcomm, that Karim Arabi conducts or has conducted business with Qualcomm, or that Karim Arabi holds or held any professional

relationship with Qualcomm or any of its current directors, officers, employees, or agents.

24.1.   Notwithstanding and as an exception to the foregoing, Karim Arabi may include in his public bio, resume or CV, and may otherwise disclose to potential employers, investors, and the like information about his prior employment at Qualcomm limited to his titles at Qualcomm, , years of service, and the following descriptions for his two prior job positions at Qualcomm "Vice President, R&D, Head of ASIC Research Department responsible for Advanced Wireless and Computing Technologies" and "Vice President Engineering, Mobile SoC Design."  With respect to potential employers, Karim Arabi may also discuss his high-level job responsibilities during his time at Qualcomm.  However, except as expressly set forth in the preceding two sentences, Karim Arabi shall not discuss his prior employment for Qualcomm with any person or entity other than potential employers unless he also discloses in the same communication (i) the fact of the Action; (ii) the nature of the allegations that Qualcomm asserted in the Action; and (iii) the monetary terms of Section 2.1 of this Agreement.

24.2.   Nothing in this section shall prevent Karim Arabi from making any statement or disclosure that is required by applicable law or by an order of a court of competent jurisdiction.

7.   <u>Opportunity to consider Addendum.</u> Each Party represents and agrees that it, he, or she:

7.1.   has had the opportunity to consider this Addendum for a reasonable time before signing it;

7.2.   has had a reasonable opportunity to consult an attorney before signing this Addendum;

7.3.   has read this Addendum in full and understands all of the terms and conditions set forth herein; and

7.4.   knowingly and voluntarily agrees to all of the terms and conditions set forth herein and intends to be legally bound by them.

8.   <u>Authority to enter into Addendum.</u> Each Party represents and warrants to the other Parties that he, she, or it has the power and authority to enter into, execute, deliver and perform this Addendum to the Settlement Agreement.

9.   <u>No other changes to the Settlement Agreement.</u> Any term, condition, or provision of the Settlement Agreement not hereby otherwise modified or amended shall remain in full force and effect and shall not be negated or changed as a result of this Addendum. Notwithstanding the foregoing, any provision of the Settlement

Agreement that conflicts with the terms and spirit of this Addendum shall be deemed to be amended appropriately in order to be consistent with this Addendum.

IN WITNESS WHEREOF, the parties have executed this Addendum to the Settlement Agreement.

**AGREED AND ACCEPTED**:

QUALCOMM TECHNOLOGIES, INC.

_____
By: Jonathan Weiser, Secretary

1/29/20
_____
DATE

_____
KARIM ARABI

_____
DATE

_____
SHEIDA ALAN

_____
DATE

**APPROVED AS TO FORM AND CONTENT**:

HUESTON HENNIGAN LLP

_____
By: Marshall A. Camp
Counsel for Qualcomm Technologies, Inc.

_____
DATE

IRELL & MANELLA LLP

_____
By: Iian Jablon
Counsel for Karim Arabi and
Sheida Alan

_____
DATE

IN WITNESS WHEREOF, the parties have executed this Addendum to the Settlement Agreement.

**AGREED AND ACCEPTED**:

QUALCOMM TECHNOLOGIES, INC.

_____     1/29/20
By: Jonathan Weiser, *Secretary*     DATE

_____     2/4/2020
KARIM ARABI     DATE

_____     2/4/2020
SHEIDA ALAN     DATE

**APPROVED AS TO FORM AND CONTENT**:

HUESTON HENNIGAN LLP

_____     _____
By: Marshall A. Camp     DATE
Counsel for Qualcomm Technologies, Inc.

IRELL & MANELLA LLP

_____     _____
By: Iian Jablon     DATE
Counsel for Karim Arabi and
Sheida Alan

# Exhibit R
## (Filed Conditionally Under Seal)

# Exhibit S
## (Filed Conditionally Under Seal)

# Exhibit T
## (Filed Conditionally Under Seal)

# Exhibit U
## (Filed Conditionally Under Seal)

Exhibit V

1 | HUESTON HENNIGAN LLP
Marshall A. Camp, State Bar No. 231389
2 | mcamp@hueston.com
Padraic Foran, State Bar No. 268278
3 | pforan@hueston.com
Kathrynne Nicole Seiden, State Bar No. 310902
4 | kseiden@hueston.com
Sara Banco, State Bar No. 320660
5 | sbanco@hueston.com
523 West 6th Street, Suite 400
6 | Los Angeles, CA 90014
Telephone:    (213) 788-4340
7 | Facsimile:    (888) 775-0898

8 | Attorneys for Plaintiff and Cross-Defendant
Qualcomm Technologies, Inc.

9

**F I L E D**
Clerk of the Superior Court

MAY 2 0 2020

By: P. Viernes

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | COUNTY OF SAN DIEGO, CENTRAL DIVISION

12

13 | Qualcomm Technologies, Inc.,

14 |        Plaintiff,

15 |    vs.

