UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>      v.<br><br>KARIM ARABI; SHEIDA ALAN, also known as Sheida Arabi; SANJIV TENEJA; ALI AKBAR SHOKOUHI,<br><br>                         Defendants. | Case No. 22-cr-01152-BAS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART NON-PARTY QUALCOMM TECHNOLOGIES, INC.'S MOTION TO QUASH RULE 17(c) SUBPOENA *DUCES TECUM* (ECF No. 150)** |

## I. Introduction

Defendant Karim Arabi allegedly defrauded Qualcomm by selling it technology he developed while working as a Qualcomm employee. The Government claims Arabi helped his sister—Defendant Sheida Alan—open a shell company named Abreezio. Without disclosing the relationship between Arabi and Alan, Alan sold Abreezio to Qualcomm with technology that Arabi helped to invent. Arabi claims he did not invent the technology and was fraudulently targeted by Qualcomm for business strategy reasons and by Qualcomm employees because of professional jealousy.

On June 12, 2023, at a hearing regarding the criminal prosecution of Arabi, counsel for Arabi complained that the Government was failing to produce certain documents generated when Qualcomm conducted an internal investigation of the alleged fraud. (ECF

No. 131.) The Government responded that it had produced all documents of the internal investigation that it received from Qualcomm. (*Id.*) The Government suggested that it was possible Qualcomm withheld some documents as privileged. (*Id.*) The Court responded that it could not order the Government to produce documents the Government did not possess. (*Id.*) The Court suggested if Arabi believed Qualcomm had withheld documents, the defense may need to subpoena Qualcomm for the documents. (*Id.*) If Qualcomm asserted a privilege over the documents, the privilege could be addressed after the subpoena was issued. (*Id.*)

Thus, upon request of the defense, the Court permitted a subpoena *duces tecum* to be issued to Qualcomm. (ECF Nos. 133 to 135.) Broadly, the subpoena requests: (1) information including witness interviews conducted while Qualcomm was internally investigating the alleged fraud; (2) all documents and notes of Qualcomm's presentation to the Government trying to persuade the Government to go forward with a prosecution against Arabi; and (3) all personnel files of anyone remotely related to Qualcomm's investigation, including those "who had a relationship with Dr. Arabi while he worked at Qualcomm." (ECF No. 135-1.)

Anticipating opposition from Qualcomm, the Court gave Qualcomm twenty-five days to respond to the subpoena. (ECF No. 134.) Qualcomm filed a Motion to Quash the Subpoena (ECF No. 150), Arabi responded (ECF No. 157), and Qualcomm replied (ECF No. 159). The Court also held oral argument. (ECF No. 182.) For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Qualcomm's Motion to Quash.

II.   **Background**

Before the Government instituted this criminal case, Qualcomm engaged in an internal investigation of Arabi's conduct and the purchase of Abreezio. Qualcomm interviewed numerous employees. It appears from the declaration supporting Defendant's subpoena *duces tecum* that the Government has produced documentation of many of these interviews to Defendants in this case. (ECF No. 135-2.) Qualcomm and Defendants also

engaged in extensive civil litigation before this criminal case began. After settling the civil case with Qualcomm, Defendant Taneja sat down with Qualcomm's outside counsel and agreed to an extensive interview allegedly explaining the fraud in this case.

Qualcomm met with the Government to encourage it to prosecute this case. According to the defense, Qualcomm suggested what documents the Government should subpoena to support this prosecution. Arabi now theorizes that Qualcomm only produced to the Government documentation of interviews that supported Qualcomm's position that Arabi defrauded Qualcomm and held back documents that might have exculpated Arabi.

Although Arabi claims the Government's production of Qualcomm's internal investigation is incomplete because there is no documentation of many of Qualcomm's interviews, Arabi fails to specify which interviews he is missing or how these interviews might involve relevant or admissible information. Arabi makes sweeping statements that: (1) there are documents that have been omitted, without specifying which ones; and (2) these omitted documents "clearly" would be helpful to the defense. Arabi, though, provides no support for his broad allegation that Qualcomm is holding back documents that would benefit Arabi.

That said, Arabi alleges some specific information with respect to a few of these interviews. Arabi claims:

(1) One Qualcomm employee, Kevork Kechichian, was facing allegations of misconduct and allegedly diverted the attention from his investigation by telling a Qualcomm investigator that there was misconduct in the Abreezio due diligence investigation. However, Defendants have apparently received Qualcomm employee Schmidt's notes of this November 2, 2016, interview of Kechichian.

(2) Qualcomm employee Joseph Fang, who was part of the due diligence team looking into the purchase of Abreezio, may have stated that he knew Arabi and Alan are siblings. Fang denies ever saying this. And apparently Defendant Taneja, who is allegedly the source of Fang's original statement, has now, post-plea, reneged on the original allegation.

