UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KARIM ARABI (1),<br><br>Defendant. | Case No. 22-cr-1152-BAS<br><br>**DECLARATION OF NICHOLAS W. PILCHAK IN SUPPORT OF THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DECLARATORY RELIEF REGARDING (1) INVENTORSHIP & (2) ENFORCEABILITY OF EMPLOYMENT AGREEMENT** |

I, Nicholas W. Pilchak, counsel for the United States, declare that:

1.  I am an attorney licensed to practice law in the State of California. I am an Assistant U.S. Attorney for the Southern District of California and am one of the attorneys representing the United States in this case. The facts stated in this declaration are based upon my personal knowledge, and if called as a witness, I could and would testify competently to the facts herein.

2.  Qualcomm records reflect that, on or about November 18, 2013, Defendant Karim Arabi acknowledged that "I have read and will comply with 'The Qualcomm Way: Our Code of Business Conduct.'" QCARABI_00564767.[1] The "Code of Business Conduct" included a slide on "Intellectual Property," which provided, among other things, that "Qualcomm owns the rights to anything we develop while employed at Qualcomm to the extent permitted by law . . . . Subject to local law, this applies no

---

[1] This declaration lists Bates numbers for corresponding documents for reference but does not attach them. Copies are available upon request for the Court's review.

matter where or when we create such intellectual property." QCARABI_00453301 at '3317. The same slide also included a panel listing a sample question and answer on the same subject, which said: "Q. I am an engineer and have been working on implementation of a new system protocol. While working on this project, I got an idea for a new framework that I designed on my own time with my own resources. Since I developed this framework completely independently of Qualcomm time and assets, does it belong to me or Qualcomm? A. Because you are a Qualcomm employee and this idea is related to Qualcomm's business or anticipated business, Qualcomm owns the rights to the design, no matter where or when it was created." *Id*.

3. On October 20, 2014, Dr. Arabi's former co-worker emailed him about plans to use "a currently dormant company" to make Arabi (or your family members) significant shareholder(s) by accepting a nominal investment." P00001819. The company's "primary goal will be to develop new technology" and marketing so that "the key value prop[osition] can effectively [be] demonstrated to large semiconductor companies like QCOM." *Id*. Later in the same email chain, after further discussions fine-tuning their plans, the former co-worker emailed Dr. Arabi on November 28, 2014, writing "I talked to the team, and they are very excited to move forward!" *Id*. He suggested a date of December 27, 2014. *Id*.

4. Separately, on December 1, 2014, the former co-worker emailed three of his own associates that "I have an online meeting with Karim scheduled for 4:30 p.m. on Dec. 4. I'd like you guys to attend as Karim will be going over his idea/patent application."

5. Qualcomm filed a civil fraud lawsuit against Karim Arabi; Sheida Alan, aka Sheida Arabi; and Sanjiv Taneja on or about October 26, 2017, in California Superior Court for San Diego County, case number 37-2017-00040719-CU-FR-CTL (the "Civil Fraud Suit"). QCARABI_00461272.

6. On or about May 21, 2018, Dr. Arabi signed verified responses to Requests to Admit served by Qualcomm's counsel in the Civil Fraud Suit.

QCABR_USAO_00001442.  Two of the requests asked Dr. Arabi to admit that he was an inventor of the two provisional patents filed in December 2014 for Abreezio's technology, later sold to Qualcomm.  *Id*. at '1454–55.  Arabi denied both of those requests to admit under oath.  *Id*.

7. On or about May 21, 2018, Ms. Alan also signed verified responses to Requests to Admit served by Qualcomm's counsel in the Civil Fraud Suit.  QCABR_USAO_00001668.  Two of the requests asked Alan to admit that she was not an inventor of the two provisional patents filed in December 2014 for Abreezio's technology, later sold to Qualcomm.  *Id*. at '1679.  Ms. Alan denied both of those requests to admit under oath.  *Id*.

8. On or about January 16, 2018, Dr. Arabi's attorneys in the Civil Fraud Suit served his responses to Qualcomm's First Set of Special Interrogatories.  QCABR_USAO_00000868.  Interrogatory No. 14 asked Arabi to "Describe your role in the formation, operation, and sale of Abreezio LLC."  *Id*. at '880.  Subject to general objections, Dr. Arabi responded "Mr. Arabi introduced his sister Sheida Alan to his long-time acquaintance Sanjiv Taneja, which introduction ultimately led to the formation of Abreezio, LLC.  However, Mr. Arabi otherwise had no role in the formation, operation or sale of Abreezio, LLC."  *Id*.

9. On or about May 21, 2018, Dr. Arabi executed verified responses to the same special interrogatories.  QCABR_USAO_00001458.  This time, subject to objections, Arabi's response was simply "Mr. Arabi introduced his sister Sheida Alan to his long-time acquaintance Sanjiv Taneja, which introduction ultimately led to the formation of Abreezio, LLC," omitting the sentence from the prior response that he "otherwise had no role in the formation, operation or sale of Abreezio, LLC."  *Id*. at '1468.

10. Dr. Arabi also incorporated by reference his responses to eight other Special Interrogatories, in which he generally claimed that in early 2014, Ms. Alan had told him about the "promising technologies" later provisionally patented in December

2014; that he had "multiple conversations" with her about the technologies; that he "help[ed] connect her to professional acquaintances in [his] network" to assist with commercialization"; that he recommended she file provisional patents for her technologies; and that he assisted her with the application and filing process. QCABR_USAO_00001513 at 1518–20. "For the sake of clarity, however," Arabi's response added, "Mr. Arabi did not contribute to the conception of the inventions described in" the provisional patents. *Id*. at '1520. In other cross-referenced responses, Dr. Arabi added that:

    a. he discussed Ms. Alan's technology with Sanjiv Taneja, Ali Akbar Shokouhi, and two other individuals during the relevant time, *id*. at '1521;

    b. he "in many instances acted as a go-between to communicate information between [Alan] and Abreezio (principally, Sanjiv Taneja and [another individual])," *id*. at '1527;

    c. he recalled conversations with Taneja concerning Alan's new tech in early 2015;

    d. he met with Taneja, Shokouhi, and another individual in early 2015 to discuss "the potential formation of Abreezio . . . along with ideas to try to capitalize on [Alan's]s technology" and the others' expertise;

    e. he met with Taneja and a senior Qualcomm employee in January 2015 to discuss "Taneja working on a new company in the field of VLSI/power reduction";

    f. he met with Taneja in May 2015 to discuss Taneja's impending meeting with Qualcomm;

    g. he had multiple conversations with Taneja about problems Taneja was having with another individual relating to Abreezio, and concerning Abreezio's status and tech development efforts; and

h. in October 2015, he "had multiple discussions on behalf of [Ms. Alan] with Mr. Taneja regarding issues relating to the potential sale of Abreezio to Qualcomm"; *id*. at '1528–29.

DATED: November 27, 2023

_____
NICHOLAS W. PILCHAK