# Exhibits 1-5
Filed Conditionally Under Seal

# Exhibit 6

```
                     UNITED STATES DISTRICT COURT

                FOR THE SOUTHERN DISTRICT OF CALIFORNIA


  UNITED STATES OF AMERICA,      )   No. 22-cr-1152-BAS
                                 )
                  Plaintiff,     )   Monday, October 2, 2023
       vs.                       )
                                 )   Motion Hearing
  KARIM ARABI, ET AL.,           )
                                 )
                  Defendants.    )
  _____)




                  REPORTER'S TRANSCRIPT OF PROCEEDINGS

              BEFORE THE HONORABLE CYNTHIA A. BASHANT
                    UNITED STATES DISTRICT JUDGE

                            PAGES 1 - 57
```

Reported By:

Anne Roldan, RMR, CRR, Cal. CSR #13095
Official Court Reporter
U.S. District Court, Southern District of California
333 West Broadway, Suite 420
San Diego, California  92101

Reported by stenotype; transcribed by computer.

```
 1    APPEARANCES:

 2    For Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
                            880 Front Street, Suite 6293
 3                          San Diego, California   92101
                            By: NICHOLAS W. PILCHAK, AUSA
 4                              ERIC R. OLAH, AUSA

 5    For Defendant 1:      BIENERT KATZMAN LITTRELL WILLIAMS, LLP
                            903 Calle Amanecer, Suite 350
 6                          San Clemente, California   92673
                            By: WHITNEY Z. BERNSTEIN, Esq.
 7                              SANDRA C. LECHMAN, Esq.

 8    For Defendant 4:      KING & SPALDING, LLP
                            633 West Fifth Street, Suite 1600
 9                          Los Angeles, California   90071
                            By: DAVID K. WILLINGHAM, Esq.
10                              ANDREW J. GALVAN, Esq.

11    For Qualcomm:         HEUSTON HENNIGAN, LLP
                            523 West Sixth Street, Suite 400
12                          Los Angeles, California   90014-1208
                            By: PADRAIC W. FORAN, Esq.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

|   |   |
|---|---|
| 1 | ***MONDAY, OCTOBER 2, 2023, 3:09 P.M.*** |
| 2 | *** |
| 3 | **THE CLERK:** Calling Matter No. 13, 22-cr-1152, United |
| 4 | States of America vs. Karim Arabi and Ali Akbar Shokouhi, on |
| 5 | calendar for a motion hearing. |
| 6 | **MR. PILCHAK:** Good afternoon, your Honor. Nicholas |
| 7 | Pilchak and Eric Olah for the United States. |
| 8 | **THE COURT:** Good afternoon. |
| 9 | **MS. BERNSTEIN:** Good afternoon, your Honor. Whitney |
| 10 | Bernstein and Sandra Lechman on behalf of Dr. Arabi, who is |
| 11 | present before the Court. |
| 12 | **THE COURT:** Good afternoon. |
| 13 | **MR. WILLINGHAM:** Good afternoon, your Honor. David |
| 14 | Willingham and Andrew Galvin present on behalf of Ali Akbar |
| 15 | Shokouhi, who is also present and on bond. |
| 16 | **THE COURT:** Good afternoon. Do we have attorneys here |
| 17 | from Qualcomm? |
| 18 | **MR. FORAN:** Yes, your Honor. Patrick Foran on behalf |
| 19 | of Qualcomm. |
| 20 | **THE COURT:** Okay. Good afternoon. I'd like to take |
| 21 | the motion go quash from Qualcomm first, and then we can discuss |
| 22 | the other matters in the underlying criminal case. |
| 23 | Kind of to give you my tentative, as a preliminary |
| 24 | matter, it seems to me that the documents requested in the third |
| 25 | section of "A," that is the personnel files of everyone who ever |

1   is not a typical case, and that's the problem.
2           **THE COURT:** Okay.  Let me hear from the Government,
3   particularly on the emails.
4           **MR. PILCHAK:** Thank you, your Honor.  If I could,
5   before I get to those, just one minute on the big picture stuff?
6           **THE COURT:** Sure.
7           **MR. PILCHAK:** I would also like to say on the record
8   that this case is not a conspiracy between the United States and
9   Qualcomm to gin up some charges against Dr. Arabi or anyone
10  else.  The Government took Qualcomm's referral on the second try
11  after declining to open in 2018, opened an investigation,
12  conducted extensive investigative steps after receiving the
13  original grand jury return from Qualcomm, and then and only then
14  decided to seek and obtain the charges in this case.
15          There was no secret agreement.  There's no evidence of
16  any secret agreement.  The civil litigation wasn't a conspiracy
17  to trick or trap Dr. Arabi or Ms. Alan into making any
18  statements or admissions.  In fact, if it was, it would have
19  been the worst conspiracy in the world because they didn't do
20  anything to that effect in response to the pitch to the
21  Government or the contact with the Government in 2018.
22          As Mr. Foran pointed out, the only things that came
23  about in the civil litigation from them after that point that
24  are relevant to this case at all were because of requests and
25  asks that had already been served before Qualcomm came to the

1  United States in May of 2018.

2  I also want to push back against this idea that there's
3  been a selective production here. I was a little kid once, and
4  I thought that keep-away ball was very unfair, too. But for it
5  to really be keep-away, Mr. Foran or his law firm would have had
6  to throw the ball to the United States, and then when Dr. Arabi
7  came to us, we'd have to throw it back.

8  And I think it would be helpful for me to just tell the
9  Court on the record, there are no records or documents that I'm
10 aware of or that the people that I've spoken with are aware of
11 in this investigation that Qualcomm provided to the Government,
12 and then we said, "We don't want to know about that. You take
13 it back. You know, you keep that," so that we won't have it in
14 our files. There was no wink and a nod. There was no selective
15 production.

16 It is true that there are things that we would also be
17 interested to see at the prosecution from Qualcomm's outside
18 counsel investigation that they have consistently said, "Once
19 our outside lawyers came on, those are work product that were
20 prepared for us as part of the civil litigation," and they
21 declined to produce those to us. They weren't technically
22 called for by the subpoena because the subpoena called for
23 non-privileged stuff in the original case. And I want to talk
24 about that subpoena because Dr. Arabi's counsel have now said a
25 couple of times that there's something fishy going on with that

