HUESTON HENNIGAN LLP
Marshall A. Camp, State Bar No. 231389
Mcamp@hueston.com
Padraic W. Foran, State Bar No. 268278
pforan@hueston.com
Lauren E. Border, State Bar No. 327770
lborder@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:   (888) 775-0898

Attorneys for Non-Party
Qualcomm Incorporated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KARIM ARABI, SHEIDA ALAN, SANJIV TANEJA, and ALI AKBAR SHOKOUHI,<br><br>Defendants. | Case No. 3:22-CR-01152-BAS<br><br>**DECLARATION OF BYRON YAFUSO IN SUPPORT OF NON-PARTY QUALCOMM INCORPORATED'S REPLY TO MOTION TO QUASH RULE 17(c) SUBPOENA DUCES TECUM**<br><br>*[Filed concurrently with Memorandum of Points and Authorities]* |

# DECLARATION OF BYRON YAFUSO

I, Byron Yafuso, declare as follows:

1. I am Senior Director, Legal Counsel at Qualcomm Incorporated ("Qualcomm"). I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. From December 1990 to the Fall of 1998, before pursuing a law degree, I was a software engineer at Qualcomm, during which time my job titles evolved from "Senior Engineer" to "Director, Engineering." My responsibilities in these positions included authoring software source code and tracking changes to source code using source code version control repository software prevalent at the time.

3. From 1998 to 2002, I worked full-time as a patent agent in Qualcomm's patent department while attending law school in the evenings at University of San Diego School of Law.

4. I became a licensed patent attorney in 2003, and since 2005, have been an in-house litigation attorney at Qualcomm, with job duties including negotiation of protective orders and management of discovery and inspection of source code for Qualcomm's products in civil litigation.

5. As a supplier of cutting-edge chipsets and software for products such as cell phones made by third-parties, Qualcomm is often required to make its source code for those chipsets and software available for inspection in patent litigation.

6. Since 2005, I have been involved in hundreds of lawsuits involving inspections and protective orders for Qualcomm source code in patent cases around the world. I authored some of the evolving source code protocol language seen in the protective orders attached to my declaration (Dkt Nos. 293-5 through 293-8) for cases involving Qualcomm source code. I have even seen that language copied in protective orders for non-Qualcomm cases. I have substantial experience and expertise in the

discovery protocols for, and use of, source code evidence in litigation.

7. Because of the frequency of the demands to inspect Qualcomm source code, Qualcomm has worked with its discovery vendor ProSearch to equip and configure a source code escrow facility for inspection of Qualcomm source code in Los Angeles. Since its establishment in 2016, with the exception of a short shutdown of the entire facility in 2020 due to the COVID-19 pandemic, Qualcomm source code files for various cases have been available for inspection at the ProSearch source code escrow facility without interruption. And despite significant dips during the years of the COVID-19 pandemic, Qualcomm has averaged over 200 source code inspections per year at ProSearch.

8. I attended the December 9, 2024 hearing on Defendant Karim Arabi's ("Defendant" or "Arabi") motion to continue trial in this case, and have reviewed the unredacted portions of Defendant's ex parte motion to continue trial. I have not reviewed Defendant's opposition to Qualcomm's motion to quash his October 30, 2024 subpoena, as the opposition was filed under seal in its entirety.

9. As an initial matter, as established in my prior declaration (Dkt. No. 293-4), it is by no means certain that Qualcomm still possesses or can access the data Defendant seeks in Requests 2 and 3 of his subpoena (i.e., "Abreezio's source code and revision control repository, including all metadata" that former Invionics employees allegedly delivered to Qualcomm employee Robert Kwan on a USB key or hard drive in November 2015, and "[a]ll source code and revision control repositories, including all metadata related to any Field Programmable Gate Array ('FPGA') demos Abreezio presented to Qualcomm during due diligence"). At the December 9 hearing, Defendant's counsel stated she was certain that a big company like Qualcomm would have preserved this data, but it is unclear to me what is the basis for this certainty.

