# Exhibit A

Whitney Z. Bernstein, SBN 304917
wbernstein@bklwlaw.com
Rebecca S. Roberts, SBN 225757
rroberts@bklwlaw.com
Ryan V. Fraser, SBN 272196
rfraser@bklwlaw.com
**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

*Attorneys for Dr. Karim Arabi*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>KARIM ARABI,<br><br>      Defendant. | Case No. 3:22-cr-1152-BAS-1<br>Honorable Cynthia Bashant<br><br>REDACTED VERSION OF DOCUMENT<br>PROPOSED TO BE FILED UNDER SEAL<br><br>**DR. KARIM ARABI'S SURREPLY TO NON-PARTY QUALCOMM INCORPORATED'S REPLY IN SUPPORT OF ITS MOTION TO QUASH RULE 17(c) SUBPOENA *DUCES TECUM*** |

## I.     Introduction

Qualcomm's half-hearted reply in support of its motion to quash ("Reply"), addressing subpoena requests 2 and 3, exaggerates its burden of complying with the subpoena, as well as the applicable law. Qualcomm urges the Court effectively to rule that the source code and revision control repository must be something like conclusive proof of innocence to be the proper subject of a defense subpoena under Rule 17(c). *See* Reply, Dkt. No. 304, at 5. But that is not the test of relevancy under *Nixon* or Federal Rule of Evidence 401.[1]  Dr. Arabi is entitled to access to this evidence because it is central to the defense and will show ███████████████████████████████████████████████████████
███████████████████████████████████████████████████

## II.     Surreply to Reply § II.A

### Qualcomm's equivocal and incredible suggestion that it "may not have the data Arabi seeks" deserves no weight.

Qualcomm's first reply argument is equivocal: it "*may* not have the data Arabi seeks." Reply, Dkt. No. 304, at 1–2 (emphasis added). As in the original motion to quash Qualcomm attempts to rely on its purported *lack of knowledge and its repeated refusal to ascertain* whether it in fact possesses the data to raise a question whether the data exist. But because Qualcomm has not actually shown that it does not have access to the subpoenaed data—it is playing ostrich—this purported ground to quash deserves no weight.

In any event, the suggestion that Qualcomm may have lost the data is absurd. Qualcomm has been investigating the Abreezio acquisition for at least eight years.

---

[1] The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.  The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.  The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

*United States v. Nixon*, 418 U.S. 683, 709 (1974); *see also* Fed. R. Evid. 401 (providing that evidence is relevant if it has "any tendency to make a fact more or less probable" and "the fact is of consequence").

DR. KARIM ARABI'S SURREPLY TO NON-PARTY QUALCOMM INCORPORATED'S REPLY
IN SUPPORT OF MOTION TO QUASH RULE 17(c) SUBPOENA *DUCES TECUM*

Qualcomm engaged in substantial civil litigation concerning the Abreezio acquisition. It is not reasonable for Qualcomm to have lost it, which Qualcomm does not even claim to have done. On the contrary, Qualcomm admits that it has safeguarded this data closely with "extraordinary measures," calling it "among Qualcomm's most competitively sensitive intellectual property." Mot to Quash, Dkt. No. 293, at 3–4.

Contrary to Qualcomm's contention, magnetic backup tapes should last fifteen to thirty years if stored in the proper environment, as they likely would have been either onsite at Qualcomm or at Iron Mountain. Barth Supp'l Decl. at ¶ 12.[2]  Readers for the industry standard magnetic tapes are still available for purchase, and it usually takes only a few days to restore data using readers from the magnet tape format. *Id.* at ¶ 14.

Qualcomm's incredible, equivocal suggestion that it "may" somehow have lost this extraordinarily important data is not a basis to quash the subpoena.

**III.    Surreply to Reply § II.B–C**

**The source code repository can be produced without undue burden within six weeks if Qualcomm acts diligently.**

Despite Qualcomm's best obfuscation, there is no insurmountable or even significant burden to reviewing code produced in the form of a Git repository within six weeks. *See id.* at ¶¶ 8–11. To summarize and briefly respond, Git repositories are not hosted on a cloud server but are instead easy to make available locally and access using freely downloadable software. *See id.* at ¶ 8. Qualcomm does not dispute this, nor does Qualcomm dispute that it is typical for the reviewing party to be able to request installation of software for review.

