Whitney Z. Bernstein, SBN 304917
wbernstein@bklwlaw.com
Rebecca S. Roberts, SBN 225757
rroberts@bklwlaw.com
Ryan V. Fraser, SBN 272196
rfraser@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

*Attorneys for Dr. Karim Arabi*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>KARIM ARABI,<br><br>    Defendant. | Case No. 3:22-cr-01152-BAS-1<br>Honorable Cynthia Bashant<br><br>**DR. KARIM ARABI'S NOTICE OF MOTION AND MOTION TO COMPEL QUALCOMM TECHNOLOGIES, INC. TO (1) COMPLY WITH THE COURT'S DECEMBER 19, 2024 ORDER AND (2) PRODUCE SUMMARIES OF WITNESS INTERVIEWS**<br><br>Trial Date: March 10, 2025 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Dr. Karim Arabi, by and through his attorneys of record, will, and hereby does, move for a court order requiring Qualcomm Technologies, Inc. ("Qualcomm") to (1) comply with the Court's December 19, 2024 requiring it to produce a privilege log identifying documents and other evidence withheld from its production in response to the government's May 20, 2020 grand jury subpoena and (2) as previously ordered, produce written summaries for *in camera* review of the following interviews: (i) Sanjiv Taneja, (ii) Kevork Kechichian, (iii) Joseph Fang, (iv) Hiten Somwal, (v) Duane Nelles, and (vi) Jim Thompson. Summaries of these interviews, which were conducted by Qualcomm's outside counsel, Hueston Hennigan, have not been previously produced and there is no basis for withholding the factual content of these interviews on privilege grounds. Moreover, Qualcomm has waived any assertion of privilege by selectively sharing information obtained from its internal investigation and interviews with the government.

This motion is based upon this notice of motion, the attached memorandum of points and authorities, the Declaration of Rebecca Roberts and attached exhibits, all pleadings, papers, and records on file in this case, and any further evidence and argument that may be presented at the hearing on this matter.

Respectfully submitted,

Dated: February 2, 2025

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By: */s/ Rebecca S. Roberts*
    Whitney Z. Bernstein
    Rebecca S. Roberts
    Ryan V. Fraser
    *Attorneys for Dr. Karim Arabi*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On December 19, 2024, the Court ordered Qualcomm to produce "a privilege log of any document withheld by Qualcomm in response to the Government's grand jury subpoena." Dkt. 311 at p. 9. On January 10, 2025, the only document Qualcomm produced to the defense was a privilege log from prior civil litigation between Qualcomm and Dr. Arabi with entries through August 2017. Qualcomm continuously investigated and prosecuted Dr. Arabi from November 2016 onwards, referring him to the U.S. Attorney's Office ("USAO") in 2018 and 2020. The grand jury subpoena, which issued on May 20, 2020, required Qualcomm to produce responsive records from "January 1, 2013 to present," e.g., the date of issuance. So, nearly three years of privilege log entries are missing. Moreover, the limited partial privilege logs produced by Qualcomm described below also confirm that several years of entries are missing. Accordingly, Dr. Arabi requests that the Court order Qualcomm to immediately comply with its prior order and produce a fulsome privilege log.

Second, according to the two partial privilege logs that Qualcomm produced to the Court *in camera*, Qualcomm has withheld interview summaries of the following witnesses: (i) Sanjiv Taneja, (ii) Kevork Kechichian, (iii) Joseph Fang, (iv) Hiten Somwal, (v) Duane Nelles, and (vi) Jim Thompson, which the Court previously ordered Qualcomm to produce *in camera* pursuant to its October 13, 2023 and December 19, 2024 orders. Dkts. 183, 311. The factual content of these interviews is not privileged and has not been previously produced by Qualcomm or the government, which has confirmed that it does not have the summaries. Roberts Decl. at ¶ 3. Qualcomm has also waived privilege as to the content of these interviews by selectively sharing information gleaned from its investigation with the government. The Court should enforce its prior orders and order Qualcomm to immediately produce the witness summaries.

