Whitney Z. Bernstein, State Bar No. 304917
wbernstein@bklwlaw.com
Rebecca S. Roberts, State Bar No. 225757
rroberts@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

*Attorneys for Defendant*
*Dr. Karim Arabi*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KARIM ARABI,<br><br>Defendant. | Case No. 3:22-cr-01152-BAS-1<br>Honorable Cynthia Bashant<br><br>**DR. KARIM ARABI'S OPPOSITION TO NON-PARTIES QUALCOMM INC., QUALCOMM TECHNOLOGIES, INC., AND NICHOLAS COLE'S MOTION TO QUASH NICHOLAS COLE'S TRIAL SUBPOENA**<br><br>Trial Date: March 10, 2025 |

## I. Introduction

Dr. Karim Arabi respectfully submits this opposition to non-parties Qualcomm, Inc. and Qualcomm Technologies, Inc. (collectively "Qualcomm") and non-party Nicholas Cole's (collectively "Non-Parties") motion to quash Mr. Cole's trial subpoena. Dkt. 366 (the "Motion").

Dr. Arabi received an exculpatory document in discovery and marked it as a trial exhibit in January 2025 pursuant to the scheduling order in this case ("Exh. 2545"). Just before trial, Qualcomm requested to claw back the document. Counsel for Dr. Arabi sequestered the document and requested more information regarding the Non-Parties' clawback request and extent of disclosure. But instead of providing answers, the Non-Parties filed this Motion, which should be denied for several reasons.

First, the Non-Parties ignore that the government produced Exh. 2545 to Dr. Arabi pursuant to its constitutional obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), and its statutory obligations under Rule 16 of the Federal Rules of Criminal Procedure. The Non-Parties have not offered any authority to support their claim that the attorney-client privilege should overcome these obligations. Second, the Non-Parties waived any privilege by producing Exh. 2545 in multiple court cases to multiple defendants, thereby comprehensively and extensively disclosing the document and its contents to an unknown number of parties. Third, the Motion offers no valid grounds to quash Mr. Cole's properly issued and served trial subpoena. Finally, the Motion is littered with inappropriate and inaccurate personal attacks on counsel for Dr. Arabi. As counsel for Dr. Arabi stated – in an email conveniently not attached to the Motion – they take their ethical obligations seriously. Counsel for Dr. Arabi made no misrepresentations in connection with the Non-Parties' clawback request and have adhered to their ethical obligations at all times.

The Motion – a specious clawback request masquerading as a motion to quash – should be denied because the Non-Parties have not met their burden for either.

## II. Background

On November 22, 2022, as part of its third round of discovery, the government produced Exh. 2545 to Dr. Arabi. Exh. 2545 is a communication between Mr. Cole and Dr. Bradley Quinton "regarding a provisional patent application for a[n ] Abreezio invention." Motion at 1. Counsel for Dr. Arabi recognized the exculpatory nature of the communication and marked it as a potential trial exhibit. Bernstein Decl. ¶ 2.

While preparing for trial, counsel for Dr. Arabi determined that, due to the nature of Mr. Cole's employment at Qualcomm and the anticipated trial defenses, his testimony could provide support to Dr. Arabi's defense. Bernstein Decl. ¶ 3. On January 22, 2025, counsel for Dr. Arabi served Mr. Cole with a subpoena to testify to testify at a hearing or trial (the "Subpoena"). On January 28, 2025, counsel for the Non-Parties contacted counsel for Dr. Arabi regarding their interest in moving to quash the Subpoena with a request to meet and confer. Counsel for Dr. Arabi and Mr. Cole met and conferred on February 5, 2025 regarding the Subpoena. During this call, consistent with ethical and constitutional obligations and because the Non-Parties have been prosecuting Dr. Arabi for close to ten years, counsel for Dr. Arabi did not disclose the topics of their expected examination of Mr. Cole. Nor did counsel for Dr. Arabi disclose the content or nature of any exhibits they planned to question Mr. Cole about.

On January 28, 2025, counsel for Dr. Arabi provided the government with their list of trial exhibits, including Exh. 2545. On February 27, 2025, the Non-Parties sent the government a request to claw back Exh. 2545. After learning of this clawback request, counsel for Dr. Arabi sequestered Exh. 2545. Bernstein Decl. ¶ 4.

