# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Bail pending sentencing deserves a second look because Karim Arabi proved himself a worthy candidate over nearly three years' pretrial release and because United States Pretrial Services recommends re-release. When the Court granted the government's motion to detain in the immediate aftermath of the guilty verdict, there was no input from Pretrial Services. The Court also did not then have the benefit of a specific set of proposed conditions for bail pending sentencing, as this Motion sets forth below.

Since the remand, Pretrial Services has **recommended Dr. Arabi be released on the same conditions as he had before the verdict.** This is an important vote of confidence. The neutral agency that is expert in, and responsible for, overseeing conditional release and calculating nonappearance risk, having supervised Dr. Arabi for nearly three years on pretrial release, concludes that no enhancement of bail conditions is required to assure his appearance for sentencing.

Pretrial Services' recommendation is reasonable and supported by substantial data. Dr. Arabi is a lawful permanent resident ("LPR") who has lived in the United States for the past eighteen years. Over his lengthy pretrial release, he thoroughly confirmed his responsibility and reliability in following the Court's orders. Dr. Arabi has always been exceptionally well-qualified for bail, and he remains so now, even after the guilty verdict.

Apart from Dr. Arabi's lengthy unblemished history on pretrial release, jumping bail would cost him the most important thing he has been fighting for in this case, which is the opportunity to be present in his family's life outside of custody. Because Dr. Arabi possesses no travel documents and knows that he would be pursued vigorously if he fled, he could not realistically abscond to another country. If he were to flee (which he will not), it would require severing communications with his family. Taking such an option is neither realistic nor in Dr. Arabi's interest.

Just as Dr. Arabi appeared to receive the jury's verdict, knowing that a conviction was statistically probable and that the government would seek remand and argue for a

Guidelines range of over twenty years in prison, so it is at least reasonably assured by clear and convincing evidence that he will appear again for sentencing if the Court grants bail conditioned on home detention and secured by the equity in his family's home. These would be far more stringent conditions even than Pretrial Services deems necessary.

## II. The standard for bail pending sentencing in this case is clear and convincing evidence that some combination of release conditions would make it "not likely" that Dr. Arabi would flee.

With respect to flight risk,[1] Dr. Arabi must show by clear and convincing evidence that his proposed conditions would make it "not likely" that he would flee. *See* 18 U.S.C. § 3143(a)(1); § 3142(b), (c). This means the proposed conditions need not *guarantee* appearance. Even so, the conditions proposed in this Motion practically do.

The factors to be considered in the Court's decision include the offenses of conviction, which, in this case, do not trigger any heightened standard for release, *see* 18 U.S.C. § 3143(a)(2) (cross-referencing § 3142(f)(1)(A)–(C)); Dr. Arabi's history and characteristics, which support extending bail, for the reasons explained further below; and whether he was on probation, parole, or other release for another offense at the time of the current offense, which he was not. *See* 18 U.S.C. § 3142(g).

## III. Dr. Arabi is not a flight risk.

Dr. Arabi is an LPR who has lived in the United States for the past eighteen years. He has no intention or desire to start a new life in any other country and does not consider becoming a fugitive better than facing the conviction and sentence. Even if Dr. Arabi faces virtually certain deportation after a prison sentence, which may not be the case, *see* 8 U.S.C. § 1182(h), he would not flee, for any of three reasons: (1) Fleeing would severely punish the friends and beloved family who are willing to be his sureties, and it would force Dr. Arabi to cease communicating with them. (2) Dr. Arabi respects the Court's orders. And

---

[1] At the post-verdict hearing, appropriately, neither the Court nor the government expressed concern for danger to the community. There is indeed no basis to believe that Dr. Arabi poses a danger to the community.

(3) there is no place to which Dr. Arabi could successfully flee, even if he wanted to.

The Court need not to take Dr. Arabi's word for any of this, because his behavior over the past three-plus years reveals his intentions and how he thinks about his case. *See also* § III.D, *infra*. Dr. Arabi has chosen to trust the judicial process, and continues to do so, even knowing that a potentially lengthy sentence and appellate process are in his future.

