```
1  Whitney Z. Bernstein, SBN 304917
   wbernstein@bklwlaw.com
2  Rebecca S. Roberts, SBN 225757
   rroberts@bklwlaw.com
3  Ryan V. Fraser, SBN 272196
   rfraser@bklwlaw.com
4  
```
**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile (949) 369-3701

*Attorneys for Dr. Karim Arabi*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>KARIM ARABI,<br><br>　　　　Defendant. | Case No. 3:22-cr-01152-BAS-1<br>Honorable Cynthia A. Bashant<br><br>**DR. KARIM ARABI'S SUPPLEMENTAL FILING IN SUPPORT OF HIS OPPOSITION TO THE UNITED STATES' MOTION FOR A PRELIMINARY ORDER OF FOREFEITURE**<br><br><u>Hearing Information</u><br>Courtroom: 12B<br>Date:　　　October 28, 2025<br>Time:　　　1:00 p.m. |

## I. DR. ARABI'S PERSONAL INVESTMENTS AND COMMON STOCK IN ATLAZO SHOULD NOT BE SUBJECT TO FORFEITURE

The defense herein supplements its opposition to the government's motion for a preliminary order of forfeiture (Dkt. 465) with additional evidence of Dr. Arabi's personal investments in Atlazo and receipt of common stock as compensation for his work. Attached as Exhibit C is an additional promissory note for $1,000,000 reflecting an investment by Dr. Arabi of his own personal funds into Atlazo. This loan predates the Sheida's angel investments in Atlazo in September 2016. *Cf.* Shindledecker Decl. ¶ 15. Dr. Arabi invested a total of at least $2,550,000 of his own funds into Atlazo. Exs. A & C.

Additionally, Dr. Arabi received at least 427,734 common shares in Atlazo as compensation for his work for the company. *See* Exhibits D and E.[1] Common shares are given to employes as part of a compensation package that includes incentives and are granted to motivate employees to stay with and contribute to the company's success. Common shares are distinct from preferred share in that common shares are a form of compensation whereas preferred shares were given for investments in Atlazo. *See also* Exhibit F, Declaration of Atlazo CEO.

When the government seeks forfeiture of specific property, such as the proceeds of the sale of Dr. Arabi's stock in Atlazo, Inc., it must establish "the requisite nexus between the property and the offense," Fed. R. Crim. P. 32.2(b)(1)(A), by a preponderance of the evidence. *See United States v. Christensen*, 828 F.3d 763, 822 (9th Cir. 2016). "Where the transaction involves criminal proceeds that have been commingled with innocent funds, the Ninth Circuit imposes a tracing requirement; the government must trace each of the alleged monetary transactions to criminally derived proceeds." *United States v. Yagman,* 502 F. Supp. 2d 1084, 1087 (C.D. Cal. 2007). There was no dispute that Atlazo was a legitimate company and did not stem from Abreezio. Accordingly, the proceeds from the sale of

---

[1] Exhibits D and E were produced by the government on or about August 8, 2023, as part of the digital device return for Dr. Arbi's laptop. These documents were not produced with Bates numbers.

Dr. Arabi's common stock and repayment of his personal loans to Atlazo should not be subject to forfeiture.

## II. RESPONSE TO GOVERNMENT'S REPLY BRIEF AT DKT. 471

Without asking for leave to file a reply, the government filed a ten-page brief at Dkt. 471 that misconstrues Dr. Arabi's position. For the avoidance of any doubt, the government cannot forfeit from Dr. Arabi property that he did not actually acquire, consistent with the law governing what is and is not forfeitable. *See, e.g., Honeycutt v. United States*, 581 U.S. 443 (2017); *see also* Dkt. 465. Thus, because Dr. Arabi did not actually acquire the following property, the government cannot legally forfeit from him:

a. real property located at 1520 Vinson Creek Road, West Vancouver, British Columbia, Canada (008-505-152) (*see also* government's motion for forfeiture at Dkt. 446 at 13 (describing Sheida's sole funding of the property, and implicitly conceding that Dr. Arabi did not fund or actually acquire this property));

b. real property located at Mossevenien 267, 1169 Olso, Norway (cadastral number 0301/194/188) (*see also* government's motion for forfeiture at Dkt. 446 at 14 (describing Adar's purchasing of the property with money from Sheida, and implicitly conceding that Dr. Arabi did not fund or actually acquire this property));

c. real property located at Dyna Brygge 5, 0252 Olso, Norway (cadastral number 0301/210/58/0/11) including two associated parking spaces (cadastral number 0301/510/16/0/58 and 0301/510/16/0/59) (*see also* government's motion for forfeiture at Dkt. 446 at 14 (describing Adar's purchasing of the property with money from Sheida, and implicitly conceding that Dr. Arabi did not fund or actually acquire this property));

d. $44,580,192.74, "the amount Qualcomm paid to Sheida" Alan (Dkt. 446 at 8)

The government argues that all of this property, which unquestionably was never actually acquired by Dr. Arabi as required for forfeiture by *Honeycutt*, because it has a hunch that it was really Dr. Arabi's. Fortunately, however, our rule of law still requires evidence and objective facts. And the government and Qualcomm's near decade-long investigation, utilizing dozens of capable federal agents to serve subpoenas, review records,

obtain MLATs, and trace money, has shown beyond any shadow of any doubt that the above property *was not actually acquired* by Dr. Arabi. He is not Sheida. He is not on her bank accounts, he does not have access to her bank accounts, he is not a signatory or authorized user of her bank accounts. He is not on her deed, and he did not provide money for her property. He is not on the deeds of the homes of his brother in Norway, and he did not provide money for the properties in Norway. The most the government can muster in response to these inconvenient facts that its own agents and investigation have confirmed is that nonetheless it thinks Sheida was simply holding proceeds. That is legally insufficient.

Dr. Arabi also contests forfeiture of compensation for his work at Altlazo, which includes at least $18,037.63 in funds from Bank of America account # ending in x7398 held in the name of Karim Arabi and Shadi Babataheri as well as a cashier's check in the amount of $21,386.70 remitted to the United States Marshals Service by Atlazo, Inc., which represents proceeds of common stock held by Dr. Arabi (common stock issued for compensation). Dr. Arabi also contests forfeiture of $118,707.89 in funds from account # ending in 1860 held in the name of Karim Arabi at San Diego County Credit Union, San Diego, California (*see* Dkt. 465 at 13-14).

### III. DR. ARABI MOVES FOR THE GOVERNMENT TO COMPLY WITH ITS ONGOING *BRADY* OBLIGATIONS.

The government's supplemental brief noted that "[o]n October 15, 2025, the United States received an emailed letter from counsel for Mamad Adar concerning the forfeiture of the listed Norwegian real property." Dkt. 471 at 1 n.1. The government has not produced this to Dr. Arabi or his counsel and should do so immediately, consistent with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, which continue after conviction and through sentencing, including a criminal forfeiture proceeding, and require disclosure of information favorable and material to punishment and forfeiture determinations.

## IV. CONCLUSION

For the reasons discussed above and in Dkt. 465, Dr. Arabi requests that the Court deny the government's motion for forfeiture.

Respectfully submitted,

Dated: October 24, 2025

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: */s/ Whitney Z. Bernstein*
    Whitney Z. Bernstein
    Rebecca S. Roberts
    Ryan V. Fraser
    *Attorneys for Dr. Karim Arabi*