16 | Karim Arabi; Sheida Arabi a/k/a Sheida Alan;
Sanjiv Taneja; and DOES 1 through 10,
17 | inclusive,

18 |        Defendant.

19 | Sheida Alan,

20 |        Cross-Complainant,

21 |    vs.

22 | Qualcomm Technologies, Inc.,

23 |        Cross-Defendant.

24

25

26

27

28

**CONDITIONALLY UNDER SEAL**

Case No. 37-2017-00040719-CU-FR-CTL

[PROPOSED] ORDER GRANTING
QUALCOMM TECHNOLOGIES, INC.'S EX
PARTE APPLICATION FOR
PROTECTIVE ORDER PERMITTING
DISCLOSURE OF SUBPOENAED
MATERIALS WITHOUT NOTICE AND TO
FILE UNDER SEAL

[Filed concurrently with Qualcomm's Ex Parte
Application And Memorandum In Support, and
Declaration of Marshall Camp]

Hearing
Date:       May 20, 2020
Time:       9:15 a.m.
Dept.:      67

- 1 -

[PROPOSED] ORDER GRANTING QUALCOMM TECHNOLOGIES, INC.'S EX PARTE APPLICATION

5751675

1   Plaintiff/Cross-Defendant Qualcomm Technologies, Inc.'s Ex Parte Application For
2   Protective Order Permitting Disclosure Of Subpoenaed Materials Without Notice And To File Under
3   Seal came on for hearing before the Court on May 20, 2020, at 9:15 a.m. The evidence presented
4   having been fully considered, the issues having been duly heard, and a decision having been duly
5   rendered, the ex parte application is **GRANTED.** The Court orders as follows:

6       1.  Pursuant to Rule of Court 3.1206, exceptional circumstances exist warranting this
7          application being heard without notice to other appearing parties.

8       2.  Qualcomm Technologies, Inc. and its counsel may produce materials responsive to grand
9          jury subpoenas issued by the United States District Court for the Southern District of
10         California that were designated "Confidential" or "Highly Confidential – Attorneys' Eyes
11         Only" pursuant to the Protective Order entered on March 7, 2018, in the above-captioned
12         case without providing notice to the Designating Party as required by the Protective
13         Order.

14      3.  Pursuant to Rule of Court 2.550, there exist facts sufficient to file under seal Qualcomm
15         Technologies, Inc.'s Ex Parte Application For Protective Order Permitting Disclosure Of
16         Subpoenaed Materials Without Notice And To File Under Seal and Memorandum in
17         Support; Declaration of Marshall Camp; and this Order. Accordingly, those materials
18         shall be and hereby are sealed.

19  **IT IS SO ORDERED.**

20

21  Dated: _____May 20_____, 2020

22                                Kenneth J. Medel
                            Judge of the Superior Court of the State of
California

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING QUALCOMM TECHNOLOGIES, INC.'S EX PARTE APPLICATION
5751675

Exhibit W

**Leah Thompson**

| | |
|---|---|
| **From:** | Jablon, Iian <IJablon@irell.com> |
| **Sent:** | Tuesday, July 13, 2021 2:12 PM |
| **To:** | 'Marshall A. Camp' |
| **Cc:** | 'Padraic Foran' |
| **Subject:** | RE: Arabi |
| **Attachments:** | Alan-Arabi Produced Documents Designated Confidential.pdf |

Marshall,

Thank you for confirming that Qualcomm intends to comply with paragraph 22 of the Protective Order. Per your request, attached is a list that identifies all of the documents produced by my clients in discovery that were marked Confidential or Highly Confidential. My clients� written discovery responses and mediation submissions are also designated Confidential or Highly Confidential, but do not appear on the attached list. I note that some of the non-parties who produced documents responsive to Qualcomm�s subpoenas also designated materials Confidential or Highly Confidential, including without limitation Professor Kaminska, but the non-party productions are likewise not included in the attached list.

To avoid any potential misunderstanding, I will briefly respond to your statements below regarding timing. You are correct that the superior court case was dismissed in December 2018, but the dismissal was explicitly without prejudice and subject to Qualcomm reinstating the suit if my clients failed to timely make the agreed upon settlement payments. As you know, the payment schedule was extended by mutual agreement, and included a running interest feature. On the date the final payment was initiated, I asked you to confirm on behalf of Qualcomm that there was agreement that my clients had now satisfied their payment obligations under the settlement. It was not until June 15, 2021 that Qualcomm confirmed that my clients had indeed satisfied their payment obligations, and thus that the settlement is now final and the superior court case cannot be reinstated. As contemplated by the Protective Order, my clients then promptly requested that Qualcomm return or destroy all Confidential or Highly Confidential materials, which Qualcomm no longer has any use for anyway since the matter is fully resolved.

Thank you.