(3) Qualcomm interviewed Defendant Taneja, post-civil settlement, for many hours.

## III. Statement of the Law

Rule 17(c). Federal Rule of Criminal Procedure 17(c) allows a party to subpoena a third party for "books, papers, documents, data, or other objects." The Supreme Court held, in a slightly different context, that a party seeking a subpoena under Rule 17(c) must show that the documents are evidentiary and relevant, that they are necessary to prepare for trial, and that the requests are made in good faith and not intended as a general "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 699–700 (1974).

Citing *United States v. Tucker*, 249 F.R.D. 58, 54 (S.D.N.Y. 2008), the defense argues this standard should not be applied to criminal defendants seeking disclosure from a third party. In *Tucker*, the Southern District of New York found the *Nixon* standard was overly restrictive and instead the defendant should be allowed to subpoena a third party "where the defendant has an articulable suspicion that the documents may be material to his defense" as long as the request is not "unduly oppressive for the producing party." *Id.* at 65; *see also United States v. Akhaven*, 505 F. Supp. 3d 289, 290 (S.D.N.Y. 2020); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) ("[I]t remains ironic that a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents 'reasonably calculated to lead to the discovery of admissible evidence,' Fed. R. Civ. P. 26(b)(1), while a defendant on trial for his life or liberty does not even have the right to obtain documents 'material to his defense' from those same third-parties."). Nonetheless, the *Nixon* standard remains the law for Rule 17(c) subpoenas. *See, e.g., United States v. Fields*, 663 F.2d 880 (9th Cir. 1981) (applying *Nixon* standard).

Pretrial Production. "[T]he party seeking pretrial production bears the burden of establishing relevancy, admissibility, and specificity." *United States v. Sellers*, 275 F.R.D. 620, 623 (D. Nev. 2011) (citing *Nixon*, 418 U.S. at 699). The party is required "to show the evidentiary nature of the requested materials with appropriate specificity." *Id.*

(citations omitted). "Conclusory allegations of relevance and admissibility are insufficient to meet the moving party's burden." *Id.* at 623–24 (citing *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981)). "It is not enough that the documents requested in a Rule 17(c) subpoena *duces tecum* may have some potential of relevance and evidentiary use." *Id.* at 624 (citing *United States v. Burger*, 773 F. Supp. 1419, 1425 (D. Kan. 1991)). "[T]he moving party must make a sufficient preliminary showing that the requested material contains admissible evidence regarding the offenses charged." *Id.* (citing *Nixon*, 418 U.S. at 700).

Further, it is not sufficient for the moving party to argue that the evidence might be helpful or assist in defense counsel's investigation. *United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006). "[I]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Sellers*, 275 F.R.D. at 624 (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)); *see also Akhaven*, 505 F. Supp. 3d at 291 (refusing to command a third party "to turn over the haystack so that [defendant] can extract the needle").

Generally, use of the documents for impeachment purposes is insufficient to justify the pretrial production of documents under Rule 17(c). *Fields*, 663 F.2d at 881; *Nixon*, 418 U.S. at 701. *But see United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (reasoning documents sought under Rule 17(c) can be deemed admissible for a wide variety of purposes including impeachment).

In *United States v. Reyes*, although recognizing that "Rule 17(c) does not entitle [the defendant] to the pre-trial production of impeachment material," the court nonetheless found an *in camera* inspection of those materials would be appropriate "so that the court may review the material and disclose it, if ever, when it becomes ripe for impeachment." 239 F.R.D. 591, 600 (N.D. Cal. 2006). The court found "this procedure is appropriate where . . . a criminal defendant has made a persuasive showing that a third party possesses specific material that both is highly relevant to the criminal charges pending against him,

and may become admissible upon the testimony of witnesses who are likely to testify at trial." *Id.*

Privilege Claims. "[T]he burden of proving that the attorney-client [or work product] privilege applies rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). "One of the elements that the asserting party must prove is that it has not waived the privilege." *Id.* A party can waive any privilege, such as the work product or attorney-client privilege, by turning those documents over to the government. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1127–28 (9th Cir. 2012). There is no selective waiver; for example, one cannot waive the privilege for the government but no one else, even if the production to the government included a confidentiality agreement or was conducted because the party had been a victim of a crime. *Id.* at 1128–30. The bare assertion that a party did not subjectively intend to waive the privilege "is insufficient to make out the necessary element of nonwaiver." *Weil*, 647 F.2d at 25.

## IV. Analysis

### A. Request 1A: Documents of Qualcomm's Internal Investigation[1,2]

Arabi alleges, without any offer of proof, that Qualcomm may have withheld from the Government some documentation of witness interviews from its internal investigation

---

[1] The Rule 17(c) subpoena issued by Arabi contains three Sections all labeled "A," so the Court refers to the first section A as 1A, the second section A as 2A, and the third section A as 3A.