```
 1   first grand jury subpoena.
 2             And it is true, and we've produced the records to the
 3   Defense to show this, that many of the categories of records
 4   that were sought in that subpoena, the language for those
 5   requests was largely suggested by Qualcomm, who, after all, was
 6   trying to come in and report a potential federal crime here and
 7   to provide records that they believed would substantiate their
 8   report of a federal crime here.
 9             However, that initial subpoena itself also included
10   additional requests for records that were not suggested by
11   Qualcomm or Qualcomm's counsel.  There was also at least one and
12   possibly more follow-up subpoenas that were served during the
13   investigation, and the records that came back from Qualcomm on
14   those subpoenas have also been prepared and produced to the
15   defense in discovery, because this is not about hiding the ball
16   or hiding any records.
17             And it is true that there were two different versions
18   of the first grand jury subpoena, but it wasn't because of
19   clever wordsmithing by Qualcomm's counsel.  And I think I put
20   this in our responsive papers in my declaration.  It's because
21   there was some concern in the opening months of the COVID-19
22   pandemic that the grand jury might not have been sitting on the
23   date that the original subpoena called for the records to be
24   produced on.
25             And we wanted to be as squeaky clean as we could and
```

```
 1   have a subpoena that was returnable on a date when the grand
 2   jury was really sitting.  So there was a tweak with the response
 3   dates between Subpoena 1 and Subpoena 2 that were served on
 4   Qualcomm.  So again, there's no secret or sinister plot.  It was
 5   just an effort to investigate in good faith.
 6          THE COURT:  So it sounded to me like what the Defense
 7   was requesting was what was the original subpoena, and how --
 8   and what was the second subpoena that was issued.
 9          MR. PILCHAK:  Yes.  And without compromising our
10   position that grand jury subpoenas are not discoverable, I tried
11   to answer that question in my declaration in our response, which
12   said there was the issue with the date, and then we fixed the
13   date in the second subpoena.  It's paragraph 7 in our --
14          THE COURT:  Okay.
15          MR. PILCHAK:  Thank you -- in my declaration.
16          So getting down to the specifics, then.  Obviously, I
17   agree with the Court that the United States doesn't have an
18   obligation to conduct an investigation in any particular way, to
19   go out and compel records, especially from the victim of the
20   offense, simply because the Defense wants them.  I would like to
21   talk, though, about the raw email returns for the accounts.  I
22   think that's a very interesting and novel issue in this case.
23          I feel like we are also in a bit of a box on the
24   Government side with those.  Because if there no Sheida Alan in
25   this case, I think we would produce those raw returns to
```

# Exhibit 7
# Filed Conditionally Under Seal