10. In fact, Qualcomm does not know whether such records, which are now more than nine years old, exist in its possession, custody, or control. As outlined

below, even the act of searching for Defendant's requested data is a burdensome process that can take several weeks. Given the age of the data Defendant seeks, they may or may not have been archived at an off-site location. And even if the data were archived, there is no guarantee that Qualcomm still has the equipment necessary to extract information from the archived media. There are a variety of magnetic or optical media formats on which such data might have been stored, some of which Qualcomm may no longer possess equipment capable of restoring it at all. If Qualcomm has the equipment necessary to extract information from archived media, the media itself may have deteriorated because around November 2015, Qualcomm often stored archive data on tape drive, which is prone to deteriorate. Thus, even if Qualcomm locates the archive media and equipment necessary to read it, it is uncertain whether usable data can be retrieved from that media.

11. During the hearing, Defendant's counsel estimated that if requested data are stored at an off-site archive, such as Iron Mountain, then Qualcomm can retrieve those data within one or two weeks. I am not aware of any basis for this estimate, and the estimate is, in my experience, inaccurate and unrealistic. In fact, even if the data were stored at Iron Mountain, it is my understanding that the initial step of determining whether Qualcomm even has the requested data could take several weeks. And as discussed above, Qualcomm may have issues restoring the data.

12. From his counsel's statements during the December 9 hearing, I understand Defendant's position is that his requests to inspect source code repositories or "metadata," as opposed to source code files, is routine in civil litigation. Specifically, I recall his counsel asserted that source code repositories are inspected "all the time" and inspection of these repositories is "not complicated." In my experience, this statement is false and incorrect. In fact, I cannot recall a single case I have worked on involving inspection of non-human-readable software source code repositories or metadata. If such a case ever occurred, I would almost certainly

remember it, because it would require the installation of special software in Qualcomm's source code review environment to make that metadata human-readable, as well as special provisions in the corresponding protective order.

13. From the statements made during the December 9 hearing, I also understand Defendant's position is that a 6-week continuance of trial will be sufficient for Defendant to gain access to and prepare as trial evidence the metadata he seeks. In my experience, this is a fairly spectacular underestimate. Making source code usable as trial evidence under a typical protective order typically requires the following steps: (a) Qualcomm identifies, locates, and collects the relevant source code files; (b) Qualcomm makes those source code files available for inspection at ProSearch; (c) the reviewing party's attorneys or experts inspect the source code at ProSearch (subject to review room availability and inspection charges by ProSearch) and create PDF printouts of select pages of source code; (d) Qualcomm converts the selected PDF source code printouts into numbered hard copy printouts and produces those copies to the parties under a suitable protective order such as the examples I provided previously; and (e) the parties' experts refer to the source code printouts in expert reports and/or declarations, typically opening reports as well as rebuttal reports. In my experience, the process of going from searching for and collecting source code to be inspected all the way perfecting the use of information gleaned from that source code at trial invariably takes several months.

14. For inspection of source code repositories and attendant metadata, Qualcomm would need to take additional steps, including: (a.1) identifying the specific source code repository host software needed to inspect metadata inside the repository files; (a.2) purchasing or acquiring licenses to that host software as necessary; and (a.3) evaluating whether and how that source code repository host software could be installed in the source code inspection environment at ProSearch and ensuring that a reviewer could use it to convert relevant metadata into PDF files suitable for

conversion into hard copy printouts. In my experience, any one of steps (a), (a.3), (c), or (e) could alone take longer than 6 weeks.

15. From the statements made during the December 9 hearing and from my review of the unredacted portions of Defendant's motion to continue the case, it is my understanding that Defendant believes that metadata from the source code repositories would show who authored particular lines or files of source code and when, or who conceived particular inventions implemented in the source code and when. In my experience as a software engineer and an intellectual property litigator, this understanding is incorrect. At best, the metadata of a source code repository could prove which account or initials were used to "check in" or "commit" into the repository various versions of source code files and when. But such metadata would not prove, at least not definitively without corroborating testimony by the authors, who made the source code revisions contained in those file versions, or who conceived any inventions embodied therein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of December 2024 at San Diego, California.

*/s/ Byron Yafuso*
Byron Yafuso

# PROOF OF SERVICE

*United States of America, V. Karim Arabi, et al.*
U.S.D.C. Southern District of California, Case No. 3:22-cr-01152-BAS

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

I hereby certify that on December 10, 2024, I caused the electronically filed aforementioned document with the United States District Court Southern District of California by using the CM/ECF system. I certify that counsel of record registered as ECF Filers will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 10, 2024, at Los Angeles, California.

| Susan Segovia | *[signature]* |
|---|---|
| (Type or print name) | (Signature) |