To the extent that repositories are less typically produced in litigation, it is likely because the revision history and authorship of files is usually irrelevant or of minimal importance, whereas that information here goes to the heart of the indictment. Still, this is hardly the unicorn Qualcomm wants the Court to think this is. Jerry Barth III, a senior

---

[2] "Barth Supp'l Decl." citations refer to Jerry Barth III's supplemental declaration submitted today together with this Surreply; "Barth Decl." citations refer to his December 5, 2024, declaration submitted previously in opposition to the motion to quash.

consultant at UnitedLex who has been supporting litigations for about ten years, has "reviewed code in the form of Git repositories for many litigations." *Id.* at ¶ 2; *see also id.* at ¶ 5, Ex. 1 (source code expert Mike Slinn: "When on an assignment as a software expert for a US federal court case, I always request entire git repositories instead of just the source code at one specific historical date. Having the entire git repository means that I can learn how a project was built, and who did what."). It is not uncommon for courts to order source code repositories to be produced in IP civil litigation. *See Opal Labs, Inc. v. Sprinkler, Inc.*, 2020 U.S. Dist. LEXIS 272690, at * 16 (D. Or. Apr. 11, 2020) (granting plaintiff's motion to compel production of Git repositories).

Similarly, Qualcomm's attempt to suggest that it could not comply with an order to produce the source code and Git repository before the new trial is baseless. The feigned hurdles are confusing. Even if it takes two to three weeks to receive the data from Iron Mountain, Roberts Decl. at ¶ 34, it should then take no more than a few days to restore the data from the tapes and set up the code review, especially given Qualcomm's standing relationship with ProSearch, which makes code available for inspection there frequently. Barth Supp'l Decl. at ¶¶ 9–11, 13. Negotiating a protective order for this data is similarly straightforward and quickly feasible.[3]  There is no need for Qualcomm to "identif[y] the specific … software," since it has already been identified. Barth Decl. at ¶¶ 5–10; Barth Supp'l Decl. at ¶ 8. There is also no need for Qualcomm to "purchas[e]" or any difficulty to "acquir[e]" any software because Git is freely available on Git's website (https://git-scm.com/downloads). There is also no need for Qualcomm to "evaluat[e] whether and how that source code repository host software could be installed," as it can be operated on a standard Windows or Mac laptop. All that needs to be done is set aside a single laptop with Git and Adobe Acrobat software. *See* Barth Supp'l Decl. at ¶¶ 8–10.

---

[3] Dr. Arabi does not concede the need for a protective order, but, to expedite this process, is willing to agree to one.  (There is no apparent risk or harm to Qualcomm from revealing the authors of, and timing of contributions to, the source code.  These metadata do not constitute intellectual property.)

If Qualcomm diligently complied with an order to produce the Git control repository and its metadata, the estimated six-week timeline is realistic. *See id.* at ¶ 11. Qualcomm initiated and prosecuted civil litigation against Dr. Arabi for nearly three years, then, in arguable violation of the settlement agreement, made numerous criminal referrals to the USAO, and now, when Dr. Arabi's liberty is on the line, claims production of evidence crucial to Dr. Arabi's defense is overly burdensome. This is blatant gamesmanship.

## IV.    Surreply to Reply § II.D

**The source code repository clearly meets the relevancy standard; to be relevant, it need not, on its own, conclusively prove innocence beyond reasonable doubt.**

Qualcomm's fourth reply argument is either a new argument that was not raised in the original motion, in which case it is forfeited or waived and should not be considered at all;[4] or, if construed as a subsidiary relevancy argument, it fails.