## II. RELEVANT BACKGROUND

The background of this case is described in detail in various motions on file and incorporated herein. In 2023, the defense issued its first Rule 17 subpoena which Qualcomm moved to quash. On October 13, 2023, the Court granted in part and denied in part Qualcomm's motion to quash and ordered it to produce interviews of Sanjiv Taneja, Joseph Fang, and Kevork Kechichain *in camera*. Dkt. 183 at p. 8. However, instead of producing these summaries to the Court, Qualcomm produced an 82-page privilege log which indicates that at least the following witnesses were interviewed by Qualcomm and its counsel Hueston Hennigan on the identified dates below:

| Witness | Date(s) of Interview(s) |
| --- | --- |
| Kevork Kechichian | 1/16/18 |
| Katie Wilson | 2/7/18 |
| Sanjiv Taneja | 2/8/18; 2/16/18; 5/8/18; |
| Robert Kwan | 2/16/18 |
| Joseph Fang | 2/21/18; 2/22/18; 6/8/18; 8/21/18; 10/29/18 |
| Brad Quinton | 4/24/18 |

Qualcomm has never produced summaries of, or the factual content of, these interviews to the government or the defense but instead maintains the information is privileged. According to Qualcomm's privilege log, these witnesses, all of whom have been designated as trial witnesses, were interviewed years ago close in time to the alleged events that give rise to the counts against Dr. Arabi. Roberts Decl. at ¶ 2, Ex. A.

In the summer of 2024, Dr. Arabi sought a second Rule 17 subpoena which issued after a series of motions addressed by the Court. Dkts. 260–275. Qualcomm again moved to quash the second Rule 17 subpoena, which the Court granted in part and denied in part on December 19, 2024. Dkt. 311. The Court found that Qualcomm's interview summaries of witnesses, including Duane Nelles, Hiten Somwal, and Jim Thompson could contain impeachment material and ordered *in camera* production of these summaries. Dkt. 311 at p. 5. In its order, the Court wrote: "Arabi already appeared to have obtained most of these interviews—or at least summaries of the interviews—in discovery from the government."

Dkt. 311, at p. 3. But this statement is inaccurate. While Qualcomm produced some witness interview summaries its human resource investigators conducted during the preliminary stages of its internal investigation, to the extent of the defense's knowledge, it has never produced any summaries of witness interviews conducted from late 2017 onwards by its outside counsel Hueston Hennigan. Roberts Decl. at ¶ 3.

Moreover, the Court ordered Qualcomm to produce to the defense: (1) a privilege log of any documents withheld by Qualcomm pursuant to the recent Rules 17(c) subpoena and (2) "a privilege log of any documents withheld by Qualcomm in response to the Government's grand jury subpoena." Dkt. 311 at p. 9. Qualcomm was required to produce this log to the defense by January 10, 2025.

On January 10, 2025, Qualcomm only produced a privilege log from the prior civil litigation between Qualcomm and Dr. Arabi with entries only through August 2017. Roberts Decl. at ¶ 4, Ex. B. The grand jury subpoena, which Qualcomm effectively ghost wrote and the government adopted verbatim, issued on May 20, 2020. Roberts Decl. at ¶ 4, Ex. C. Qualcomm investigated and prosecuted Dr. Arabi continuously from November 2016 onwards, and its outside counsel, Hueston Hennigan, referred the matter to the USAO at least twice during that same time frame, making detailed presentations citing to its internal investigation. The grand jury subpoena required Qualcomm to produce responsive documents from January 1, 2013 to present, e.g., the date of the subpoena. *Id.* So, nearly three years of log entries are missing. The limited partial privilege logs produced also confirm the existence of later entries.

Qualcomm, via Hueston Hennigan, claims it does not have to produce any further logs because none exist. Roberts Decl. at ¶ 5. On January 10, 2025, defense counsel followed up with Qualcomm's attorney Padraic Foran who claimed that no other logs are available, other than the civil privilege log and the two partial privilege logs prepared in response to the Court's prior orders because "Qualcomm did not collect and withhold on privilege grounds documents in response to the Government's grand jury subpoena." *Id.*

This is a nonsensical position since Qualcomm and its attorneys obviously did not produce privileged documents responsive to the grand jury subpoena.

Qualcomm's criminal referral states that its outside counsel Hueston Hennigan interviewed 34 employees in total. Dkt. 306, at under seal Ex. AA. Many of the individuals whom Qualcomm interviewed have been designated as trial witnesses.