On March 5, 2025, counsel for Dr. Arabi and the Non-Parties met and conferred, and counsel for Dr. Arabi again did not disclose the topics of their expected examination of Mr. Cole. On March 7, 2025, counsel for the Non-Parties informed counsel for Dr. Arabi of their intent to move to quash the Subpoena because they believed that Exh. 2545 was inadvertently produced and because Exh. 2545 was the subject of a clawback request. In response, counsel for Dr. Arabi informed counsel for the Non-Parties that they did not agree

that Exh. 2545 was inadvertently produced or privileged.  Counsel for Dr. Arabi also asked counsel for the Non-Parties (1) to provide any authority that a non-party can demand to claw back from a criminal defendant's discovery materials produced by the government pursuant to its statutory and constitutional obligations; and (2) whether the government had destroyed Exh. 2545 and complied with the clawback request.  Dkt. 366-8 (Declaration of Padraic Foran, Ex. G (March 7 email from W. Bernstein)).  In an email not attached to the Motion by counsel for the Non-Parties, counsel for the Non-Parties responded by providing authority from California state civil court and stated the government had not yet complied with the clawback request.  Bernstein Decl. ¶ 5; Ex. 1 (March 7 email from P. Foran).  In the same communication, counsel for the Non-Parties also suggested that counsel for Dr. Arabi was in breach of their ethical duties.  *Id.*  In another email not attached to the Motion, counsel for Dr. Arabi replied and stated that they "take [their] ethical obligations seriously and want to ensure this is handled appropriately."  Bernstein Decl. ¶ 6; Ex. 2 (March 8 email from W. Bernstein).

In the same email, Dr. Arabi's counsel asked Non-Parties' counsel to advise of:

> (1) all parties who have ever been shown the documents you would like to claw back (by name and date); (2) all parties who have ever been provided the documents you would like to claw back (by name and date); (3) all parties who have ever been told of the substance of the documents you would like to claw back (by name and date); (4) all parties to whom claw back requests have been made regarding these documents; (5) the date of all claw back requests; and (6) the status of those requests.

*Id.*  Counsel for the Non-Parties did not respond or provide this information and conveniently failed to inform the Court of the same in their Motion.  *See* Bernstein Decl. ¶ 6.  Instead, counsel for the Non-Parties filed their Motion.  After the Motion was filed, counsel Dr. Arabi followed up with counsel for the Non-Parties regarding their failure to provide the requested information.  Bernstein Decl. ¶ 7; Ex. 3 (March 10 email from W. Bernstein).  Counsel for the Non-Parties finally responded and – after still not providing the requested information – directed counsel for Dr. Arabi to respond to the Motion.  Bernstein Decl. ¶ 8; Ex. 4 (March 11 email from P. Foran).

## III. Argument

### A. Exh. 2545 was produced by the government pursuant to its constitutional and statutory obligations.

The Non-Parties argue that their production and subsequent re-production of Exh. 2545 – which they contend is inadvertent – prevents Dr. Arabi from using the exhibit to support his defense. But the Non-Parties ignore that Exh. 2545 is exculpatory material that was produced by the government pursuant to its constitutional and statutory obligations under *Brady*, *Giglio*, and Rule 16 of the Federal Rules of Criminal Procedure.

Under *Brady*, *Giglio*, and their progeny, as a matter of constitutional due process, the government is required to provide all evidence that "is 'evidence favorable to an accused'" or may be "material either to guilt or punishment," including "impeachment evidence." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *Brady*, 373 U.S., at 87); *id.* at 709, f.n. 1. The government's suppression of evidence by failing to comply with its *Brady* obligations violates the constitution "whether willful or inadvertent" and "irrespective of the good faith or bad faith of the prosecution." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009) (quoting, respectively, *Edwards v. Ayers*, 542 F.3d 759, 768 (9th Cir. 2008), and *Brady*, 373 U.S. at 87). *Brady* and *Giglio* prevent the government from leaving the defense "empty handed at trial precisely because the government did not disclose . . . relevant information." *United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013).