### A. Dr. Arabi's conditional-release history is completely positive; Pretrial Services recommends release on the prior set of conditions

Dr. Arabi had an unblemished pretrial-release record over two years and eight months. Pretrial Services Officer Craig Stanziano supervised Dr. Arabi's compliance personally from June 2023 until the remand. Officer Stanziano has advised defense counsel that Dr. Arabi did not present supervision difficulties. Declaration of Ryan V. Fraser ¶ 4.

After an initial call with defense counsel on April 9, 2025, Officer Stanziano conferred within his Office and then confirmed on April 11, 2025, that **Pretrial Services not only *does not oppose* this Motion but actively *recommends* that Dr. Arabi's bail be extended pending sentencing *on the previous conditions*.** Fraser Decl. ¶ 3. In Pretrial Services' considered, neutral, expert opinion, no enhancement of release conditions is needed to continue to assure Dr. Arabi's appearance. *See id.*

### B. Ties to United States-citizen wife and sons who own their home in Oceanside

Dr. Arabi has been married to his wife, Shadi, since 1991—about thirty-four years. Together, they have two adult sons, Arman and Parsa, both of whom have lived at home with their parents for most of their lives. Arman still lives at home in Oceanside with Shadi. Parsa moved out recently to start medical school after deferring his enrollment to help support the family while the trial was pending. (Until Dr. Arabi was remanded into custody, Arman lived with both Shadi and Dr. Arabi.)

Shadi, Arman, and Parsa jointly own the single-family home in Oceanside where Shadi and Arman continue living. They appear to have at least approximately $500,000 in equity in this home, which is their most significant asset, and they are willing to put it on

the line to secure Dr. Arabi's continued compliance with all conditions of release. Dr. Arabi would comply with all conditions of release, no matter what conditions the Court sets, but especially would never compromise his family's well-being.

Of further significant note, Shadi, Arman, and Parsa are all United States citizens.

### C. There is no other country to which Dr. Arabi could flee safely and successfully, even if he wanted to

Though he has now lived in the United States for nearly two decades, Dr. Arabi was born and grew up in Iran. He and his family are Kurdish. The Kurdish people are a nation without a state, *see* https://en.wikipedia.org/wiki/Kurds, who have experienced significant discrimination or persecution in countries where they make up a sizable minority. For these reasons and, even more so, because of Dr. Arabi's outspoken public criticism of Iran's government, fleeing to Iran would not be a safe option, even if Dr. Arabi wanted to return to Iran, which he does not. He has not returned to his birthplace for over twenty years, not even to see his ailing father before his death or attend his father's funeral, though this caused him great pain.

There is also no prospective benefit to Dr. Arabi from fleeing to Canada or any third country. Although Dr. Arabi previously resided in Canada, he no longer possesses any travel documents that would allow him to enter Canada or any third country lawfully, and he knows that Canada, like most of the West, has an active, valid extradition treaty with the United States. He has nothing to gain by a hypothetical but logistically impossible flight to Canada. Moreover, Dr. Arabi knows that his sister, Sheida, his codefendant, is currently facing an ongoing process for extradition to the United States from Canada based on the pending indictment in this very case. Fleeing to Canada would achieve nothing.

There is nothing more precious to Dr. Arabi than his relationship to his wife and sons. Dr. Arabi recognizes that, if he became a fugitive, he would not be able to maintain contact with them.

4    3:22-cr-1152-BAS-1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
KARIM ARABI'S MOTION FOR BAIL PENDING SENTENCING

**D. The guilty verdict was a significant event, but it did not transmute Dr. Arabi from a highly reliable pretrial releasee into a completely unmanageable flight risk pending sentencing**

Qualcomm civilly sued Dr. Arabi and his sister Sheida in October 2017, over eight years ago. In 2021, Dr. Arabi learned that Qualcomm had provided information in support of the federal grand jury investigation that led to the indictment in this case. Dr. Arabi did not leave for Canada, and his ties to Canada have only dissipated since then.