Iian

**From:** Marshall A. Camp <mcamp@hueston.com>
**Sent:** Wednesday, July 7, 2021 12:55 PM
**To:** Jablon, Iian <IJablon@irell.com>
**Cc:** Padraic Foran <pforan@hueston.com>
**Subject:** RE: Arabi

Iian,

The state court proceeding was dismissed on December 10, 2018, and the final payment under the settlement agreement was made on or about April 1, 2021. Accordingly, the time to make a request pursuant to paragraph 22 of the Protective Order expired long before your June 16 e-mail below.

That said, reserving all rights and without waiver, we are willing to have our vendor remove documents from our database that were produced by Mr. Arabi or Ms. Alan and labeled Confidential or Highly Confidential under the Protective Order, provided that you furnish us with a list such documents by July 31, 2021. I understand that because the materials produced on behalf of your clients did not include a standard metadata field indicating confidentiality

designations, there is no programmatic way for us to identify such documents. Once those documents are properly identified, we will ask our e-discovery vendor to promptly remove them from our database. Although the underlying production archive files cannot be segregated between designated and non-designated documents, we will also agree not to export confidential-designated materials from those archives absent an appropriate court order.

Regards,

Marshall

**Marshall A. Camp**
_____

# HUESTON HENNIGAN LLP

D: 213.788.4541
mcamp@hueston.com
Biography

**From:** Jablon, Iian <ijablon@irell.com>
**Sent:** Wednesday, June 16, 2021 3:10 PM
**To:** Marshall A. Camp <mcamp@hueston.com>
**Cc:** Padraic Foran <pforan@hueston.com>
**Subject:** RE: Arabi

Marshall,

Now that the matter is fully resolved, my clients respectfully request pursuant to Paragraph 22 of the Stipulated Protective Order (a copy of which is attached for your convenience) that Qualcomm and your firm return or destroy all Confidential Materials and Highly Confidential � Attorneys� Eyes Only Materials produced by my clients in connection with the case within the next 30 days.  We appreciate Qualcomm�s cooperation.

Best regards,

Iian

**From:** Marshall A. Camp <mcamp@hueston.com>
**Sent:** Tuesday, June 15, 2021 10:32 AM
**To:** Jablon, Iian <IJablon@irell.com>
**Cc:** Padraic Foran <pforan@hueston.com>
**Subject:** RE: Arabi

Iian,

Qualcomm agrees that the payments required by the settlement agreement have been made and that the other terms remain in effect to the extent provided under the agreement.

Thanks,

Marshall

**Marshall A. Camp**

**HUESTON HENNIGAN** LLP

D: 213.788.4541
mcamp@hueston.com
Biography

---

**From:** Jablon, Iian <ijablon@irell.com>
**Sent:** Friday, June 4, 2021 8:29 PM
**To:** Marshall A. Camp <mcamp@hueston.com>
**Cc:** Padraic Foran <pforan@hueston.com>
**Subject:** RE: Arabi

Hi Marshall,

Following up on the correspondence below, I�d appreciate it you would confirm that Qualcomm agrees that it has been paid the full amount called for by the settlement agreement and that the matter is now fully resolved, subject to the parties� ongoing obligations under the agreed Protective Order and the settlement agreement.

Thank you.

Iian

---

**From:** Marshall A. Camp <mcamp@hueston.com>
**Sent:** Monday, April 5, 2021 11:32 AM
**To:** Jablon, Iian <IJablon@irell.com>
**Cc:** Padraic Foran <pforan@hueston.com>
**Subject:** RE: Arabi

Iian,

I understand Qualcomm has now received confirmation of the wire on 4/1 and that the amount corresponds with your chart (i.e., $1,574,178.19). We will try to verify the calculations and let you know if we see any issues.

Thanks,

Marshall

**Marshall A. Camp**

**HUESTON HENNIGAN** LLP

D: 213.788.4541
mcamp@hueston.com
Biography

---

**From:** Marshall A. Camp <mcamp@hueston.com>
**Sent:** Thursday, April 1, 2021 2:36 PM
**To:** Jablon, Iian <ijablon@irell.com>
**Cc:** Padraic Foran <pforan@hueston.com>
**Subject:** RE: Arabi

Iian,

Qualcomm has not been able to confirm receipt of the payment referenced below. Can you provide the wire detail information so we can try to track it down?

Thanks,

Marshall


**Marshall A. Camp**
D: 213.788.4541

---

**From:** Jablon, Iian <ijablon@irell.com>
**Sent:** Wednesday, March 31, 2021 3:32 PM
**To:** Marshall A. Camp <mcamp@hueston.com>; Padraic Foran <pforan@hueston.com>
**Subject:** Arabi

Confidential Settlement Communication

Gentlemen,

I hope this email finds you both safe and well.  I understand that my clients wired the final settlement payment today to Qualcomm and I wanted to confirm both that Qualcomm received it, and that Qualcomm is in agreement that all of the settlement payments owed by my clients have now been made.

Thank you.

Iian


PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

# Exhibit X
## (Filed Conditionally Under Seal)

# Exhibit Y
## (Filed Conditionally Under Seal)