[2] The specific documents requested in this Section 1A are:

1. A list of the 34 people that Qualcomm told the government it interviewed as a part of their investigation. All materials, notes, recordings, transcripts, and other documentation of those interviews.
2. All materials, notes, recordings, transcripts, and other documentation of Qualcomm's post-purchase investigation, often referred to as Project Gopher.
3. All materials, notes, recordings, transcripts, and other documentation of Qualcomm's interviews with Sanjiv Taneja during its investigation and/or pursuant to the settlement agreement entered into between Qualcomm and Mr. Taneja on January 26, 2018, including any documents produced.

because those witnesses somehow support Arabi's theory that he is not guilty. As a preliminary matter, Arabi appears to have a great deal of information from Qualcomm's internal investigation. Apparently, the Government has already produced summaries of many of these witness interviews to Arabi.

And, contrary to Arabi's representations that the Government states that Qualcomm withheld some documentation, the Government merely states that it has produced all documents in its possession that involve Qualcomm's internal investigation. The Government does not say that other documents exist. The Government suggests it is possible that Qualcomm has withheld documents pursuant to a privilege, but does not suggest knowledge as to whether this is so or not.

---

4. All materials, notes, recordings, transcripts, and other documentation of Qualcomm's interview with Joseph Fang. In particular his denial of Mr. Taneja's statement about Mr. Fang's knowledge that Dr. Arabi and Ms. Alan are siblings.
5. All materials, notes, recordings, transcripts, and other documentation of Qualcomm's interviews with Brad Quinton, Trent McClements, Andrew Hughes, Michael Lee, Scott Chin, Michael Smith, Shawna Quinton, James Derbyshire, Picta Media Inc. or its representatives, Douglas Konkin, and Invionics Inc. or its representatives (together, the "Invionics Group") during Qualcomm's investigation and/or pursuant to the cooperation agreement entered into between Qualcomm and the Invionics Parties on May 1, 2018, including any documents produced.
6. All materials, notes, recordings, transcripts, and other documentation of any continued investigation after the settlement agreement entered into by Qualcomm, Ms. Alan, and Dr. Arabi, including any notes, communications, and other documentation regarding the motivation of the continued investigation post-settlement.
7. All information regarding any tips, reports, or other notifications received by Qualcomm through its tipline(s) and/or hotline(s) relating to Dr. Arabi, Abreezio, the Abreezio acquisition, the Abreezio due diligence, any other defendants, or any other individuals who worked on or had relation to the Abreezio acquisition. According to TL-REPORTS-000011, "Abreezio was originally reported through Qualcomm's tip-line." [Add to WZB Dec] [sic] We request all information related to that report – documents, notes, transcripts, and any other materials related to that report. Discovery specifically mentions the Business Conduct Hotline. This request encompasses that hotline as well as any other tip-lines that Qualcomm operates and/or promotes to employees or agents of Qualcomm.

(ECF No. 135-1.)

Arabi, who has the burden of showing the need for this subpoena, fails to show: (1) what he is allegedly missing, and (2) what the missing interview(s) might provide in the way of admissible or even helpful information. In addition, Arabi fails to show how reports to an anonymous tip line would lead to relevant or admissible evidence. Even under the *Tucker* standard mentioned above, Arabi fails to show articulable suspicion that there is something in Qualcomm's files that has not been produced that might be material to his defense.

The only specific showings Arabi makes about witness statements are those concerning employees Fang and Kechichian. With respect to Kechichian, Arabi apparently already has Qualcomm employee Schmidt's summary of the November 2, 2016, interview of Kechichian. Arabi fails to show that there are other documents of Kechichian interviews that have not been produced. Further, Arabi does not allege that he lacks documentation of Fang's statements during the Qualcomm investigation. He fails to allege what it is that he is supposedly missing.

Additionally, any information gleaned during Qualcomm's internal interviews would be solely useful for impeachment purposes. However, the Court will order Qualcomm to produce any documentation *that has not already been produced to the Government* of interviews of Fang and Kechichian to the Court for an *in camera* review for possible future impeachment. To the extent Qualcomm believes assertion of a privilege over any of these interviews is appropriate, it must make the appropriate showing to the Court that such a privilege applies.

Similarly, the Court will order Qualcomm to produce any documentation it has of its interviews of Defendant Taneja. Since Taneja is a codefendant in this criminal case and has already pled guilty, there is a strong possibility he may testify at future proceedings. If so, his statements during the Qualcomm internal investigation are likely to become relevant as potential impeachment. Arabi does allege that documentation of these interviews has not been produced by the Government. Therefore, the Court will order Qualcomm to produce any documentation of these interviews to the Court *in camera* for possible future

use as impeachment. Again, if Qualcomm wishes to assert a privilege, it has the burden of demonstrating to the Court the existence of such privilege.