Relevancy under *United States v. Nixon*, 418 U.S. 683 (1974), is assessed by the definition of Federal Rule of Evidence 401. *E.g.*, *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-175-TEH, 2016 WL 3365754, at *2 (N.D. Cal. June 17, 2016) (citing *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006)). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."   Fed. R. Evid. 401. Axiomatically, this means Rule 401(a) does not require that evidence make a fact of consequence *certain* or *impossible* to be relevant. To be relevant, the evidence need only have *some* tendency to make a fact of consequence "more or less probable."

Here, the source code and source code repositories have such a tendency with respect to multiple facts of consequence. ███████████████████████████

---

[4] *See, e.g.*, *Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("Because we do not consider issues raised for the first time in reply briefs, we deem this late-raised argument forfeited."); *Alvarez v. NBTY, Inc.*, No. 17-cv-567-BAS-BGS, 2017 WL 6059159, at *4 (S.D. Cal. Dec. 6, 2017) (Bashant, J.) (citing *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006), in recognition of "the general principle that arguments raised for the first time in a reply brief are waived").



DR. KARIM ARABI'S SURREPLY TO NON-PARTY QUALCOMM INCORPORATED'S REPLY
IN SUPPORT OF MOTION TO QUASH RULE 17(c) SUBPOENA *DUCES TECUM*

1
2

3    For any of these reasons, the defense does not misunderstand what the requested data
4    will show. Rather, Qualcomm misunderstands, and thus distorts, what relevancy requires.

5    **V.    CONCLUSION**

6    The Court should deny Qualcomm's motion to quash.

7

8                                          Respectfully submitted,

9    Dated:  December 11, 2024            **BIENERT KATZMAN**
10                                         **LITTRELL WILLIAMS LLP**

11                                         By:  */s/ Ryan V. Fraser*
                                               Whitney Z. Bernstein
12                                             Rebecca S. Roberts
                                               Ryan V. Fraser
13                                             *Attorneys for Dr. Karim Arabi*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DR. KARIM ARABI'S SURREPLY TO NON-PARTY QUALCOMM INCORPORATED'S REPLY
IN SUPPORT OF MOTION TO QUASH RULE 17(c) SUBPOENA *DUCES TECUM*

1 | Whitney Z. Bernstein, SBN 304917
wbernstein@bklwlaw.com
2 | Rebecca S. Roberts, SBN 225757
rroberts@bklwlaw.com
3 | **BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
4 | 903 Calle Amanecer, Suite 350
San Clemente, California 92673
5 | Telephone (949) 369-3700
Facsimile  (949) 369-3701
6 |
7 | *Attorneys for Dr. Karim Arabi*
8 |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | Case No. 3:22-cr-01152-BAS-1 |
|---|---|
| Plaintiff, | Honorable Cynthia Bashant |
| | REDACTED VERSION OF DOCUMENT |
| v. | PROPOSED TO BE FILED UNDER SEAL |
| KARIM ARABI, | **SUPPLEMENTAL DECLARATION OF** |
| Defendant. | **JERRY BARTH III** |

DECLARATION OF JERRY BARTH III

## DECLARATION OF JERRY LEE BARTH, III

I, Jerry Lee Barth III, hereby declare as follows:

1.     The statements made herein are based on personal knowledge or information known to me and are true and correct to the best of my knowledge.

2.     I have a B.Sc. in Computer Science from Texas A&M University. After graduation, I joined iRunway (now UnitedLex) providing consulting services for numerous IP litigations involving companies such as USAA, Asus, UIPath, Sectra Communications, Axonics, Rovi Guides, BMC Software, and many more.  I have also been retained to provide technical consulting services in a wide variety of domains including network communications, wireless charging, diGital content streaming, DRM, enterprise software, and many more.  I have provided expert testimony in Canadian court in the cases of *Rovi Guides, Inc., et al. v. Telus Corp., et al.* and *Rovi Guides, Inc., et al. v. BCE, Inc., et al.*  In addition, I provided expert testimony in the *UiPath, Inc. v. Shanghai Yunkuo Information Tech. Co., Ltd., dba ENCOO Tech.* arbitration through the American Arbitration Association.