On January 10, 2025, Qualcomm produced a partial privilege log to the Court *in camera* which identifies documents withheld from the ordered December 19, 2024. The Court made this log available to the defense on January 27, 2025. This log, like the 2023 partial log, indicates that Qualcomm has withheld summaries of the following interviews:

| Witness | Date(s) of Interview(s) |
|---|---|
| Hiten Somwal | 7/10/17, 9/6/17, 1/16/18, 9/12/18, 5/7/20, 9/21/22, 9/22/22 |
| Duane Nelles | 2/20/18, 9/20/22, 9/21/22, 10/24/22 |
| Jim Thompson | 9/29/17, 9/21/22, 9/22/22, 10/25/22 |

Roberts Decl. at ¶ 6, Ex. D. These three are also government trial witnesses. *Id.* at ¶ 7.

### III. ARGUMENT

**A. The Court should compel Qualcomm to immediately comply with the Court's December 19, 2024 order requiring production of a privilege log identifying all documents withheld in response to the government's May 20, 2020 grand jury subpoena.**

Since Qualcomm has not complied with the Court's December 19, 2024 order and trial is rapidly approaching, the defense requests that it be ordered to do so immediately or the defense will be forced to move for a continuance and disrupt the Court's calendar and the hard work both the defense and government have done to ready this case for trial according to the schedule set by the Court. Qualcomm has been able to generate privilege logs within weeks of prior court orders, and there is no reason why it did not already comply with the Court's order nor why it cannot immediately do so. The defense needs immediate access to the already ordered complete privilege log to assess whether Qualcomm has

properly withheld interview summaries.[1]  Based on the partial logs produced to date, it is clear that Qualcomm interviewed key witnesses, who will be called to testify at trial, close in time to the events at issue in this case.  These summaries may contain impeachment material, particularly given the amount of time that has passed.  *See* Dkt. 311 at 5 ("If any of these witnesses testify at trial, the Court will assess whether the interviews should be produced for impeachment material.").

> **B.   The interview summaries are not entitled to attorney-client privilege or work product protection, but in any event, Qualcomm has waived such protections by implication through its criminal referrals to the USAO citing its employee interviews.**
>
> **1.   Elements of attorney-client privilege**

As the party asserting the attorney-client privilege, Qualcomm "has the burden of establishing the relationship and privileged nature of the communication."  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011); *see also* Fed. R. Evid. 501.  Attorney-client privilege exists: "(1) [w]hen legal advice of any kind is sought, (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived."  *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *see also Upjohn Co. v. United States*, 449 U.S. 383 (1981); *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).

---

[1] Notably, federal courts routinely order the production of internal investigation witness interview summaries in response to Rule 17(c) subpoenas.  For example, in *United States v. Hussain*, Case No. 16-cr-00462 CRB (N.D. Cal. 2017), the defendant, via a Rule 17(c) subpoena, sought production of summaries of witness interviews conducted by third party Hewlett Packard, Inc. ("HP") and its outside counsel Morgan, Lewis & Bockius LLP ("Morgan Lewis") during an internal investigation concerning the alleged conduct of the defendant.  HP/Morgan Lewis reported their findings to the SEC/USAO, which ultimately indicted the defendant.  HP and its attorneys moved to quash the subpoena on the grounds that the interview summaries were not admissible and were also protected by the attorney-client/work product privileges.  The district court rejected those arguments and ordered HP and its attorneys to produce written interview summaries with redactions of any attorney impressions or thoughts contained in the documents.

"'Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.'" *Ruehle*, 583 F.3d at 607.

"[B]oilerplate objections or blanket refusals . . . are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). A "sophisticated corporate litigant and a repeat player in . . . lawsuits," such as Qualcomm, is held to a higher standard of specificity than other parties are in supporting claims of attorney-client privilege. *Id.* "'The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable.'" *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015). Moreover, a privilege log must be specific enough to show that each purportedly privileged communication satisfies the elements of the privilege claimed. *See, e.g., Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 614 (N.D. Cal. 2020). "In the Ninth Circuit, a privilege log must identify '(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.'" *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015).

### 2. Qualcomm's declaration and the limited November 2023 and December 2024 privilege logs fail to satisfy these requirements.