Further, Rule 16 "'grants criminal defendants a broad right to discovery,' requiring disclosure of all documents 'material to preparing the defense.'" *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) (quoting Fed. R. Crim. P. 16(a)(1)(E)(i); internal citation omitted). The disclosure required by Rule 16 is broader in scope than disclosure under *Brady*, as "information that is not exculpatory or impeaching may still be relevant to developing a possible defense." *Id.* (citing *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013)).

The government produced Exh. 2545 to Dr. Arabi on November 21, 2022 in its third round of discovery. As the Non-Parties describe, Exh. 2545 is a communication between

1  Mr. Cole and Mr. Quinton "regarding a provisional patent application for a purported
2  Abreezio invention." Motion at 4. And when counsel for Dr. Arabi reviewed Exh. 2545,
3  they immediately recognized the exculpatory value of the communication and marked it as
4  a potential trial exhibit. Bernstein Decl. ¶ 2. By providing Exh. 2545 to Dr. Arabi,
5  Dr. Arabi understands that the government was acting pursuant to its constitutional
6  obligations under *Brady* and *Giglio*, as well as its statutory obligations under Rule 16.

      Further, even if, arguendo, the Non-Parties have not waived any privilege that previously cloaked Exh. 2545, Dr. Arabi's rights under *Brady* would overcome this privilege claim. *See United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1142–43 (D. Mont. 2006) (concluding that documents may be "of such probative and exculpatory value as to compel admission of the evidence over Defendant Grace's objection as the attorney-client privilege holder"); *United States v. Moore*, No. 5:21-CR-23, 2024 WL 4993388, at *5 (W.D. Va. Dec. 5, 2024) ("Accordingly, the court will follow the example of the courts in *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006), and *United States v. Mix*, No. 12-171, 2012 WL 2420016 (E.D. La. June 26, 2012), and weigh the value of the exculpatory evidence sought to be introduced by the defendant against the weight of the policy behind the attorney-client privilege which generally requires exclusion."). Here, Exh. 2545 is a highly exculpatory document and must be available to the defense for use in trial even if any arguable privilege has not been waived.

      The Non-Parties have not offered any authority that privilege overcomes the government's *Brady* and Rule 16 obligations. Instead, the Non-Parties cite to civil cases regarding inadvertent production and waiver of the attorney-client privilege. *See* Motion at 8–10. But this is not a civil case, and Exh. 2545 was not produced to Dr. Arabi by the Non-Parties. Exh. 2545 is exculpatory material that the government provided pursuant to its constitutional and statutory obligations, which Dr. Arabi must be permitted to use at trial.

**B. Qualcomm waived any privilege by producing, and subsequently reproducing, Exh. 2545.**

Federal Rule of Evidence 502(b) governs whether Qualcomm's production, and subsequent re-production, of Exh. 2545 operates as a waiver of attorney-client privilege. Under Rule 502(b), the disclosure of a document will not operate as a waiver if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b). In the Ninth Circuit, "the attorney-client privilege may be waived by implication, even when the disclosure of the privileged material was 'inadvertent' or involuntary." *United States v. de la Jara*, 973 F.2d 746, 749–50 (9th Cir. 1992) (quoting *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir.1981). Notably, "[t]he party asserting the privilege has the burden of proving its applicability, including that the party has not waived it. *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027 (D. Nev. 2006) (citing *Weil*, 647 F.2d at 25).

The Non-Parties have not met their burden of establishing that they took reasonable steps to prevent disclosure. To determine this, courts in the Ninth Circuit look to certain factors, including the extent of disclosure, the reasonableness of precautions taken, and the overriding issue of fairness. *See Am. Cap. Homes, Inc. v. Greenwich Ins. Co.*, WL 11561400, at *2 (W.D. Wash. Aug. 3, 2010) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D. Cal. 1985)).

The "extent of disclosure" factor weighs heavily in favor of a finding that counsel for the Non-Parties did not take reasonable steps to prevent an inadvertent disclosure. Exh. 2545 was produced to Dr. Arabi and other defendants in the 2017 civil litigation, where each party had the opportunity to review it. Then, Exh. 2545 was produced to the government in this case, where the government had the opportunity to review it. Later, the government produced Exh. 2545 to Dr. Arabi and his codefendants, which again provided Dr. Arabi and others the opportunity to review it. At least four defendants between the civil

and criminal cases, their counsel, and the government have been able to extensively review Exh. 2545. As such, the "extent of disclosure" was comprehensive and complete. Although courts consider several factors to evaluate whether an inadvertent production effects a waiver, the "extent of the disclosure factor" can, by itself, be "dispositive." *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043, at *6 (W.D. Pa. March 17, 2015).