In August 2022, Dr. Arabi was arrested, arraigned on an indictment in this case for the first time and, soon thereafter, released on bail. *See* Dkt. 28, 44. From August 19, 2022, until April 8, 2025—**a span of 963 days**—nearly three years—he remained released on bail. Dkt. 44, 415. **Over those 963 days, and knowing from his arrest what jail is like, Dr. Arabi was fully compliant with the Court's release conditions.**

Moreover, going into the trial, Dr. Arabi was not deluded regarding the government's evidence, arguments, or potential sentencing position. Dr. Arabi personally attended a reverse proffer at the U.S. Attorney's Office on February 9, 2024, at which the AUSAs advised him directly that they did not consider Dr. Arabi's case defensible. At trial, the government told the jury this was not a cooperator case with a couple of documents but rather a documents case with a couple of cooperators. And the AUSAs likewise had told Dr. Arabi directly at the reverse proffer that they were confident that they would win at trial regardless of any witness's credibility. At the reverse proffer, the government presented much of the same evidence as was introduced at the trial. The government further advised Dr. Arabi at the reverse proffer that it believed the applicable post-trial Guidelines range was 262 to 327 months, even accounting for zero-point offender credit, given Dr. Arabi's lack of criminal history. The government acknowledged that it might not actually recommend a twenty-year prison sentence after a trial conviction, but warned Dr. Arabi that he should take into account that the post-trial sentencing process likely would begin with a Guidelines range above twenty years.

The landscape Dr. Arabi found at trial is not extremely different from the one he finds now post-verdict. While of course a guilty verdict was not the defense's desired outcome, it was not shocking. Dr. Arabi understood that very few federal criminal defendants are acquitted at trial and that the large majority of those who proceed to trial are convicted.[2] The verdict does not render it impossible to set any conditions for release that, by clear and convincing evidence, would make Dr. Arabi's continued appearance likely, particularly given his lengthy compliance record.

### IV. Pretrial release conditions and proposed conditions for release pending sentencing

For the reasons explained above, Dr. Arabi urges the Court to reconsider bail pending sentencing, if not on the same conditions previously in place pretrial, then on significantly enhanced conditions, which Dr. Arabi can satisfy.

Before trial, Dr. Arabi was released on the Court's mandatory and standard conditions and the additional conditions that he:

- Not travel outside San Diego and Orange Counties;
- Execute an appearance bond in the amount of $500,000, secured by the co-signatures of two financially responsible adults;
- Deposit $200,000 cash with the Court;
- Actively seek or continue full-time employment, schooling, or a combination of both;
- Reside with a family member;
- Surrender any valid passport to Pretrial Services and not obtain a passport or other international travel document;
- Avoid all contact with any person who is or may be a victim or witness in the investigation or prosecution, including codefendants, except for Dr. Arabi's sister;

---

[2] *See, e.g.*, Pew Research Center, *Trials are rare in the federal criminal justice system, and acquittals are even rarer* (June 14, 2023), available at https://www.pewresearch.org/short-reads/2023/06/14/fewer-than-1-of-defendants-in-federal-criminal-cases-were-acquitted-in-2022/sr_23-06-12_federalconvictions-png/.

and

- Not transfer assets in excess of $5,000 or open a new credit account without prior approval by Pretrial Services, except for transactions related to legal fees and costs. Dkt. 39, 58.

Dr. Arabi now proposes to reinstate all those conditions and to add home detention. He also proposes to further secure his bail with the Oceanside home that his wife and sons own and in which his wife and Arman live. Dr. Arabi's two previous sureties, Shadi, Parsa, and Arman all join in this request and are willing to be Dr. Arabi's sureties for bail pending sentencing on these proposed conditions.

Home detention and securing the bond in this way obviate the Court actually placing any subjective trust in Dr. Arabi. Dr. Arabi would wear an ankle monitor and be confined to his residence at all times except for Pretrial Services-approved absences for employment, education, religious observance, medical, substance abuse-, or mental health-related treatment, attorney visits, court appearances, Court-ordered obligations, or other activities to be approved in advance by Pretrial Services.

## V. Conclusion

These proposed conditions create much greater disincentive to flee than are strictly necessary. They would go so far as to make Dr. Arabi's flight a practical impossibility. By clear and convincing evidence, then, these conditions at least suffice to make it "not likely" that Dr. Arabi would flee while awaiting sentencing. *See* 18 U.S.C. § 3143(a)(1); *cf. also Stack v. Boyle*, 342 U.S. 1, 5 (1951) (Eighth Amendment bail right extends to bail pending sentencing).

Respectfully submitted,

Dated: April 16, 2025

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: */s/ Ryan V. Fraser*
    Whitney Z. Bernstein
    Rebecca S. Roberts
    Ryan V. Fraser
    *Attorneys for Dr. Karim Arabi*