All other requests for documentation of internal interviews are nothing but a fishing expedition. Arabi clearly has documentation of many of these interviews already because they are summarized in the *ex parte* application requesting the Rule 17(c) subpoena. The application does not make clear what interview documentation Arabi believes was not produced and what evidence he even suspects might be contained in this documentation not produced. Hence, the Court grants the motion to quash with respect to the remaining categories of documents under Request 1A.

### B. Request 2A: Communications Between Qualcomm's Outside Counsel and the Government Seeking Criminal Prosecution[3]

Again, Arabi fails to detail what he believes is missing. Apparently, the Government has produced the PowerPoint used by Qualcomm in its presentation to the Government seeking prosecution. In addition, Arabi fails to detail what production of any other documentation would reveal in the way of relevant or admissible evidence.

Even assuming this evidence supports Arabi's theory that Qualcomm was extremely eager for the Government to prosecute Arabi, the Court fails to see how this evidence would

---

[3] The specific documents requested in this Section 2A are:

1. All materials, notes, recordings, transcripts, and other documentation of the May 11, 2018, meeting between the government, Qualcomm, and Hueston Hennigan, outside counsel for Qualcomm, requesting that the government prosecute Dr. Arabi, et al.
2. Identification of materials, notes, recordings, transcripts, and other documentation provided to the government by Qualcomm and/or by outside counsel Hueston Hennigan, on or about June 28, 2018.
3. All materials, notes, recordings, transcripts, and other documentation of the June 28, 2018, government review of confidential documents furnished by Hueston Hennigan, outside counsel for Qualcomm, as part of the request that the government prosecute Dr. Arabi, et. al.
4. All materials, notes, recordings, transcripts, and other documentation of the July 10, 2018, presentation to the government by Hueston Hennigan, outside counsel for Qualcomm, requesting that the government prosecute Dr. Arabi, et. al.

provide relevant evidence or evidence admissible at any future hearing. Thus, the Court grants Qualcomm's Motion to Quash with respect to the documents sought in this section.

Furthermore, with respect to the last request for documentation related to an internal incentive program to reward whistleblowers, Arabi again appears to be fishing for evidence that might possibly be useful without having any idea or providing any suggestion as to what that evidence might be. This request is an abuse of Rule 17(c).

### C. Request 3A: Personnel files[4]

This request is clearly overbroad. Arabi fails to show what admissible evidence is likely to be found in the personnel files of every individual who had a relationship with Arabi while he worked at Qualcomm. In addition, a great deal of obviously inadmissible, private information is likely to be swept up in this broad request. Simply alleging that some of these individuals (Arabi lists only one) were competing with Arabi for a promotion

---

5. All materials, notes, recordings, transcripts, and other documentation of the government's July 10, 2018, declination to prosecute, including reasons for declining at that time.
6. All materials, notes, recordings, transcripts, and other documentation of Qualcomm's May 7, 2020, presentation to the government by Hueston Hennigan, outside counsel for Qualcomm, requesting prosecution of Dr. Arabi, et. al.
7. Materials Related to Bias and Improper Motivations of Whistleblowers, Qualcomm as an Institution, Qualcomm Employees at the Time of the Acquisition, and other Key Witnesses.
8. All materials or information related to any internal incentive program that Qualcomm has to reward internal whistleblowers.

(ECF No. 135-1.) The Court frankly does not understand what the seventh request is seeking, so the Court grants the Motion to Quash on that ground as well.

[4] Specifically, Request 3A seeks:

All Qualcomm personnel files for all individuals who were involved with Qualcomm's due diligence investigation into the Abreezio acquisition, the origination of the Abreezio deal within Qualcomm, witnesses in the post-purchase investigation, and/or who had a relationship with Dr. Arabi while he worked at Qualcomm, including, but not limited to, the [thirty-four] individuals listed [thereafter in the subpoena].

(ECF No. 135-1.)

is an insufficient showing to request the entire personnel file of any of those individuals. Qualcomm's Motion to Quash this request is granted.

### V. Conclusion

Qualcomm's Motion to Quash is granted except for three items. The Court **ORDERS** Qualcomm to produce—to the Court *in camera*—all materials, notes, recordings, transcripts, and other documentation of Qualcomm's interview(s) with Joseph Fang, Kevork Kechichian, and Saniv Taneja, but only to the extent that these items have not already been produced to the Government. If Qualcomm claims a privilege applies to any responsive documents, it shall also submit a log containing a detailed description of the basis for any privilege. Qualcomm shall lodge these items with the Court by delivering them to chambers on electronic media no later than **November 3, 2023**. Thus, the Motion to Quash (ECF No. 150) is **GRANTED IN PART** and **DENIED IN PART**.

IT IS SO ORDERED.

DATED: October 13, 2023

Hon. Cynthia Bashant
United States District Judge