3.     I have been supporting litigations through source code review, software and hardware reverse engineering, and document review for approximately 10 years.  I have reviewed code in the form of Git repositories for many litigations.  I am very familiar with how a Git repository is structured and how to make use of the Git command line utility to access information from the repository.

4.     I reviewed the declaration of Byron Yafuso in support of Non-Party Qualcomm Incorporated's Reply to the Motion to Quash Rule 17(c) Subpoena Duces Tecum executed on December 10, 2024.  I disagree with Mr. Yafuso's statement that source code repositories and the metadata are not made available for inspection in civil litigation. I personally have reviewed source code produced in the form of Git repositories in multiple other cases.  I understand from my work as an expert that such productions including of the entire Git repository and its metadata are not uncommon in cases where analysis of the source code is relevant.

5.     By reviewing the entire Git repository and its metadata, one can determine how a specific project was built and who authored what part.  Attached as Exhibit 1 is an article by Mike Slinn, another expert who frequently testifies as a source code expert in U.S. federal courts.  Mr. Slinn writes, "When on an assignment as a software expert for a US federal court case, I always request entire Git repositories instead of just the source code at one specific historical date.  Having the entire Git repository means that I can learn how a project was built, and who did what."

7.     In my experience, the use and access of general metadata (for instance in Word files) as evidence is routinely relied upon in many disputes, as is the need to use databases (which are also <u>not</u> generally human readable) as evidence.  As explained in my prior declaration, the metadata for the source code and control repository is necessary to identify the authors, when the code was created, and what specific IP concepts or algorithms were integrated into the source code.  This information is often only available in the metadata.  While access to metadata is critical and necessary to identify the authors and contributors of the source code, there is no risk or downside in sharing it because it does not contain any IP.  Without access to metadata, it would be impossible to accurately identify the authors and contributors of the source code.

8.     While it is true that some source code repositories are difficult to make available for inspection, this is not the case for the source code at issue here, which is a "Git" repository.  As explained in my prior declaration, a Git repository is easy to make available locally and access using freely downloadable software provided by the Git

DECLARATION OF JERRY BARTH III

Project.  There is no need for Qualcomm to look for software since it has already been identified.  There is also no need for Qualcomm to purchase any software because Git is freely available (https://git-scm.com/downloads) and it supports operation on a standard Windows or Mac laptop.  Thus, the only requirement is to set aside a single laptop and download the Git software and possibly Adobe Acrobat.

9.    Once the data is obtained from the vendor, whom I understand Qualcomm identified as Iron Mountain, it usually does not take more than a few days to set up the code for review.  According to Mr. Yafuso, Qualcomm already has a standing relationship with ProSearch and makes code available for inspection all the time.  In my experience, it takes only a day or so to copy the repository to a clean laptop, download and install Git, and point the Git software at the copied repository following which Git commands will make metadata accessible in text-based human-readable form.

10.    The effort to create PDFs from Git commands is also straightforward.  Text outputs from Git can be automatically collected as text file.  On Windows, "Notepad" can convert a text file to a PDF, and on a Mac, "TextEdit" can convert a text file to a PDF.

11.    In my experience, the 4- to 6-week time estimate to restore, set up and review the Git control repository and its metadata is not unrealistic.  As a benchmark, the U.S. District Court for the Eastern District of Texas, which I understand is one of the most popular forums for parties to litigate intellectual property disputes, requires parties to complete review and serve updated infringement contentions with all the source code mapped to claims in claim charts within 30 days from production of the source code.  For example, attached as Exhibit 2 is a model discovery order for patent infringement cases assigned to Judge Rodney Gilstrap and Judge Roy Payne of the U.S. District Court for the Eastern District of Texas.  The model order provides: "[i]f a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for Accused Instrumentality is produced by the opposing party.  Thereafter, the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what

DECLARATION OF JERRY BARTH III

source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements." Ex. 2 at Section 3(a).

12.    I am familiar with the company Iron Mountain and have reviewed its website. Iron Mountain offers safe and secure document and data storage. (https://www.ironmountain.com/services/offsite-records-storage).    According to its website, Iron Mountain offers "comprehensive environmental conditions that safeguard your records from the elements."  While it is true that magnetic tapes can deteriorate over time, they should last 15 to 30 years if stored in the proper environmental condition.