Hueston Hennigan, on behalf of Qualcomm, vaguely alleges that notes and memorandum prepared by the law firm in connection with the interviews it conducted at the behest of Qualcomm reflecting attorney thoughts and impressions are privileged. These are impermissible blanket assertions. *See Christensen*, 828 F.3d at 803 (rejecting blanket assertions of privilege and requiring document-by-document analysis). They do not address each document individually or show which individuals were parties to the communications. *See id.*; *Apple Inc.* 306 F.R.D. at 237 (requiring that a privilege log do so). Qualcomm's assertions are simply too vague, especially for a sophisticated company and repeat litigant. *See Burlington N. & Santa Fe Ry.*, 408 F.3d at 1149.

The partial logs do not cure the problem either. Notably, Qualcomm has not submitted a declaration attesting that the partial log representations are accurate and include all the facts material to the privilege claims. Even if Qualcomm had done so, it would not cure the logs' failure to identify all recipients of each communication, in violation of the Ninth Circuit's requirements. *Apple Inc.*, 306 F.R.D. at 237; *see also Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 517 (D. Ariz. 2023). Indeed, many of the entries in the November 2023 privilege log—entries 1 through 30 and 218, for example—identify by name only the author of the communication; these entries do not even purport to identify all recipients. Finally, by not producing a privilege log at the time the grand jury subpoena issued but producing selectively chosen documents, Qualcomm has not made a prima facie showing to withhold any documents on the basis of privilege or work product.

    **3.**    **By referring this matter to the USAO for criminal prosecution and citing its internal investigation and employee interviews in support thereof, Qualcomm waived any applicable privilege.**

Even if Qualcomm had otherwise adequately supported a prima facie showing of attorney-client privilege or work product privilege as to the documents withheld, it waived by implication any such protection by referring the case for prosecution with reference and citation to the possibly previously privileged facts. Critically, "'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020) (quoting *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18 (9th Cir. 1981)). This doctrine is known as "subject-matter waiver," "waiver by implication," or "implied waiver." *See id.*; Fed. R. Evid. 502(a).

    Waivers by implication rest on the "fairness principle," which

> is often expressed in terms of preventing a party from using the privilege as both a shield and a sword. ... In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.

*Sanmina Corp.*, 968 F.3d at 1117 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)). It is unfair for Qualcomm to refer the Abreezio acquisition for criminal prosecution—explicitly citing its "employee interviews" and "detailed chronology" in support—while shielding under a cloak of "privilege" the facts of those interviews from a criminal defendant entitled to constitutional protections of due process and confrontation.

The Ninth Circuit's discussion in *Sanmina Corp.* controls and shows that Qualcomm has waived by implication any privilege with respect to the employee interviews comprising part of its internal investigation. In *Sanmina Corp.*, a corporate taxpayer, Sanmina, attempted to support its decision to take a worthless-stock tax deduction by supplying the IRS with a valuation report by DLA Piper that cited two memorandums by Sanmina's in-house counsel (the "Attorney Memos") in a footnote. 968 F.3d at 1112. The IRS issued a summons for the Attorney Memos, to which Sanmina objected, asserting both attorney-client and work product privilege. *Id.*

The Ninth Circuit concluded that "Sanmina's disclosure of the memoranda to DLA Piper waived the attorney-client privilege" as well as the work-product protection as to the factual content. *Id.* Having disclosed to DLA Piper the valuation report *citing* the purported privileged memoranda without describing their contents, Sanmina argued "there [was] no 'disclosure' sufficient to waive the memoranda's work-product protection." *Id.* at 1123. But the Ninth Circuit focused on whether Sanmina had acted inconsistently with maintaining the secrecy of the Attorney Memos as against the IRS. *Id.* at 1124.

> Presumably, Sanmina could have chosen to substantiate the deduction with other documents that did not make reference to the Attorney Memos but did not. Such conduct seems inconsistent with Sanmina's purported goal of keeping the memoranda secret from the IRS. Assuming that Sanmina reasonably expected confidentiality over the Attorney Memos when sharing them with DLA Piper, *this expectation became far less reasonable once Sanmina decided to disclose to the IRS a valuation report that explicitly cited the memoranda as a basis for its conclusions. In doing so, Sanmina increased the possibility that the IRS, its adversary in this matter, might obtain its protected work product,*

> *and thereby engaged in conduct inconsistent with the purposes of the privilege.*

*Id.* (emphasis added).  As a result, Sanmina implicitly waived protection over "any factual or non-opinion work product in the Attorney Memos that serve[d] as foundational material for the DLA Piper Report."  *Id.* at 1125.