Notably, the Non-Parties have not provided any information regarding the extent of the disclosure of Exh. 2545. Indeed, counsel for Dr. Arabi specifically asked counsel for the Non-Parties to advise of:

> (1) all parties who have ever been shown the documents you would like to claw back (by name and date); (2) all parties who have ever been provided the documents you would like to claw back (by name and date); (3) all parties who have ever been told of the substance of the documents you would like to claw back (by name and date); (4) all parties to whom claw back requests have been made regarding these documents; (5) the date of all claw back requests; and (6) the status of those requests.

Berstein Decl. ¶ 6; Ex. 2 (March 7 email from W. Bernstein). Not only did the Non-Parties fail to provide any of this information prior the Motion, but they also failed to do so in the Motion. In particular, the Non-Parties have not identified all who have been shown or provided Exh. 2545 the substance of the document, nor have they provided the identities of all parties to whom clackback requests have been made. And the email from counsel for Dr. Arabi requesting this information was conveniently not attached as an exhibit to the Motion. The Non-Parties cannot demonstrate that the disclosure of Exh. 2545 was anything less than extensive and comprehensive, and for these reasons they have waived privilege.

Regarding the precautions taken to prevent inadvertent disclosure, "[i]t is difficult for a party to show that it took reasonable precautions to prevent production of privileged documents where those precautions obviously failed." *Draus v. Healthtrust, Inc.-The Hosp. Co.*, 172 F.R.D. 384, 388 (S.D. Ind. 1997). Counsel for the Non-Parties is a highly sophisticated law firm with many years of trial experience. During the civil litigation where Qualcomm first produced Exh. 2545, counsel for the Non-Parties provided a comprehensive privilege log. But in connection with that litigation, and the creation of the privilege log,

counsel for the Non-Parties did not identify that a communication involving Mr. Cole, "an attorney who served in various in-house counsel roles at Qualcomm for nearly ten years," was privileged. *See* Motion at 2. The Non-Parties have been involved in litigation related to this case since at least 2017, during which time Mr. Cole was an employee at Qualcomm. Any reasonable precautions to prevent inadvertent disclosure should have included a search for the name and email of Mr. Cole.

Further, the Court should not permit the Non-Parties to claw back and attempt to bury information that contradicts the factual bases for the government's prosecution. Allowing the Non-Parties to reclaim Exh. 2545 would be unfair to Dr. Arabi, particularly because the government produced this exculpatory material in accordance with its constitutional and statutory obligations. Courts can determine that privileged has been waived on fairness grounds even when the production of a document was inadvertent. *See Bud Antle, Inc. v. Grow-Tech Inc.*, 131 F.R.D. 179, 184 (N.D. Cal. 1990) ("Accordingly, the court finds that, regardless of whether plaintiffs' production of the Letter was inadvertent, the elements discussed above in the name of fairness demand that plaintiffs' motion be denied.").

By comprehensively disclosing Exh. 2545 and its exculpatory content through the production of the document in the civil litigation and re-production to the government in this case, the Non-Parties have waived any privilege.

**C.     The Non-Parties have not proffered grounds to quash the Subpoena.**

Through the Motion, the Non-Parties use a motion to quash as a vehicle to attempt to claw back an inadvertently produced document. The Non-Parties claim that the Subpoena is unreasonable and oppressive,[1] based on the inaccurate, baseless assumption

---

[1] The Non-Parties rely on Federal Rule of Criminal Procedure 17(c)(2) in support of the Motion. While Rule 17(c)(2) "clearly authorizes a court to quash a subpoena requiring the production of documents . . . it is less clear whether this rule applies to the quashing of a subpoena that seeks mere testimony from a witness." *United States v. Manghis*, 2010 WL 349583, at *1 (D. Mass. Jan. 22, 2010); *see also* 2 Charles Alan Wright & Peter J. Henning, *Federal Practice and Procedure* § 274, at 255–57 (2009) ("Rule 17(c)(2) provides for a motion to quash a subpoena duces tecum. There is no similar provision with regard to subpoenas to testify. Although courts have granted motions to quash, the better practice in

that counsel for Dr. Arabi plans to question Mr. Cole about *only* Exh. 2545. *See* Motion at 11–15. Indeed, the Non-Parties appear to believe that they have complete insight into trial strategy of counsel for Dr. Arabi. They, of course, do not. In fact, counsel for Dr. Arabi plans to question Mr. Cole about topics separate and apart from Exh. 2545 and can proffer to the Court under seal, ex parte, and in camera as to the topics of the examination. The Non-Parties have no basis to quash the Subpoena.