13.    It is unclear from Mr. Yafuso's declaration as to what tape format the Abreezio software source code repository was saved to, e.g., IBM versus Linear Tape-Open ("LTO") tapes, both of which are industry standards.  Readers for both of these types of tapes are still available to purchase. *See, e.g.*, Desktop LTO Tape Drives, LTO World (https://ltoworld.com/collections/desktop-lto-tape-drives?srsltid=AfmBOoonOKKg3lPcKE9qcdOVtNsZjWvdpWOevcmiA9qH-0Y6LuoaRmI5).  In my experience, it would take a few days to restore the data using the readers from the magnetic tape format.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on 11th day of December 2024.

By: 

Jerry Lee Barth III

DECLARATION OF JERRY BARTH III

Exhibit 1

# Mike Slinn
## Git Repository Integrity



Published 2023-07-20.
Time to read: 2 minutes.

This page is part of the `git` collection.





Git has been the dominant source code control program since 2008. When on assignment as a software expert for a US federal court case, I always request entire git repositories instead of just the source code at one specific historical date. Having the entire git repository means that I can learn how a project was built, and who did what.



Version control systems popularity in 2016; © rhodecode.com

# Git Integrity

Git repositories use two types of immutable objects to store data: *blobs*, which are files, and *trees*, which are directories. The 'trees' are actually Merkle trees, which are immutable. Merkle trees are also used in cryptocurrency for similar reasons.

Each node in a tree has a cryptographic hash, also known as a *SHA*, most often referred to as a *hash*. Git evaluates the validity of the hash of each object each time it processes them. Invalid hashes cause git to halt with an error message. This guarantees that if git continues a command to completion without halting with an error message, the objects that it processed are unchanged.

The `git status` command tells the user if any files or directories have been added, deleted or changed.

# Demonstrating Status Changes

This is the message that results when a git repository has no uncommitted changes:

```Shell
```

```
$ git status
On branch master
Your branch is up to date with 'origin/master'.

nothing to commit, working tree clean
```

This is the message that results when a git repository has a modified file:

Shell

```
$ git status
Refresh index: 100% (1756/1756), done.
On branch master
Your branch is up to date with 'origin/master'.

Changes not staged for commit:
  (use "git add ..." to update what will be committed)
  (use "git restore ..." to discard changes in working directory)
        modified:   what_yo_mama_said.txt

no changes added to commit (use "git add" and/or "git commit -a")
```

This is the message that results when a git repository has an extra file:

Shell

```
$ git status
On branch master
Your branch is up to date with 'origin/master'.

Untracked files:
  (use "git add ..." to include in what will be committed)
        extra.html

nothing added to commit but untracked files present (use "git add" to track)
```

This is the message that results when a git repository has a deleted file:

Shell

```
$ git status
On branch master
```

```
Your branch is up to date with 'origin/master'.

Changes not staged for commit:
  (use "git add/rm ..." to update what will be committed)
  (use "git restore ..." to discard changes in working directory)
        deleted:    README.md

no changes added to commit (use "git add" and/or "git commit -a")
```

## Summary

Thus, if the opposing side does not provide source code for a given product or program in a git repository, not only is it impossible to examine the history of the product or program, it is also impossible to know that all of the files have been received, unchanged, or if extra files have been provided. I always press for receiving source code in git repositories instead of in unmanaged directories.

   

  

   

# Page Contents

Git Integrity

Demonstrating Status Changes

Summary

© Copyright 1994-2024 Michael Slinn. All rights reserved.
For requests to use this copyright-protected work in any manner,
email mslinn@mslinn.com.

This website was made using Jekyll and Mike Slinn's Jekyll Plugins.