      Here, Qualcomm stands in a similar position as Sanmina did.  Just as Sanmina relied upon a valuation report citing the Attorney Memos in its pitch to the IRS, here, Qualcomm explicitly and repeatedly cited its employee interviews and "detailed chronology" to the USAO in its criminal-referral presentation:



Ex. S to Bernstein Decl., Dkt. 153 (under seal).  As in *Sanmina Corp.*, then, where Sanmina waived by implication attorney memorandums by citing them to the IRS even without describing their contents, here, even without disclosing the interview memos themselves to the government, by relying upon them for the criminal-referral presentation, Qualcomm acted "inconsistent[ly] with [its] purported goal of keeping the memoranda secret from the [government]."  968 F.3d at 1124.  *See also United States v. Reyes*, 239 F.R.D. 591, 602 (N.D. Cal. 2006) (third party surrendered whatever privilege when they disclosed the substance of their investigative interviews, reports and conclusions with the government).  Thus, the same result applies here: Qualcomm has waived by implication any factual work product protection and any attorney-client privilege regarding the "employee interviews" in its internal investigation.

Qualcomm's rhetorical flourish claiming that segregating mental impressions from facts is "nonsense" or overly burdensome collapses under its own weight.  It is well established:

> Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts.

*Hickman v. Taylor*, 329 U.S. 495, 511 (1947).  *Hickman*'s distinction in the discoverability of fact work product, as distinguished from opinion work product, is mirrored in the Ninth Circuit's ruling in *Sanmina Corp.*, 968 F.3d at 1124, distinguishing between fact and opinion work product in explaining the scope of an implied waiver. Segregating facts from attorney mental impressions remains necessary where, as here, the adversary has a substantial need for the facts.  Qualcomm's complaints of the burden of doing that work is ironic where Qualcomm violated at least the civil protective order if not also its settlement agreement in making its criminal referrals.  Having set this case in motion with unclean hands, Qualcomm lacks a legitimate basis to object to turning over unprotected facts.

## IV. CONCLUSION

For the reasons explained, Dr. Arabi respectfully requests that the Court enforce its prior orders and compel Qualcomm: (1) to immediately produce a complete privilege log identifying all documents withheld from production in response to the May 20, 2020 grand jury subpoena, and (2) to produce summaries of all interviews with: (i) Sanjiv Taneja, (ii) Kevork Kechichian, (iii) Joseph Fang, (iv) Hiten Somwal, (v) Duane Nelles, and (vi) Jim Thompson.

Respectfully submitted,

Dated: February 2, 2025

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By: */s/ Rebecca S. Roberts*
    Whitney Z. Bernstein
    Rebecca S. Roberts
    Ryan V. Fraser
    *Attorneys for Dr. Karim Arabi*

# **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Nicola T. Hanna
nhanna@gibsondunn.com
Winston Y. Chan
wchan@gibsondunn.com
Katherine H. Sharp
ksharp@gibsondunn.com
James N. Rotstein
jrotstein@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
*Attorneys for Sanjiv Taneja*

Andrew James Galvin
andrew.galvin@btlaw.com
BARNES & THORNBURG LLP
*Attorneys for Ali Akbar Shokouhi*

David K. Willingham
dwillingham@kslaw.com
Jamie A. Lang
jlang@kslaw.com
Blythe Golay Kochsiek
bkochsiek@kslaw.com
KING & SPALDING LLP
*Attorneys for Ali Akbar Shokouhi*

Nicholas W. Pilchak
nicholas.pilchak@usdoj.gov
Eric R. Olah
eric.olah@usdoj.gov
janaki Chopra
Janaki.chopra@usdoj.gov
ASSISTANT UNITED STATES ATTORNEYS

Dated: February 2, 2025            */s/ Leah Thompson*
                                   Leah Thompson