### D. The Motion contains an incomplete misleading personal attack narrative.

Finally, the Non-Parties make unsubstantiated personal attacks on Dr. Arabi's counsel. The Local Rules of the Court require lawyers to treat opposing counsel with "courtesy, fairness, and respect." Civ. Loc. R. 2.1(a)(3)(b). And the Ninth Circuit cautions attorneys against "engag[ing] in personal attacks directed at opposing counsel themselves." *United States v. Travers*, 114 F. App'x 283, 287 (9th Cir. 2004).

The Non-Parties claim that counsel for Dr. Arabi ignore "their professional obligations to cease using [Exh. 2545]." Motion at 15. But the Motion, which was filed on March 10, 2025, failed to acknowledge or attach an email sent on March 7, 2025, that reads, "[w]e take our ethical obligations seriously and want to ensure this is handled appropriately." Bernstein Decl. ¶ 6; Ex. 2 (March 8 email from W. Bernstein). Counsel for Dr. Arabi have acted in accordance with their professional obligations at all times.[2]

---

ordinary cases is to require the witness to appear and claim any privilege or immunity he may have.")

[2] After learning of the Non-Parties' clawback request to the government, counsel for Dr. Arabi sequestered Exh. 2545. *See Valentine v. Crocs, Inc.*, 2023 WL 7461852 (N.D. Cal. Nov. 10, 2023) (requiring parties in receipt of a clawback request to promptly sequester the subject document(s)). When counsel for Dr. Arabi asked counsel for the Non-Parties whether the government had destroyed Exh. 2545 and complied with the clawback request, counsel for the Non-Parties stated that the government had not complied and had not destroyed the document. Bernstein Decl. ¶ 5; Ex. 1 (March 7 email from P. Foran). And the Non-Parties have failed to provide any information – either in the Motion or in communications between counsel – regarding the identity of parties who have been shown, provided, or informed of the substance of Exh. 2545, or whether they have sent a clawback request to any party aside from the government. By sequestering Exh. 2545, inquiring as to the government's response to the request, and requesting further details about the extent

The Motion also makes baseless claims that counsel for Dr. Arabi made false representations to counsel for the Non-Parties. *See* Motion at 3, 9. Indeed, as the Motion notes, counsel "declined to disclose the precise topics of her expected examination," as to do so to a hostile witness is of course antithetical to representing a defendant. Any privilege that may have previously cloaked Exh. 2545 was waived by multiple productions of both the document and its substance and the Non-Parties' failure to claw back the document from all who have received it across two court cases since 2017. In any event, counsel for Dr. Arabi plans to question Mr. Cole about topics unrelated to Exh. 2545 *and* topics unrelated to non-privileged communications with third parties. The Non-Parties' accusations, particularly while cherry picking emails to attach to their Motion, are inaccurate and unprofessional.

## IV.    Conclusion

The Non-Parties should not be permitted to use this Motion to claw back a document they inadvertently produced and subsequently re-produced. Not only was Exh. 2545 produced to Dr. Arabi by the government pursuant to its constitutional and statutory obligations, but the Non-Parties waived any privilege through the extensive and comprehensive disclosure of Exh. 2545. Separately, the Non-Parties have not proffered grounds to quash the Subpoena, and the Court should therefore deny the Motion.

Dated: March 23, 2025

Respectfully submitted,

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: */s/ Whitney Z. Bernstein*
Whitney Z. Bernstein
Rebecca S. Roberts
Ryan V. Fraser

*Attorneys for Defendant Dr. Karim Arabi*

---

of the disclosure of Exh. 2545, counsel for Dr. Arabi has more than met their ethical obligations here. To suggest anything otherwise is misleading and inappropriate.