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| [PLAINTIFF] | § | |
| | § | |
| v. | § | Case No. 2:00-CV-000-JRG-RSP |
| | § | |
| [DEFENDANT][, et al.] | § | |

**SAMPLE DISCOVERY ORDER FOR PATENT CASES
ASSIGNED TO JUDGE RODNEY GILSTRAP AND JUDGE ROY PAYNE**

[*Instructions: The parties are expected to meet and confer prior to submitting a proposed Discovery Order based upon this model order. Only the underlined portions (in paragraphs 5 and 12) may be modified by the parties according to the needs of the case.*]

After a review of the pleaded claims and defenses in this action, in furtherance of the management of the Court's docket under Federal Rule of Civil Procedure 16, and after receiving the input of the parties to this action, it is ORDERED AS FOLLOWS:

1.    **Initial Disclosures.**  In lieu of the disclosures required by Federal Rule of Civil Procedure 26(a)(1), each party shall disclose to every other party the following information:

(a)    the correct names of the parties to the lawsuit;

(b)    the name, address, and telephone number of any potential parties;

(c)    the legal theories and, in general, the factual bases of the disclosing party's claims or defenses (the disclosing party need not marshal all evidence that may be offered at trial);

(d)    the name, address, and telephone number of persons having knowledge of relevant facts, a brief statement of each identified person's connection with the case, and a brief, fair summary of the substance of the information known by any such person;

(e)     any indemnity and insuring agreements under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment entered in this action or to indemnify or reimburse for payments made to satisfy the judgment;

(f)     any settlement agreements relevant to the subject matter of this action; and

(g)     any statement of any party to the litigation.

2.     **Disclosure of Expert Testimony.**[1]  A party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705, and:

(a)     if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony, provide the disclosures required by Federal Rule of Civil Procedure 26(a)(2)(B) and Local Rule CV-26; and

(b)     for all other such witnesses, provide the disclosure required by Federal Rule of Civil Procedure 26(a)(2)(C).

3.     **Additional Disclosures.**  Without awaiting a discovery request,[2] each party will make the following disclosures to every other party:

(a)     provide the disclosures required by the Patent Rules for the Eastern District of Texas with the following modifications to P.R. 3-1 and P.R. 3-3:

---

[1] All expert reports should be written such that the report is organized with discrete paragraph numbers.

[2] The Court anticipates that this disclosure requirement will obviate the need for requests for production.

i. If a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for each Accused Instrumentality is produced by the opposing party. Thereafter, the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements.

ii. If a party claiming patent infringement exercises the provisions of Paragraph 3(a)(i) of this Discovery Order, the party opposing a claim of patent infringement may serve, not later than 30 days after receipt of a Paragraph 3(a)(i) disclosure, supplemental "Invalidity Contentions" that amend only those claim elements identified as software limitations by the party claiming patent infringement.

(b) produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of Texas; and

(c) provide a complete computation of any category of damages claimed by any party to the action, and produce or permit the inspection of documents or other evidentiary material on which such computation is based, including materials bearing on the nature and extent of injuries suffered, except that the disclosure of

the computation of damages may be deferred until the time for Expert Disclosures if a party will rely on a damages expert.

4. **Protective Orders.**  The Court will enter the parties' Agreed Protective Order.

5. **Discovery Limitations.**  The discovery in this cause is limited to the disclosures described in Paragraphs 1-3 together with: [ 40 interrogatories per side, 40 requests for admissions per side, the depositions of the parties, depositions on written questions of custodians of business records for third parties, 60 hours of nonparty depositions per side, and 3 expert witnesses per side.  "Side" means a party or a group of parties with a common interest. ] Any party may later move to modify these limitations for good cause.

6. **Privileged Information.**    There is no duty to disclose privileged documents or information.  However, the parties are directed to meet and confer concerning privileged documents or information after the Status Conference.  By the deadline set in the Docket Control Order, the parties shall exchange privilege logs identifying the documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the privilege or protection.  Any party may move the Court for an order compelling the production of any documents or information identified on any other party's privilege log.  If such a motion is made, the party asserting privilege shall respond to the motion within the time period provided by Local Rule CV-7.  The party asserting privilege shall then file with the Court within 30 days of the filing of the motion to compel any proof in the form of declarations or affidavits to support their assertions of privilege, along with the documents over which privilege is asserted for *in camera* inspection. However, if the

==party asserting privilege seeks an *in camera* review by the Court, such party shall first obtain leave from the Court prior to delivery of documents to the Court.==

7.    **Signature.**  The disclosures required by this Order shall be made in writing and signed by the party or counsel and shall constitute a certification that, to the best of the signer's knowledge, information and belief, such disclosure is complete and correct as of the time it is made.  If feasible, counsel shall meet to exchange disclosures required by this Order; otherwise, such disclosures shall be served as provided by Federal Rule of Civil Procedure 5.  The parties shall promptly file a notice with the Court that the disclosures required under this Order have taken place.

8.    **Duty to Supplement.**  After disclosure is made pursuant to this Order, each party is under a duty to supplement or correct its disclosures **immediately** if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true.

9.    **Discovery Disputes.**

(a)    Except in cases involving claims of privilege, any party entitled to receive disclosures ("Requesting Party") may, after the deadline for making disclosures, serve upon a party required to make disclosures ("Responding Party") a written statement, in letter form or otherwise, of any reason why the Requesting Party believes that the Responding Party's disclosures are insufficient.  The written statement shall list, by category, the items the Requesting Party contends should be produced.  The parties shall promptly meet and confer.  If the parties are unable to resolve their dispute, then the Responding Party shall, within 14 days after service of the written statement upon it, serve upon the Requesting Party a written

statement, in letter form or otherwise, which identifies (1) the requested items that will be disclosed, if any, and (2) the reasons why any requested items will not be disclosed.  The Requesting Party may thereafter file a motion to compel.

(b)    An opposed discovery related motion, or any response thereto, shall not exceed 7 pages. Attachments to a discovery related motion, or a response thereto, shall not exceed 5 pages. No further briefing is allowed absent a request or order from the Court.

(c)    Prior to filing any discovery related motion, the parties must fully comply with the substantive and procedural conference requirements of Local Rule CV-7(h) and (i). Within 72 hours of the Court setting any discovery motion for a hearing, each party's lead attorney (*see* Local Rule CV-11(a)) and local counsel shall meet and confer in person or by telephone, without the involvement or participation of other attorneys, in an effort to resolve the dispute without Court intervention.

(d)    Counsel shall promptly notify the Court of the results of that meeting by filing a joint report of no more than two pages. Unless excused by the Court, each party's lead attorney shall attend any discovery motion hearing set by the Court (though the lead attorney is not required to argue the motion).

(e)    Any change to a party's lead attorney designation must be accomplished by motion and order.

(f)    Counsel are directed to contact the chambers of the undersigned for any "hot-line" disputes before contacting the Discovery Hotline provided by Local Rule CV-26(e).  If the undersigned is not available, the parties shall proceed in accordance with Local Rule CV-26(e).

10. **No Excuses.**  A party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case, or because it challenges the sufficiency of another party's disclosures, or because another party has not made its disclosures.  Absent court order to the contrary, a party is not excused from disclosure because there are pending motions to dismiss, to remand or to change venue.

11. **Filings.**  Only upon request from chambers shall counsel submit to the court courtesy copies of any filings.

12. **Proposed Stipulations by the Parties Regarding Discovery.**  [ The parties may include proposed stipulations regarding discovery here.  Proposed Stipulations may not be used to modify the ordinary procedures of the Court (e.g. the requirement that an in person conference be held prior to filing a discovery-related motion.)  If there are no proposed stipulations, indicate "None." ]

13. **Standing Orders.**  The parties and counsel are charged with notice of and are required to fully comply with each of the Standing Orders of this Court. Such are posted on the Court's website at http://www.txed.uscourts.gov/?q=court-annexed-mediation-plan. The substance of some such orders may be included expressly within this Discovery Order, while others (including the Court's Standing Order Regarding Protection of Proprietary and/or Confidential Information to Be Presented to the Court During Motion and Trial Practice) are incorporated herein by reference. All such standing orders shall be binding on the parties and counsel, regardless of whether they are expressly included herein or made a part hereof by reference.